| | | |
|---|---|---|
| **UNITED STATE BANKRUPTCY COURT** | | **FOR PUBLICATION** |
| **SOUTHERN DISTRICT OF NEW YORK** | | |

---------------------------------------------x
In re:                                    :            Chapter 11
                                          :
Dana Corporation, et al.                  :            Case No. 06-10354 (BRL)
                                          :            (Jointly Administered)
               Debtors,                   :
---------------------------------------------x

# EXTRACT OF BENCH RULING DENYING MOTION FOR ORDER DIRECTING THE DEBTORS TO ASSUME OR REJECT EXECUTORY CONTRACTS WITH SYPRIS AND GRANTING ADDITIONAL RELIEF

Before the Court is the Motion of Sypris Technologies, Inc. ("Sypris") for an Order Under 11 U.S.C. § 365(d) Directing Debtors to Determine by October 3, 2006 Whether to Assume or Reject Executory Contracts with Sypris and Granting Additional Relief (the "Motion"). Dana Corporation ("Dana Corp.") and 40 of its domestic direct and indirect subsidiaries (collectively, the "Debtors") object to the Motion. The Equity Committee supported the Debtors' objection, but the Creditors' Committee requested an adjournment of the hearing so that it may more thoroughly investigate whether the Motion is well-founded, or whether the estates would be better served by preserving flexibility to assume or reject the contracts until a later date. The request for an adjournment is denied.

The parties have made a substantial record which demonstrates that the Motion, inclusive of a suggested decisional time table, is not well founded.

**BACKGROUND**

The Debtors filed voluntary petitions under chapter 11 of Title 11 of the United States

1

Code (the "Bankruptcy Code") on March 3, 2006.  As one of the Debtors' largest creditors, Sypris was appointed by the Office of the United States Trustee as a member of the Creditors' Committee, and became Co-Chair of the Creditors' Committee in July 2006.

Dana Corp. and various debtor and nondebtor affiliates (collectively "Dana") have been parties to a series of agreements, and amendments thereto, with Sypris since 2001.  Dana and Sypris are parties to a number of supply contracts (the "Supply Contracts"), and Sypris is by far the largest component parts supplier to Dana, supplying tens of thousands of different parts to Dana for use throughout their domestic and foreign operations. The parts supplied by Sypris are used in Dana's manufacture of component parts and subassemblies in 11 of Dana's facilities.  During the pendency of these proceedings, Dana has purchased, on average, $4.4 million in parts per week from Sypris under the Supply Contracts.

Since well before the Petition Date, Sypris and Dana have been at odds over many aspects of their relationship under the Supply Contracts.  After two months of negotiation and with the intervention of a mediator, Dana and Sypris reached an interim arrangement and submitted a settlement agreement, (the "Settlement Agreement") which was approved by this Court on May 17, 2006.  The Settlement Agreement provided that Sypris would continue to supply parts to Dana and in return Dana would pay prepetition claims, allow the right to setoff and new credit terms and other benefits to Sypris.  The Settlement Agreement also provided that the parties would submit to arbitration (a) any

2

dispute over the parties' reconciliation of the amounts of (i) Sypris' administrative claim under section 503(b)(9) of the Bankruptcy Code, (ii) the parties Prepetition Purchase Debts or (iii) any Sypris claims against one of the Debtor affilitates; and (b) "any and all future disputes arising from the Supply [Contracts], other than the determination of the Debtors' assumption or rejection of [them]").  It has been asserted that the litigation vis a vis Sypris, the Co-Chair of the Creditors' Committee, has incurred almost $1 million in costs to the estate before today's hearing, during the triage stage of the proceedings.

Within weeks of the approval of the Settlement Agreement, arbitration proceedings were commenced pursuant to paragraph 11 of the Settlement Agreement.  The parties have submitted various issues to arbitration and have agreed to split the disputes into three or more separate arbitrations.  Currently, the parties have scheduled the evidentiary hearing in the first phase of arbitration to take place in September 2006.  No other phases have begun.

