**UNITED STATE BANKRUPTCY COURT**  **For Publication**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------x
In re:                                                  :     Chapter 11
                                                        :
Dana Corporation, et al.                                :     Case No. 06-10354 (BRL)
                                                        :     (Jointly Administered)
                 Debtors,                               :
-----------------------------------------------------x

APPEARANCES:


JONES DAY
Attorneys for the Debtors and Debtors in Possession
222 East 41st Street
New York, New York 10017
(212) 326-3939
By:   Corinne Ball, Esq.
      Heather Lennox, Esq.
      George T. Manning, Esq.


KRAMER LEVIN NAFTALIS & FRANKEL LLP
Attorneys for the Official Committee of Unsecured Creditors of Dana Corporation, *et al*.
1177 Avenue of the Americas
New York, New York 10036
(212) 715-9100
By:   Thomas Moers Mayer, Esq.
      P. Bradley O'Neil, Esq.
      Matthew J. Williams, Esq.
      Douglas H. Mannal, Esq.


STROOCK & STROOCK & LAVAN LLP
Attorneys for the Ad Hoc Committee of Dana Noteholders
180 Maiden Lane
New York, New York 10038
(212) 806-5400
By:   Michael J. Sage, Esq.
      Kristopher M. Hansen, Esq.
      Shannon Lowry Nagle, Esq.


OFFICE OF THE UNITED STATES TRUSTEE
33 Whitehall Street
21st Floor

New York, New York 10004
(212) 510-0500
By:  Diana Adams, Esq.
      Greg M. Zipes, Esq.

COHEN, WEISS AND SIMON LLP
330 West 42nd Street, 25th Floor
New York, New York 10036-6976
(212) 563-4100
Attorneys for UAW and USW
By:  Babette A. Ceccotti, Esq.
      Elizabeth O'Leary, Esq.

International Union, UAW
8000 East Jefferson Avenue
Detroit, Michigan 48214
(313) 926-5216
Attorney for UAW
By:  Niraj R. Ganatra, Esq.

United Steelworkers
Five Gateway Center
Pittsburgh, Pennsylvania 15222
(412) 562-2546
Attorney for USW
By:  David R. Jury, Esq.

FRIED, FRANK, HARRIS, SHRIVER & JACOBSON LLP
One New York Plaza
New York, New York 10004
Telephone: (212) 859-8000
Facsimile: (212) 859-4000
By:  Stephanie Goldstein, Esq.
      Gary Kaplan, Esq.
      Brian Pfeiffer, Esq.

**EXTRACT OF BENCH RULING DENYING MOTION OF DANA CORPORATION FOR AN ORDER AUTHORIZING DANA TO ENTER INTO EMPLOYMENT AGREEMENTS WITH ITS PRESIDENT AND CHIEF EXECUTIVE OFFICER AND FIVE KEY EXECUTIVES OF HIS CORE MANAGEMENT TEAM**

Before this Court is Debtors' proposed compensation plan for Michael J. Burns, the President and Chief Executive Officer ("Mr. Burns"), and five executives, Messrs. Miller, Stone, Stanage, DeBacker and Goettel, (together with Burns, the "Executives"). The plan generated extensive opposition. The parties in interest have attempted to define the issue before me, but their rhetoric and hyperbole aside, the basic issue is: is this a "Pay to Stay" compensation plan (also known as a Key Employee Retention Plan or "KERP") subject to limitations of section 503(c) of the Bankruptcy Code or can it be construed to be an *incentivizing* "Produce Value for Pay" plan to be scrutinized through the business judgment lens of section 363? Elements of both can be found in the proposed compensation scheme.

The Debtors filed the initial motion dated June 29, 2006 (the "Compensation Motion") and the supplement to the Compensation Motion dated August 4, 2006 (the "Modified Plan") seeking entry of an order pursuant to sections 363(b), 365 and 105(a) of the Bankruptcy Code authorizing Dana to enter into employment agreements (the "Employment Agreements") with the Executives. Last night, the Debtors filed yet another modified version of the compensation package. This latest version modifies to some extent, the long-term incentive bonus and Senior Executive Retirement Plan, but it does not change the basic issues before me.

Objections to the Compensation Motion were filed by the Creditors' Committee, the Ad Hoc Noteholders' Committee, the Equity Committee, the United Aerospace and Agricultural Implement Workers of America (the "UAW") and United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial Service Workers International Union (the "USW") and the United States Trustee (collectively, "Objecting Parties"). The objections largely focused on the compensation package for Mr. Burns.