**THE MOTION**

A Debtor may assume or reject an executory contract at any time before the confirmation of the plan, but the court, on request of any party to such contract or lease, may order the trustee to determine within a specified period of time whether to assume or reject such contract.  See 11 U.S.C. §365(d)(2).  "[I]t is the clear policy of the Bankruptcy Code to provide the debtor with breathing space following the filing of a bankruptcy petition, continuing until the confirmation of a plan, in which to assume or reject an executory contract."  *See In re Adelphia Commc'ns Corp.*, 291 B.R. 283, 292 (Bankr. S.D.N.Y. 2003) (hereinafter "*Adelphia*"); *see also In re Enron Corp.*, 279 B.R. 695, 702 (Bankr.

3

S.D.N.Y. 2002) (hereinafter "*Enron*"); *McLean Indus., Inc. v. Med. Lab. Automation, Inc.* (*In re McLean Indus., Inc*.), 96 B.R. 440, 449 (Bankr. S.D.N.Y. 1989); *Skeen v. Denver Coca-Cola Bottling Co. ( In re Feyline Presents, Inc.),* 81 B.R. 623, 626 (Bankr.D.Colo.1988).

Permitting a debtor to make its decision as late as plan confirmation enables the debtor to carefully evaluate the possible benefits and burdens of an executory contract. *In re Kmart*, 290 B.R. 614, 619 (Bankr. N.D. Ill. 2003); see also *In re Klein Sleep Products, Inc.*, 78 F.3d 18, 29 (2d Cir. 1996). Where a party seeks to shorten the Debtor's statutory period to assume or reject, the burden is on the movant to demonstrate cause. *See In re Republic Technologies Int'l, LLC,* 267 B.R. 548, 554 (Bankr.S.D.Ohio 2001).

The determination of what constitutes a reasonable time to assume or reject is within the bankruptcy court's discretion based on the particular facts of each case. *Theatre Holding Corp. v. Mauro*, 681 F.2d 102, 105 (2d Cir. 1982); *see also Moody v. Amoco Oil Co.,* 734 F.2d 1200, 1216 (7th Cir.1984) ("To interpret the Code so as to minimize flexibility and rush the debtor into what may be an improvident decision does not further the purposes of the reorganization provisions."); *In re Wheeling-Pittsburgh Steel Corp.,* 54 B.R. 385, 388 (Bankr.W.D.Pa.1985)("[i]t is vitally important to all interested parties that the debtor make a prudent assumption or rejection decision, particularly a decision to assume.")

In determining whether to shorten the period of time in which a debtor must assume or reject an executory contract, courts consider a variety of factors, including

4

- the importance of the contracts to the debtor's business and reorganization;

- the debtor's failure or ability to satisfy postpetition obligations;

- the nature of the interests at stake;

- the balance of hurt to the litigants and the good to be achieved;

- whether the debtor has had sufficient time to appraise its financial situation and the potential value of its assets in formulating a plan;

- the safeguards afforded the litigants;

- the damage the nondebtor will suffer beyond the compensation available under the Bankruptcy Code;

- whether there is a need for judicial determination as to whether an executory contract exists;

- whether exclusivity has been terminated;

- whether the action to be taken is so in derogation of Congress's scheme that the court may be said to be arbitrary; and

- the purpose of chapter 11, which is to permit successful rehabilitation of debtors.

See *Adelphia* at 293; *Enron* at 702; *In re Teligent, Inc*., 268 B.R. 723, 738 (Bankr. S.D.N.Y. 2001; *In re Lionel Corp*., 23 B.R. 224, 225 (Bankr. S.D.N.Y. 1982).

Sypris contends that the Debtors should be compelled to assume or reject the executory contracts by October 3, 2006, because the decision would not be difficult given the limited options available in the event of rejection, and that further delay will cost the estate millions of dollars in additional damages should the Debtors ultimately reject.