**BACKGROUND**

On March 3, 2006 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtors are leading suppliers of modules, systems and components for original equipment manufacturers and service customers in the light, commercial and off-highway vehicle markets. The products manufactured and supplied by Dana are used in cars, vans, sport-utility vehicles, light, medium and heavy trucks, and a wide range of off-highway vehicles.

Two years prior to the Petition Date, effective as of March 1, 2004, Dana's Board of Directors named Mr. Burns as CEO, a position in which he continues to serve. Messrs. Miller, Stone, Stanage, DeBacker and Goettel were all named executives of Dana prior to the Petition Date.

**THE COMPENSATION MOTION**

According to the Debtors, the Executives should be compensated and incentivized to lead Dana and achieve an expedient and successful reorganization of the Debtors. "Dana

4

needs assurance that it will have its executive team in place to work, independently, through this difficult and demanding restructuring effort and that its management team will be sufficiently protected so that the members can dedicate themselves to the objectives of maximizing values for all of the Debtors' competing constituents without distraction from the imminent risk to their futures." Compensation Motion at 13. Under the terms of the Compensation Motion and Modified Plan, the Debtors propose to pay base salary, annual incentive plan ("AIP") bonuses and "Target Completion Bonuses" to each of the Executives. Additionally, the Debtors include in the Modified Plan a Senior Executive Retirement Program and non-compete component.

BASE SALARY

The Executives, excluding Mr. Burns, have proposed base salaries between $500,000 and $600,000. Mr. Burns' proposed base salary is $1,552,500, and is unchanged from the prepetition amount.

ANNUAL INCENTIVE BONUS

Under the AIP, reward of an annual bonus is conditioned upon Dana's short-term financial performance and the size of that award depends on whether Dana meets threshold, target or superior performance goals established by Dana's Compensation Committee.

The AIP bonuses sought for the Executives, excluding Mr. Burns, range from $336,000 to $528,000. Mr. Burns' proposed AIP bonus is $2,070,000, which is unchanged from

5

the prepetition amount. The 2007 amounts will be determined by the Dana Board, in consultation with the Creditors' Committee, on or about February 15, 2007.

COMPLETION BONUS

Under Mr. Burns' prepetition contract, he was eligible for a long-term incentive in the form of a series of equity based awards targeted to provide $4 million annually. The Debtors propose a Completion Bonus in place of this long-term incentive. Although the Completion Bonus included in the Compensation Motion was not tied to any performance-related goals, under the Modified Plan, the Compensation Bonus has two components.

First, there is a fixed component, which is awarded without regard to performance or creditor recovery, payable in cash on the effective date of a plan of reorganization (the "Effective Date") if the Executive is still employed by Dana. This component ranges from $400,000 to $560,000 for the Executives and is $3,100,000 for Burns ("Minimum Completion Bonus"). The second component is an uncapped, variable component based on the Total Enterprise Value of the Debtors ("TEV") six months after the Effective Date. For example, Mr. Burns earns an additional $4,133,000 if the Debtors' TEV goes down to $2 billion (Threshold Completion Bonus), but if TEV remains at $2.6 billion, Mr. Burns would earn $6,200,000 ("Target Completion Bonus").

The form of payment in the original motion was cash. Under the Modified Plan, amounts in excess of Minimum Completion Bonus payable in common stock of reorganized Dana as long as the common stock is listed and readily tradable *or* is subject to repurchase by

reorganized Dana if the Executive is not employed by reorganized Dana after the Effective Date, otherwise the amounts are payable in cash.

SEVERANCE / "NON-COMPETE" PACKAGE

Under Mr. Burns' prepetition contract, he was entitled to a severance package consisting of two years base pay plus bonus. Under the Modified Plan, if Mr. Burns' employment is involuntarily terminated without "Cause," if he resigns for "Good Reason," or in the event he fails to complete a replacement employment agreement with the reorganized company following good faith negotiations, then Mr. Burns will execute an 18 month non-compete agreement in exchange for payments of $166,666.67 per month for the term of the agreement. Additionally, Mr. Burns would be eligible to receive a pro rata payout of the Completion Bonus if the business plan has been completed, but Effective Date not reached. If the Effective Date passed, Mr. Burns would receive full payout of his Completion Bonus.

SENIOR EXECUTIVE RETIREMENT PROGRAM

Under the original terms of the Compensation Motion, Mr. Burns' Senior Executive Retirement Program ("SERP") was to be treated as a general unsecured claim against the Debtors, for a total of approximately $18.205 million. In the Modified Plan, the Debtors would assume the agreement on the earlier of Mr. Burns' termination or Debtors' emergence from chapter 11. Mr. Burns' SERP, if assumed, may result in administrative claims of approximately $6 million.