Sypris argues that the Debtors' options are limited if they reject the Supply Contracts because the Supply Contracts allow Sypris to enjoin the Debtors from purchasing any of their requirements for certain commodities other than from Sypris through 2014. Sypris contends that the Debtors have already determined that the markets relating to the Supply Contracts are a key in their successful emergence and because, the rejection of these agreements would effectively require the Debtors to exit the markets the decision to assume or reject should be fairly simple. Moreover, Sypris argues that the decision from the Debtors should be expedited because Sypris must make several business decisions in the coming months relating to equipment maintenance costs, investment decisions for future business and renegotiating collective bargaining agreements.

First, at this point, the issues arising from either an assumption or rejection of the Supply Contracts, including Sypris' alleged ability to enjoin the Debtors from purchasing requirements from other entities are not before the Court at this juncture. Those issues will be ripe for determination when the decision to assume or reject is made.

Second, as will be explained further, it would be inappropriate to compel the Debtors to make the decision regarding the Sypris Supply Contracts, in particular, prematurely.

The Debtors cases are large and complex. The Debtors purchase goods and services from approximately five thousand suppliers. To date, the Debtors, in an effort to fulfill their fiduciary obligations to all stakeholders, are in the process of evaluating all of their executory supply contracts, including those with Sypris. Debtors have assumed or rejected only six supply contracts so far, and in each of those situations there were

6

circumstances to support the determination, including valuable concessions granted by the contract counterparties for the benefit of the Debtors and their estates. Sypris, as a counterparty, has granted no concessions for the benefit of Dana, but on the other hand, has obtained substantial payment of pre-petition obligations as well as beneficial modification of credit terms.

In 2005 alone, the Debtors purchased over $120 million in parts from Sypris under the Supply Contracts. Both Dana and Sypris have repeatedly acknowledged that the decision regarding assumption or rejection of the Sypris Supply Contracts will have a significant impact on the Debtors' overall restructuring efforts.

Moreover, the ongoing arbitration proceedings are the mechanism agreed upon by the parties as the means to resolve several key issues of contractual interpretation and enforcement in the Settlement Agreement. Both parties contend that the other is breaching the Supply Contracts. Until such time as these issues are resolved, the Debtors cannot know the precise nature and extent of the contract obligations Sypris is asking this Court to compel the Debtors to assume or reject. Without sufficient information about the nature of their business plan and other key restructuring issues to evaluate their largest and most complex supply arrangements, a viable assessment of the Supply Contracts is not feasible until the disputed contractual issues are determined through the Arbitration.

In addition, Sypris has not met the burden of establishing that the Debtors should be compelled to determine whether the Supply Contracts should be assumed or rejected on the expedited basis proposed. The Settlement Agreement guaranteed a safeguard for

7

Sypris, including, among other things a nearly complete satisfaction of its prepetition claims and a reduction in trade credit to Dana, and the fact that Dana continues to perform its obligations under the Supply Contracts, which translates into payments averaging $4.4 million each week

I note that in a self-serving fashion, Sypris cavalierly ventures into the land of waiver and estoppel. The moving papers, while seeking the specific remedy of "assumption or rejection" relief, inconsistently seek to preserve a right at another time to argue against the Debtors' assumption or rejection rights. The choice having been made and issue joined, Sypris cannot come back later and argue that the Supply Contracts are not executory contracts incapable of rejection, but are financial accommodations instead.

Based on all of the above, the factors clearly indicate that the Debtors should not be compelled to determine whether the Sypris Supply Contracts should be assumed or rejected. At this early stage in the cases and months before exclusivity is set to expire, this Court will not shorten the time that Congress intended the Debtors to have to make these crucial decisions.

The Motion is denied.

It is so ordered.

Dated: New York, New York
       August 28, 2006

/s/ Hon. Burton R. Lifland
United States Bankruptcy Judge