**THE BAPCA**

Courts must look to the plain language of the Bankruptcy Code. *United States v. Ron Pair Enterprises, Ltd.*, 489 U.S. 235, 242 (1989). Recently, Congressional concern over KERP excesses was clearly reflected in changes to the Bankruptcy Code that are effective for cases filed after October 17, 2005. Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, §331, 119 Stat. 23, 102-03 (April 20, 2005) ("BAPCA"). *See In re U.S. Airways*, 329 B.R. 793, 797 (Bankr. E.D. Va. 2005).

The initial Compensation Motion did not provide this Court with analysis of the requirements under the BAPCA, rather the Debtors proposed to rely solely on sections 105, 363(b), 365 and 101(31) of the Bankruptcy Code as the basis for the relief sought. On August 4, 2006, the Debtors filed the Modified Plan, stating summarily that the changes made address the concerns of the Objecting Parties. On August 31, 2006, the Debtors filed a reply, stating again that the Modified Plan should resolve any issues the objecting parties had with the Compensation Motion and contending that the Debtors' exercise of business judgment is sufficient to justify the relief requested. The Debtors contend that the Objecting Parties suggest "a dangerously expansive and unworkable interpretation of section 503(c) of the Bankruptcy Code," Reply at 6, and that the Compensation Motion, as modified in any event, complies with section 503(c) of the Bankruptcy Code and is the result of a sound exercise of business judgment by the Compensation Committee and the Board of Directors of Dana.

Under the BAPCA, section 503(c) establishes specific evidentiary standards that must be met before a bankruptcy court may authorize payments made to an insider for the purpose of inducing such person to remain with a debtor's business, or payments made on account of severance. See 11 U.S.C. § 503(c)(1), (2).  This recent amendment to the Bankruptcy Code makes it abundantly clear that, to the extent a proposed transfer falls within sections 503(c)(1)[1] or (c)(2)[2], then the business judgment rule does not apply, irrespective of whether a sound business purpose may actually exist.

Alternatively, pursuant to section 503(c)(3),

> [T]here shall neither be allowed, nor paid – (3) other transfers or obligations that are outside the ordinary course of business and not justified by the facts and circumstances of the case, including transfers made to, or obligations incurred for the benefit of, officers, managers, or consultants hired after the date of filing of the petition.

---

[1] …There shall neither be allowed, nor paid – (1) a transfer made to, or an obligation incurred for the benefit of, an insider of the debtor for the purpose of inducing such person to remain with the debtor's business, absent a finding by the court based on evidence in the record that –
  (A) the transfer or obligation is essential to retention of the person because the individual has a bona fide job offer from another business at the same or greater rate of compensation
  (B) the services provided by the person are essential to the survival of the business; and
  (C) either – (i) the amount of the transfer made to, or obligation incurred for the benefit of, the person is not greater than an amount equal to 10 times the amount of the mean transfer or obligation of a similar kind given to nonmanagement employees for any purpose during the calendar year in which the transfer is made or the obligation incurred; or  (ii) if no such similar transfers were made to, or obligations were incurred for the benefit of, such non-management employees during such calendar year, the amount of the transfer or obligation is not greater than an amount equal to 25 percent of the amount of any similar transfer or obligation made to or incurred for the benefit of such insider for any purpose during the calendar year before the year in which such transfer is made or obligation is incurred.
11 U.S.C. § 503(c)(1).

[2] …There shall neither be allowed, nor paid – (2) a severance payment to an insider of the debtor, unless –
  (A) the payment is part of a program that is generally applicable to all full-time employees; and
  (B) the amount of the payment is not greater than 10 times the amount of the mean severanace pay given to nonmanagement employees during the calendar year in which the payment is made
11 U.S.C. § 503(c)(2).

9

11 U.S.C. § 503(c)(3). The Debtors urge that if the Court is to apply section 503(c), the Court should analyze the Compensation Motion under this section. The United States Trustee contends that because the Executives were hired prepetition, the Court must rely only on sections 503(c)(1) and (2). While the legislative history available on the statute does not provide any insight on Congress' intent in adding the example of postpetition hires as one example of obligations subject to section 503(c), the plain language of the statute does not prohibit the Court from analyzing transfers to prepetition hires expansively under this section.

The Debtors contend, wrongly, that courts that have addressed executive compensation motions after the passage of BAPCA have found that section 503(c) does not apply. In fact, these courts did apply section 503(c) and found that under the circumstances of each case, the debtors used their business judgment in formulating the compensation plans and the plans did not otherwise violate section 503(c).

The Debtors also compare the compensation programs brought before other courts, in other cases, including the plan brought before this Court in *In re Calpine*. If this Court is to analyze the Compensation Motion pursuant to section 503(c), the Court must look to the specific circumstances of these cases, and these Debtors. A significant aspect of these cases, in the context of the Compensation Motion, are the issues raised in the strong objections filed by several parties in interest, including the Creditors' Committee, Equity Committee and United States Trustee and therefore, the Compensation Motion cannot fairly be compared to other compensation motions brought before this Court or other

courts. Finding support in this Court's bench ruling in *In re Calpine* is misplaced as in that case there was a prima facie case and record to support the application for an "incentive" that was largely unrebutted, therefore not raising the issues currently before this Court.

COMPLETION BONUS

Some of the Objecting Parties contend that the Debtors' method of calculating TEV may encourage the Executives to reject contracts, generating potentially significant rejection claims, and diluting creditor recoveries but increasing the Debtors' TEV and therefore the Executives' compensation. The Executives, however, have a fiduciary duty to creditors. *Clarkson Co. Ltd. V. Shaheen*, 660 F.2d 506, 512 (2d Cir. 1981). On the other hand, the Debtors argue that the Ad Hoc Committee and the Creditors' Committee are parochially committed to a "Trading Theory" bottomed on a current TEV so as to cushion the recovery to Bondholders at artificial TEV levels.

As to the variable portion of the bonus, the Objecting Parties argue the artificially low threshold for the payment of the Threshold Completion Bonus and the Target Completion Bonus more or less guarantees that these bonuses will be paid, and renders these bonuses more akin to a retention bonus, subject to section 503(c) of the Bankruptcy Code. The Executives would be entitled to receive 66% of their Target Completion Bonus if the Debtors' performance actually declined from today's TEV by 23%.

The Completion Bonus includes an amount payable to the Executives upon the Debtors' emergence from chapter 11, regardless of the outcome of these cases. Without tying this portion of the bonus to anything other than staying with the company until the Effective Date, this Court cannot categorize a bonus of this size and form as an incentive bonus. Using a familiar fowl analogy,[3] this compensation scheme walks, talks and is a retention bonus. Contrary to the contentions of several objectors, however, the language of section 503(c)(3) does not prevent this Court considering a Compensation Motion using the business judgment rule.

SEVERANCE/ "NON-COMPETE" PAYMENT

The Debtors try to circumvent the requirements of section 503(c)(2) of the Bankruptcy Code, by characterizing the amounts being paid to the Executives upon involuntary dismissal or resigning for good reason as "payments in exchange for non-compete agreements." The Second Circuit, in *Straus-Duparquet, Inc. v. Local Union No. 3 Int'l Bhd. of Elec. Workers AF of L, CIO*, 386 F.2d 649, 651 (2d Cir. 1967), described severance, "amounts due whenever termination of employment occurs." Severance pay is a form of compensation to alleviate the consequent need for economic readjustment but also to recompense him for certain losses attributable to the dismissal. *Id.*

The Debtors have failed here to meet their burden of demonstrating that the payments in exchange for signing a non-compete agreement and other payments do not constitute "severance" for purposes of section 503(c)(2) of the Bankruptcy Code, or that the evidentiary requirements contained in section 503(c)(2) have been satisfied.

---

[3] If it walks like a duck (KERP) and quacks like a duck (KERP), it's a duck (KERP).

12

Pursuant to section 503(c)(2), a severance payment to an insider may not be approved by this Court unless the Debtors have established that the payment is part of a program generally applicable to all full time employees and the amount of the payment is not more than ten times the amount of mean severance given to non-management employees in that calendar year.  No showing has been made to this Court that the severance payments comply with section 503(c)(2).

DECLARATORY JUDGMENT REGARDING THE DEFINITION OF INSIDER

The Debtors ask this Court to determine that the term "insider" as defined in section 101(31) of the Bankruptcy Code only applies to Mr. Burns and the other Executives and any person who serves as a director of a Debtor at the time of inquiry.  Subject to a factual determination regarding the extent to which an individual was in control of a debtor, the term "insider" could include other employees of the Debtors.  The request is improper and without basis.  This Court is prepared to find that the Executives are insiders, but has no basis to make a finding that no other insiders are employed by Dana absent a showing of proof.

CONCLUSION

While it may be possible to formulate a compensation package that passes muster under the section 363 business judgment rule or section 503(c) limitations, or both, this set of packages does neither.  In so holding, I do not find that incentivizing plans which may

have *some* components that arguably have a retentive effect, necessarily violate section

503(c)'s requirements.


Debtors' motion is denied.

IT IS SO ORDERED.


Dated: September 5, 2006
     New York, New York                    /s/ Hon. Burton R. Lifland
                                                      United States Bankruptcy Judge