**UNITED STATES BANKRUPTCY COURT**                    For Publication
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------x
In re:                                    :          Chapter 11

Dana Corporation, et al.                  :          Case No. 06-10354 (BRL)
                                          :          (Jointly Administered)
                    Debtors,
-----------------------------------------------------x


## MEMORANDUM DECISION REGARDING RECLAMATION
## CLAIMS UNDER SECTION 546(C) OF THE BAPCPA

Before the Court is the motion of the Dana Corporation ("Dana") and 40 of its domestic

direct and indirect subsidiaries (together with Dana, the "Debtors"), seeking a value

determination of zero for certain of the reclamation claims filed in these cases. Twenty-four

objections to the motion were filed.

**Background**

On March 3, 2006 (the "Petition Date"), the Debtors filed voluntary petitions for relief

under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtors

and their nondebtor affiliates (collectively, the "Dana Companies"), are manufacturers and

suppliers of modules, systems and components for original equipment manufacturers and service

customers used in cars; vans; sport-utility vehicles; light, medium and heavy trucks; and a wide

range of off highway vehicles. The Dana Companies have operations in approximately 25 states,

as well as in Mexico, Canada, 11 countries in Europe and 14 countries elsewhere in the world.

As disclosed in Dana's Form 10-K filed on April 27, 2006, for the year ended December 31,

2005, the Dana Companies recorded revenue of approximately $8.7 billion and had assets of

approximately $7.4 billion and liabilities totaling $6.8 billion.

***The Reclamation Claims***

On March 29, 2006, this Court entered an order (the "Reclamation Order"), establishing procedures for resolving reclamation claims.  Prior to June 30, 2006, over 450 parties sent letters to the Debtors demanding the return of certain previously-shipped goods and asserting reclamation claims against the Debtors in an aggregate amount of more than $297 million.  In accordance with the reclamation procedures, the Debtors filed a notice listing the reclamation claims and the Debtors' reconciliation of each such reclamation claim on June 30, 2006 (Docket No. 1650).

The reconciliation of reclamation claims described in the reclamation notice involved the assertion of various factual and legal defenses. The Debtors asserted that various fact-intensive defenses to the reclamation claims  reduced the aggregate amount of reclamation claims acknowledged by the Debtors as valid (prior to the application of any available legal defenses) from the approximately $300 million worth of goods initially sought to be reclaimed to approximately $3 million.  The Debtors also asserted that certain legal defenses to the reclamation claims based upon the existence of prior liens on the goods to be reclaimed (collectively, the "Prior Lien Defense") rendered all of the reclamation claims valueless.

Approximately 132 reclamation claimants filed objections to the reclamation notice.[1]  On October 13, 2006, this Court entered an order bifurcating consideration of the issues relating to the reclamation claims and establishing a briefing schedule for the Prior Lien Defense issue.

The Debtors assert that, pursuant to the Prior Lien Defense and the decision in the *In re Dairy Mart Convenience Stores, Inc.,* case, the reclamation claims are rendered valueless

---

[1] The Debtors have since resolved some of those objections.

because those claims are subject to the superior rights of a holder of a security interest in the reclaimed goods. *See, e.g., In re Dairy Mart Convenience Stores, Inc.*, 302 B.R. 128, 134-36 (Bankr. S.D.N.Y. 2003)(hereinafter "*Dairy Mart*") (holding that reclamation claims were without value in light of a secured lender's prior floating lien on the debtor's inventory); *see also* 11 U.S.C. § 546(c) (subjecting a seller's right to reclaim goods to "the prior rights of a holder of a security interest in such goods or the proceeds thereof . . . ").

Specifically, the Debtors argue that approximately $377 million of their outstanding prepetition indebtedness (the "Prepetition Indebtedness") was secured by liens on substantially all of their assets, including liens on the reclaimed goods. This Prepetition Indebtedness was satisfied by the proceeds of a debtor in possession financing facility, which itself was secured by substantially identical liens. In the Debtors' view, following the analysis in *Dairy Mart* and the express terms of section 546(c) of the Bankruptcy Code, the existence of these prior liens on the reclaimed goods renders otherwise valid reclamation claims valueless and entitled to only general unsecured claim status.

The issues before the Court today relate solely to the Prior Lien Defense to reclamation rights under section 546(c) of the Bankruptcy Code and not to the rights to an administrative expense under the newly enacted section 503(b)(9) of the Bankruptcy Code.[2] This new provision presents other issues concerning, *inter alia,* the valuing of the subject goods; what constitutes the actual receipt of the goods; how is the claim asserted; when is it to be paid; is it

---

[2] Enacted as part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") to provide an administrative priority for the value of goods received by the debtor in the 20 day period preceding bankruptcy. *See* fn. 5, *infra.*

3

subject to the claims processing and omnibus bar date orders, etc.?  These issues will not, and

need not, be parsed here.  Suffice it to say that in light of the section 503(b)(9) amendment,

section 546(c) is no longer an exclusive remedy for a prepetition seller.

***The Financing Facilities***

### a. The Prepetition Credit Facility

Dana was the borrower under a prepetition credit facility, dated March 4, 2005 (as

amended, the "Prepetition Credit Facility").  The Prepetition Credit Facility was a $400 million

revolving credit facility, of which up to a maximum of $100 million could be utilized for letters

of credit.  In connection with the lenders' (the "Prepetition Lenders") agreement to waive certain

defaults under the Prepetition Credit Facility, Dana and certain of Dana's domestic subsidiaries

(collectively, the Grantors") entered into a security agreement dated November 18, 2005, with

Citicorp USA, Inc., as administrative agent under the Prepetition Credit Facility pursuant to

which the Grantors granted to the Prepetition Lenders a security interest in their equipment,

inventory, accounts and certain other current assets.  Specifically, under the security agreement,

each Grantor granted security interests (collectively, the "Prepetition Lien").  As of the Petition

Date, borrowings under the Prepetition Credit Facility were not less than $381 million.  At that

time, the aggregate value of all collateral, including the prepetition collateral, pledged to the

Prepetition Lenders under the security agreement exceeded the amount of the Prepetition

Indebtedness.

### b. The Postpetition Credit Facility

On the Petition Date, this Court entered an order (the "Interim DIP Order"): (1)

authorizing the Debtors to (a) obtain $1.45 billion in secured Postpetition financing under that

4

certain Senior Secured Superpriority Debtor-in-Possession Credit Agreement, dated March 3, 2006 (as amended, the "DIP Facility"), and (b) utilize the Prepetition Lenders' cash collateral; and (2) granting adequate protection to the Prepetition Lenders.

Under the DIP Facility and pursuant to the Interim DIP Order, the lenders (the "DIP Lenders") were granted "a valid, binding, continuing, enforceable, fully-perfected first priority senior priming security interest in and lien (the "DIP Lien") upon all prepetition and postpetition property of the Debtors . . . whether now existing or hereafter acquired, that is subject to the existing liens."

The Interim DIP Order also provides that "[t]he cash of the Debtors party to the [Prepetition Credit Facility], including, without limitation, the Deposited or any other funds on deposit at the [Prepetition Lenders] as of the Petition Date, and any proceeds generated by the collection of accounts receivable, sale of inventory or other disposition of the Prepetition Collateral . . . are cash collateral of the [Prepetition Lenders] within the meaning of section 363(a) of the Bankruptcy Code. The Deposited Funds and all such proceeds of Prepetition Collateral are .. . 'Cash Collateral'" (collectively, the "Cash Collateral"). (ECF Doc. 55 at ¶19) The Interim DIP Order authorized the Debtors' use of the Prepetition Lenders' Cash Collateral on a postpetition basis.

As adequate protection for the diminution of the value of the Prepetition Lenders' interest in the prepetition collateral occasioned by, among other things, the priming of the Prepetition Lien by the DIP Lien and the Debtors' use of the Prepetition Lenders' cash collateral, the Prepetition Lenders were granted a replacement security interest in, and lien upon, all of the Debtors' collateral subject to the DIP Lien (including the prepetition collateral and the proceeds

5

thereof) (the "Replacement Lien"). The Replacement Lien was subordinated in priority only to

(a) the DIP Lien, (b) liens upon the DIP Lenders' collateral to which the DIP Lien was

subordinate and (c) a collateral carve-out for the payment of certain professionals' fees and other

fees specified in the Interim DIP.

On March 29, 2006, this Court entered a final order (the "Final DIP Order"), which,

among other things, approved the DIP Facility on a final basis and authorized the use of the

Prepetition Lenders' cash collateral and the granting of the DIP Lien and the Replacement Lien

to the DIP Lenders and Prepetition Lenders, respectively. In addition, the Final DIP Order

authorized the Debtors to refinance the Prepetition Indebtedness with the proceeds of the DIP

Facility. (ECF Docket No. 721). On March 30, 2006, pursuant to the terms and conditions of

the DIP Facility and the Final DIP Order, the Debtors repaid the Prepetition Indebtedness in full

using funds borrowed under the DIP Facility.

### The Issues

As noted, the Prepetition Indebtedness totaled approximately $381 million, all of which

was secured by the Prepetition Lien. The largest of the reclamation claims asserts a liability

totaling approximately $9.6 million. The Debtors contend that because the Prepetition

Indebtedness exceeds the value of each individual reclamation claim, the reclamation claims are

valueless. The Debtors also assert that the reclamation claims are valueless because the goods

subject to reclamation have been disposed of as part of a transaction to repay the prior

lienholder's claims.

Twenty-four responses from reclamation claimants (the "Reclamation Claimants"), were

filed and consist mainly of variations on a number of common arguments. Primarily, the

6

cornerstone is the Debtors' stipulation that the prepetition secured debt was not paid with the proceeds of the reclaimed goods, but instead with proceeds of the DIP Loan.  The Reclamation Claimants argue that (1) reclamation rights are subject only to a prior lien; (2) the prepetition debt was satisfied from a source other than the reclaimed goods; and thus (3) the reclaimed goods have been liberated from the prior lien and reclamation claims must now be valued in full. They contend that this result is compelled under the decision in *In re Phar-Mor, Inc*., 301 B.R. 482 (Bankr. N.D. Ohio 2003) ("*Phar-Mor*"), or pursuant to a newly-created federal common law of reclamation under BAPCPA.

**Discussion**

Reclamation is the right of a seller to recover possession of goods delivered to an insolvent buyer.  Under common law, the seller could only reclaim goods by proving that the buyer fraudulently induced delivery by misrepresenting its solvency.  *See Pester Refining Co. v. Ethyl Corp. (In re Pester Refining Co.)*, 964 F.2d 842,  844 (8th Cir. 1992).

Prior to BAPCPA, section 546(c) of the Bankruptcy Code provided that

The rights and powers of a trustee under sections 544(a), 545, 547, and 549 of this title are subject to any statutory or common-law right of a seller of goods that has sold goods to the debtor, in the ordinary course of such seller's business, to reclaim such goods if the debtor has received such goods while insolvent, but-

> (1) such a seller may not reclaim any such goods unless such seller demands in writing reclamation of such goods-
> > (A) before 10 days after receipt of such goods by the debtor; or
> > (B) if such 10-day period expires after the commencement of the case, before 20 days after receipt of such goods by the debtor; and
>
> (2) the court may deny reclamation to a seller with such a right of reclamation that has made such a demand only if the court-
> > (A) grants the claim of such a seller priority as a claim of a kind specified in section 503(b) of this title; or
> > (B) secures such claim by a lien.

11 U.S.C. § 546(c).

As this Court observed more than 23 years ago in an early interpretation of section

546(c), reclamation is actually "a misnomer, as seldom if ever is property actually returned or

reclaimed in a reorganization case in lieu of other available relief."  *Crown Quilt Corp. V. HRT

Industries, Inc. (In re HRT Industries, Inc.)*, 29 B.R. 861, 862 (Bankr. S.D.N.Y. 1983).  The

passage of time has validated this observation. From its enactment it was commonly understood

that former section 546(c) was not the source of a right of reclamation, but simply allowed a

seller to exercise a right of reclamation existing under non-bankruptcy law, subject to certain

limitations.  *In re R.F. Cunningham & Co., Inc.*, 2006 WL 3791329, *1 (Bankr. E.D.N.Y. Dec.

21, 2006);  *Dairy Mart,* 302 B.R. at 132-33.  *See also Allegiance Healthcare Corp. v.  Primary

Health Systems, Inc. (In re Primary Health Systems, Inc.),* 258 B.R. 111, 114 (Bankr. D. Del.

2001) ("section 546(c) does not create an independent right of reclamation.  Rather, it permits an

exception to the trustee's strong arm powers, if the seller has a right of reclamation under state

law.");  *Galey & Lord Inc. v. Arley Corp. (In re Arlco, Inc.),* 239 B.R. 261, 266 (Bankr. S.D.N.Y.

1999) (citing *In re Victory Markets Inc.,* 212 B.R. 738, 741 (Bankr. N.D.N.Y. 1997)("section

546(c) of the Bankruptcy Code historically had been viewed as a provision that "recognize[s]

any right to reclamation that a seller may have under applicable nonbankruptcy law.")

The right to reclamation is codified, in most states, in section 2-702 of the Uniform

Commercial Code (the U.C.C.).[3]  Former section 546(c), also established certain additional

---

[3] Section 2-702 provides in relevant part,

(2) Where the seller discovers that the buyer has received goods on credit while insolvent he may reclaim the goods
upon demand made within ten days after the receipt, but if misrepresentation of solvency has been made to the
particular seller in writing within three months before delivery the ten-day limitation does not apply. Except as
provided in this subsection the seller may not base a right to reclaim goods on the buyer's fraudulent or innocent

requirements the seller needed to follow that were not otherwise required under state law.

Under BAPCPA, amended section 546(c)[4] expands the reclamation reach-back period in two different ways. First, the look-back period before bankruptcy during which goods may be subject to reclamation is expanded from 10 days to 45 days. Second, the grace period, which gives a seller additional time after a bankruptcy filing during which to file its notice of reclamation, is expanded from 10 days to 20 days. The seller is also given up to 20 days after the bankruptcy filing to send its reclamation demand where the 45-day reclamation demand period expires after the bankruptcy filing.

In addition, amended 546(c) provides for an administrative claim: "If a seller of goods fails to provide notice in the manner described in paragraph (1), the seller still may assert the rights contained in section 503(b)(9)." 11 U.S.C. § 546(c)(2). New section 503(b)(9) in turn allows the seller an administrative expense claim equal to "the value of any goods received by

---

misrepresentation of solvency or of intent to pay.

(3) The right of the seller to reclaim under subsection (b) is subject to the rights of a buyer in ordinary course or other good faith purchaser under this division [U.C.C. § 2-403]. Successful reclamation of goods excludes all other remedies with respect to them.

[4] Pursuant to BAPCPA, sections 546(c) now provides that:

(c)(1) Except as provided in subsection (d) of this section and in section 507(c), and subject to the prior rights of a holder of a security interest in such goods or the proceeds thereof, the rights and powers of the trustee under sections 544 (a), 545, 547, and 549 are subject to the right of a seller of goods that has sold goods to the debtor, in the ordinary course of such seller's business, to reclaim such goods if the debtor has received such goods while insolvent, within 45 days before the date of the commencement of a case under this title, but, such a seller may not reclaim such goods unless such seller demands in writing reclamation of such goods--

(A) not later than 45 days after the date of receipt of such goods by the debtor; or

(B) not later than 20 days after the date of commencement of the case, if the 45-day period expires after the commencement of the case.

(2) If a seller of goods fails to provide notice in the manner described in paragraph (1), the seller still may assert the rights contained in section 503(b)(9).

the debtor within 20 days before the date of commencement of a case under this title in which

the goods have been sold to the debtor in the ordinary course of such debtor's business."  11

U.S.C. § 503(b)(9).  There is no shortage of commentary on the interplay of sections 503(b)(9)

and 546(c)[5]

    Section 546(c)[6] was also modified to remove the reference to the "statutory or common

---

[5] With the introduction of section 503(b)(9) priority, reclamation claims under amended section 546(c) have decreased importance because goods delivered to a debtor in the 20 days prior to bankruptcy will have automatic priority.  Thus, reclamation rights are now mainly beneficial for goods delivered in the 21 to 45 days prior to the bankruptcy filing under amended section 546(c).  However, with the expansion of the reclamation period, the likelihood of early administrative insolvency will increase, and debtor companies will need greater financial resources to reorganize.  *See* Charles J. Shaw and Brent Weisenberg, Effect of a Preexisting Security Interest in the Debtor's Inventory on the Rights of Reclamation Creditors, 2005 Norton Ann. Surv. Of  Bankr. Law Part I §15 (Sept. 2006) (hereinafter "Norton Survey").

    The provision of an administrative claim under section 503(b)(9) also resolves a conflict among the courts concerning whether a reclaiming seller may be granted an administrative claim or a lien on property of the debtor's estate pursuant to former section 546(c) even where there existed a lienholder with a superior interest.  *Allegiance Healthcare Corp. v. Primary Health Systems, Inc. (In re Primary Health Systems, Inc.),* 258 B.R. 111, 118 (Bankr. D. Del. 2001) (when secured creditor has a floating lien on all of a debtor's inventory and its claim exceeds the value of the inventory, reclamation right is valueless and the reclamation creditor is not entitled to an administrative or secured claim under section 546(c)(2)); *see also In re Quality Stores, Inc.*, 289 B.R. 324, 340 (Bankr. W.D. Mich. 2003) (because the value of the debtor's collateral was insufficient to satisfy the secured claim of prepetition lenders, there existed no collateral value to support the reclamation claimants' subordinate rights in the specific inventory consisting of their goods delivered to the debtor); *In re Bridge Information Systems, Inc.*, 288 B.R. 133, 138 (Bankr. E.D. Mo. 2001) (reclamation creditor produced no evidence to meet its burden of proof that sufficient proceeds remained from sale of inventory to preserve its state law reclamation rights against prior perfected secured claim); *In re Houlihan's Restaurant, Inc.*, 286 B.R. 137, 140 (Bankr. W.D. Mo. 2002) (noting that under state law a reclaiming seller's right to reclaim would be valueless if the goods were worth less than the value of a floating lien);*In re Arlco, Inc.*, 239 B.R. at 277; (reclamation claim rendered valueless because the proceeds from disposition of the goods were used to pay a prior perfected secured claim); *contra, In re Sunstate Dairy & Food Products Co.*, 145 B.R. 341, 346 (Bankr. M.D. Fla. 1992) ("Once a right of reclamation is acknowledged in bankruptcy, [reclaiming seller] has a right to obtain from this Court a lien or administrative expense award."); *In re Roberts Hardware Co.*, 103 B.R. 396, 399  (Bankr. N.D. N.Y. 1988) (granting administrative claim where secured creditor's superior status precluded seller's ability to exercise its right of reclamation with respect to the goods and any ensuing proceeds.); *In re Wathen's Elevators, Inc.*, 32 B.R. 912 (Bankr. W.D. Ky. 1983); *see also In re Leeds Building Products, Inc.*, 141 B.R. 265 (Bankr.N.D.Ga.1992) (noting that the "courts are not in agreement as to the scope of relief to be given to the aggrieved seller that is denied reclamation").

    [6] Pursuant to BAPCPA, sections 546(c) was amended as follows:

(c)(1) Except as provided in subsection (d) of this section and in section 507(c),** and subject to the prior rights of a holder of a security interest in such goods or the proceeds thereof, the rights and powers of the trustee under sections 544 (a), 545, 547, and 549 are subject to the right of a seller of goods that has sold goods to the debtor, in the ordinary course of such seller's business, to reclaim such goods if the debtor has received such goods while insolvent, within 45 days before the date of the commencement of a case under this title, but, such a seller may not

law right" of the seller.  Instead, amended section 546(c) provides that reclamation rights are

"subject to the prior rights of a holder of a security interest in such goods."  Congress provided

no explanation in the legislative history of section 546(c) for what it intended by this deletion.[7]

The Reclamation Claimants contend that the deletion of the reference to state law in the

amended section 546(c) no longer incorporates the state law right of reclamation, and instead

creates a brand new federal bankruptcy law right.  I disagree.

Former section 546 was entitled "Limitations on avoiding powers," and provided that if

a seller followed the procedures set forth in section 546(c), the trustee could not avoid the

reclamation right.  Amended section 546(c) remains a "Limitation on avoiding powers."  It is

---

reclaim such goods unless such seller demands in writing reclamation of such goods--

(A) not later than 45 days after the date of receipt of such goods by the debtor; or

(B) not later than 20 days after the date of commencement of the case, if the 45-day period expires after the commencement of the case.

(2) If a seller of goods fails to provide notice in the manner described in paragraph (1), the seller still may assert the rights contained in section 503(b)(9).

Additionally, BAPCPA added section 503(9) to the Bankruptcy Code:

(b) After notice and a hearing, there shall be allowed, administrative expenses, other than claims allowed under section 502(f) of this title, including--

...

(9) the value of any goods received by the debtor within 20 days before the date of commencement of a case under this title in which the goods have been sold to the debtor in the ordinary course of such debtor's business

** It is likely that the reference found in § 546(c)(1) was intended to refer to § 507(b) rather than § 507(c), which deals with claims of a governmental unit arising from an erroneous refund or credit of tax.

[7]    Several possible explanations have been suggested.  One is that Congress sought to resolve the issue of whether a secured creditor was a "good faith purchaser" under the U.C.C.  *See In re Reliable Drug Stores, Inc.,* 70 F.3d 948, 949 (7th Cir. 1995) (Court of Appeals, in *dicta*, noted that there was room for debate as to whether a party with a security interest qualified as a good faith purchaser.); *In re Arlco, Inc.*, 239 B.R. at 266-67 (stating that "[m]ost courts have treated a holder of a prior perfected, floating lien on inventory . . . as a good faith purchaser with rights superior to those of a reclaiming seller" and collecting cases demonstrating the majority rule); *Victory Markets*, 212 B.R. at 742 (same).  Another explanation is that amended "546(c) codifies the subordination of a reclaiming seller's rights to those of a lender secured by a floating lien in the same goods, although section 546(c) has to date applied nonbankruptcy law to the same effect."  Norton Survey, *supra*, note 3.

11

not a section dedicated to granting an independent federal right of reclamation nor does it create a coherent comprehensive federal scheme for reclamation.  First, Congress did not use the language of creation - Congress did not say that  "a seller may reclaim goods when...."  *See Sally S. Neely, How BAPCPA Affects the Rights of Unpaid Prepetition Sellers of Goods,* 32nd Lawrence P. King & Charles Seligson Workshop on Bankruptcy and Business Reorganization p. 17 (Sept. 27-29, 2006) (hereinafter, "Neely Article"); *see also Qwest Corp. v. City of Santa Fe, New Mexico,* 380 F.3d 1258, 1265 (10th Cir. 2004) *citing Gonzaga Univ. v. Doe,* 536 U.S. 273, 280 (2002) ("In order to create a federal right Congress must clearly manifest its intent to do so.");  *Edwards v. District of Columbia,* 821 F.2d 651, 657  (D.C. Cir. 1987) ("Congress must employ 'sufficiently specific and definite' statutory language in order to create rights..."). *See also Touche Ross & Co. v. Redington*, 442 U.S. 560, 567 (1979); *Cort v. Ash*, 422 U.S. 66, 78 (1975).  Moreover, if amended section 546(c) was a new federal reclamation right arising under the Bankruptcy Code, it would not be subject to the avoiding powers.[8]

Importantly,  "[w]hen Congress amends the bankruptcy laws, it does not write 'on a clean slate' ....  this Court has been reluctant to accept arguments that would interpret the Code...  to effect a major change in pre-Code practice that is not the subject of at least some discussion in the legislative history."  *Dewsnup v. Timm*, 502 U.S. 410, 419 (1992); *Pennsylvania Dept. of Public Welfare v. Davenport,* 495 U.S. 552,563 (1990) ("We will not

---

[8]   The sparse legislative history merely provides that "section 1227 of the Act amends section 546(c) ... to provide that the rights of a trustee under sections 544(a), 545, 547, and 549 are subject to the rights of a seller of goods to reclaim goods sold in the ordinary course to the debtor."  *See* Hon. William Houston Brown, Lawrence Ahern III, 2005 Bankr. Reform Legis. with Analysis 2d 11 U.S.C. § 546 *citing* (H. Report No. 109-31 to accompany S. 256, 109th Cong., 1st Sess. (2005) pp. 87, 132, 146; available at 2005 U.S.C.C.A.N. 88, at 153, 192, 204-05).

read the Bankruptcy Code to erode past bankruptcy practice absent a clear indication that

Congress intended such a departure."); *Emil v. Hanley,* 318 U.S. 515, 521 (1943).  As recently

reminded by the Second Circuit Court of Appeals, "we must not be guided by a single sentence

or member of a sentence, but look to the provisions of the whole law."  *See Northwest Airlines*

*Corp. v.  Assoc. of Flight Attendants-CWA,  (In re Northwest Airlines Corp.),* 2007 WL 926488

(2d Cir. March 29, 2007) *citing Gade v. Nat'l. Solid Wastes Mgmt. Ass'n.*, 505 U.S. 88, 98

(1992).

         In addition, the limitation that the reclamation claimant's right is "subject to the prior

rights of a holder of a security interest in such goods or the proceeds thereof" does not deal with

the rights of other "purchasers" or "buyers" of goods whereas the U.C.C. specifically makes a

seller's reclamation right "subject to the rights of a buyer in ordinary course or other good faith

purchaser."[9]  If amended 546(c) created an independent federal reclamation right that replaced

state law, then in bankruptcy a reclaiming seller would conceivably have broad rights superior

to those of buyers in the ordinary course of business, lien creditors or good faith purchasers

other than a holder of a prior security interest.  Clearly, Congress could not have intended to

permit reclamation of goods that have been sold to consumers or other good faith purchasers.

*See ie., In re Incredible Auto Sales LLC,* 2007 WL 927615, *6 (Bankr. D. Mont. Mar. 26, 2007)

("it may be a mistake to assume that the amended § 546(c) was intended to provide an entirely

---

[9] Section 1-201(19) states that "'[g]ood faith' means honesty in fact in the conduct or transaction concerned."  U.C.C. § 1-201(19). Good faith is defined in the case of a merchant as "honesty in fact and the observance of reasonable commercial standards of fair dealing in the trade." U.C.C. § 2-103. Section 1-201(33) defines a purchaser as "a person who takes by purchase." U.C.C. §  1-201(33). Section 1- 201(32) provides: "'[p]urchase' includes taking by sale, discount, negotiation, mortgage, pledge, lien, issue or re-issue, gift or any other voluntary transaction creating an interest in property." U.C.C. §  1-201(32).

13

new and self-contained body of reclamation law, because it fails to recognize the rights of

buyers in the ordinary course, other good faith purchasers and lien creditors, who were always

protected under the U.C.C.  Perhaps the intent was to incorporate and expand on the U.C.C.

reclamation rights, rather than to supplant them entirely, in which case some U.C.C. analysis

may continue to be relevant in interpreting and applying the new § 546(c).").

Moreover, without reference to state law, it is not clear if a seller could reclaim goods

already paid for, as there is no requirement that the "sold goods" be on credit terms. *Cf.* U.C.C.

§ 2-702(2).  Further, amended section 546(c) does not provide a limitation on when the seller

discovers the buyer's insolvency when the historic purpose underlying the right to reclamation

was to protect the seller from the buyer's fraud with respect to insolvency.  In addition, under

former 546(c), goods must be identifiable and in the possession of the debtor on the day of

demand.  Courts did not allow reclamation of goods that had been commingled with other goods

or were not identifiable. *See, e.g., In re Charter Oil Co.*, 54 B.R. 91, 92-93 (Bankr. M.D. Fla.

1985) (goods must be identifiable and in possession of debtor on date of demand); *see also*

*McCain Foods, Inc. v. Flagstaff Foodservice Co. New England, Inc. (In re Flagstaff*

*Foodservice Corp.)*,14 B.R. 462 (Bankr. S.D.N.Y. 1981); *In re Daylin, Inc.*, 596 F.2d 853, 856

(9th Cir. 1979).  It is unlikely that Congress intended to remove these defenses as well.

Moreover, as the reclaiming seller possesses certain rights "subject to the prior rights of

a holder of a security interest in such goods" and the Bankruptcy Code otherwise gives no

indication of what those "prior rights" might be, the only available referent for such "prior

rights" is nonbankruptcy law.  And the use of the definite article "the" to replace "any statutory

or common law" indicates that "the right" already exists - particularly where there is no

14

discussion in the legislative history that Congress intended to create a new independent right. *See* Neely Article at 17.

Finally, it is contrary to the purpose of the Bankruptcy Code to enhance the rights of one set of creditors at the expense of other creditors simply because a bankruptcy petition has been filed. *Id.*; *see also*, *Butner v. United States,* 440 U.S. 48, 54-55 (1979) ("Property interests are defined by state law. Unless some federal interest requires a different result, there is no reason why such interest should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding."); *Yenkin-Majestic Paint Corp. v. Wheeling-Pittsburgh Steel Corp. (In re Pittsburgh-Canfield Corp.)*, 309 B.R. 277, 287-88 (B.A.P. 6th Cir. 2004)("Permitting such a creditor (whose claim outside of bankruptcy is nothing more than a general unsecured claim) to elevate its claim to administrative or secured status in bankruptcy would give it a windfall.").

Based upon the foregoing, I find that the amended 546(c) does not create a new "federal right of reclamation." The question remains however as to whether the "Prior Lien Defense" renders the Reclamation Claims valueless.

**Prior Lien Defense & *Dairy Mart***

The Reclamation Claimants argue that the reclamation claims must be allowed because (a) reclamation rights are not extinguished by the existence of a prior lien, but only rendered subordinate to the prior lien, and (b) the Prepetition Lenders were oversecured, and thus the Reclamation Claimants should recover from any excess value.

In *Dairy Mart*, in the context of a refinancing transaction substantially similar to the one presented here, the Court held that, where the claim of a prepetition secured lender with a

15

floating lien on inventory is paid out of the proceeds of a postpetition credit facility supported by a new floating lien on inventory, the reclaimed goods securing the prepetition lender's debt effectively have been disposed in satisfaction of that debt. Such a sale of goods in satisfaction of prepetition secured debt renders all reclamation claims for those goods valueless.  *Dairy Mart,* 302 B.R. at 135-36.  *See also In re Advanced Marketing Sews. Inc.*, 2007 WL 162685, *3 (Bankr. D. Del. Jan. 22, 2007) (holding that reclamation rights were subject to both pre- and postpetition liens).  Thus, "a reclaiming seller is entitled to a lien or administrative expense claim only to the extent that the value of the specific inventory in which the reclaiming seller asserts an interest exceeds the amount of the floating lien in the debtor's inventory."  *In re Pittsburgh-Canfield Corp.*, 309 B.R. 277, *citing In re Leeds Bldg. Prods.,* 141 B.R. 265 (Bankr. N.D. Ga. 1992)*; In re Primary Health Systems, Inc.,* 258 B.R. at 117 ("under state law, a reclaiming seller would not have been able to reclaim its goods if the goods were not worth more than the value of the floating lien because the holder of the first lien could have asserted its rights and been entitled to all of the inventory."); *Arlco*, 239 B.R. at 272 ("it is only when the reclaiming seller's goods or traceable proceeds from those goods are in excess of the value of the superior claimants's claim that the reclaiming seller will be allowed either to reclaim the goods or receive and administrative claim or lien in an amount equal to the goods or receive an administrative claim or lien in an amount equal to the goods that remain after the superior claim has been paid.").

Reclamation is an in rem remedy, and reclaiming sellers have no right to compel a lienholder to satisfy its claim from other collateral. *See In re Arlco*, 239 B.R. at 275 ("a party seeking reclamation ... may not compel the application of marshalling against a good faith

purchaser."); *see also In re Advanced Marketing Services, Inc*. 2007 WL 162685 at *4

("unsecured creditors cannot invoke the equitable doctrine of marshaling.") (*quoting In re Pittsburgh-Canfield Corp.,* 309 B.R. at 291. Accordingly, if the value of any given reclaiming supplier's goods does not exceed the amount of debt secured by the prior lien, that reclamation claim is valueless. *In re Pittsburgh-Canfield Corp*., 309 B.R. 277; *Dairy Mart*, 302 B.R. at 134; *In re Primary Health Systems, Inc*., 258 B.R. at 117; *In re Leeds Bldg. Prods.,* 141 B.R. 265; *see also,* C. Richard McQueen and Jack F. Williams, Tax Aspects of Bankruptcy Law and Practice, §7:11. (3d ed. 2006) ("The reality is that, in most cases, asset-based financing provides a prior perfected lien on most goods such that the right of reclamation is rendered moot."). The Prepetition Indebtedness totaled approximately $381 million secured by the Prepetition Lien. The largest of the Reclamation Claims asserts a liability of approximately $9.6 million.

The Reclamation Claimaints argue that this Court should reject the *Dairy Mart* rationale and adopt the rationale of *Phar-Mor* where the court found that since the debtor's prepetition secured lenders were paid in full through a postpetition debtor-in-possession facility, and not from the sale of the subject goods, their liens were released and the right to reclaim was not affected by the secured creditors. 301 B.R. 482 (Bankr. N.D. Ohio 2003)

At issue in *Phar-Mor* was the nature of the transaction transferring the liens. The transaction arranged between pre- and post-petition lenders provided for the payment of the pre-petition financers and in return, the pre-petition liens were deemed "released, terminated and extinguished." *Id*. at 489. In exchange for financing, the post-petition financers received new liens in the bankruptcy estate with priority over all other liens. *Id* at 489. The *Phar-Mor* Court declared that this transaction in which payment was swapped for liens was neither an

assignment, nor an assumption, nor the sale of the subject goods.  Therefore, the reclaiming

sellers were granted reclamation remedies because the pre-petition liens were released, and in

the Court's opinion, post-petition liens could not attach to the detriment of reclaiming sellers.

(*Id*. at 489-497).  As one commentator has noted,

> An initial problem with the *Phar-Mor* decision is the court's characterization of the
> transaction between the pre- and post-petition financers.  *In re Dairy Mart, supra*,
> correctly decided that a reclaiming seller could not reclaim on similar facts. As in *Phar-Mor*,
> the bankruptcy estate in *Dairy Mart* was subject to floating liens in all pre-petition
> inventory.  A court approved financing arrangement provided that pre-petition lenders
> were to release their liens in exchange for payment from post-petition financers.  Post-petition
> financers were in turn granted first-priority liens in the bankruptcy estate.  The
> *Dairy Mart* court concluded that the reclamation claims were rendered valueless because
> the goods being reclaimed were used to satisfy the pre-petition holder's liens.  In
> contrast to *Phar-Mor*, *Dairy Mart* characterized the transaction differently, calling the
> release of liens for payment an "integrated transaction." For the reasons set forth below,
> *Dairy Mart* is the better view.

> The difference in the decisions lies in how the pre-petition liens were satisfied. ...  In
> both *Dairy Mart* and *Phar-Mor*, pre-petition liens were satisfied from the very goods
> being reclaimed. Conventionally, pre-petition lenders could have foreclosed on the
> goods held under their liens in order to satisfy their claims. Instead, the pre-petition lien
> holders released their liens in exchange for payment from the post-petition financers.
> Following the logic of the *Dairy Mart* court, in *Phar-Mor* the goods were "paid" to post-petition
> financers through the granting of new liens.  In exchange, the pre-petition
> financers received payment satisfying their liens.  The *Dairy Mart* court, therefore,
> correctly denied the reclamation claims because the goods were used to satisfy pre-petition
> liens.

Scott J. Kelley, The Competition Between Reclaiming Sellers and Lienholders in Bankruptcy, 2

RUTGERS BANKR. L.J. 1 (May 2005) (footnotes and citations omitted).  Similarly, *In re*

*Pittsburgh-Canfield Corp.*, 305 B.R. 688 (Bankr.N.D.Ohio 2003) *aff'd*, 309 B.R. 277 (B.A.P.

6th Cir. 2004), was a reclamation claim case with facts similar to *Phar-Mor* and *Dairy Mart*.  In

*Pittsburgh-Canfield,* the bankruptcy court deemed the transaction an assignment and the

reclaiming sellers were not allowed to reclaim because a prepetition credit agreement secured

18

all of the debtor's inventory.  The Bankruptcy Appellate Panel of the Sixth Circuit affirmed. [10]

Here, the prepetition collateral, including the reclaimed goods, was subject to the Prepetition Lien.  Pursuant to the Interim DIP Order, the Debtors were authorized to use the Prepetition Lenders' cash collateral, with the Replacement Lien providing a replacement security interest in all of the Debtors collateral subject to the DIP Lien, including the prepetition collateral and the proceeds thereof.  The DIP Lien granted to the DIP Lenders pursuant to the Interim DIP Order and the Final DIP Order, provided a security interest in, and lien upon, all of the collateral constituting the prepetition collateral.  Thus the lien chain continued unbroken. *Cf. Dairy Mart*, 302 B.R. at 184 (holding that the transaction of releasing the prepetition lien and simultaneously granting the lien to the post-petition lender, must be viewed as an integrated transaction).  The grant of the DIP Lien was a necessary condition of the DIP Lenders' agreement to enter into the DIP Facility.  Pursuant to the Final DIP Order, the Prepetition Indebtedness was refinanced and paid off using the proceeds of the DIP Facility on the payoff date.  Because the reclaimed goods or the proceeds thereof were either liquidated in satisfaction of the Prepetition Indebtedness or pledged to the DIP Lenders pursuant to the DIP Facility, the reclaimed goods effectively were disposed as part of the March 2006 repayment of the Prepetition Credit Facility.  Accordingly, the Reclamation Claims are valueless as the goods remained subject to the Prior Lien Defense.

With respect to the remaining arguments raised by certain of the Reclamation Claimants, I find them to be without merit.  A third and essentially unsupported argument that the Interim

---

[10] Both *Phar-Mor* and *Pittsburgh-Canfield* were appealed to the Sixth Circuit BAP although only a decision in *Pittsburgh-Canfield* has been published.  *See In re Snyder Drug Stores, Inc.*, 307 B.R. 889, 893 n.7 (Bankr. N.D. Ohio 2004).

DIP Order and the Final DIP Order were not founded on good faith and fair dealing was asserted.  Under the U.C.C., "good faith" means honesty in fact and the observance of reasonable commercial standards of fair dealing.[11]  *See Pittsburgh-Canfield,* 309 B.R. at 289-290 (and cases cited therein).  The Interim Dip Order and the Final DIP Order, both final and unappealable, contain explicit findings of good faith.  Lastly, the Reclamation Claimants were not lulled by the Debtors into believing that they would receive administrative claims for their reclamation demands.  Unlike the facts in the *Georgetown Steel* case,[12] the Reclamation Procedures Motion and Order both reference the possibility that reclamation claims may be subject to prior liens.  *See* Reclamation Procedures Motion, ¶¶ 12, 14(c); Reclamation Procedures Order, ¶ 2(c); *see also Pittsburgh-Canfield*, (rejecting estoppel argument and noting that the reclamation procedures order reference the bank lenders' liens as defenses to the reclamation demands).

---

[11] See UCC § 1-201.

[12]  In *Georgetown Steel*, neither the debtor's motion nor order disclosed the Prior Lien Defense and instead provided that all reclamation claims allowed in the debtor's reclamation report would be deemed administrative claims.  318 B.R. at 350.

**Conclusion**

Accordingly, for the reasons set forth, the Debtors' Motion for an order confirming the validity of the Prior Lien Defense and approving the reconciliation of the Reclamation Claims subject to the motion in the amount of $0.00 is granted.

SUBMIT AN ORDER CONSISTENT WITH THE FOREGOING.

Dated: New York, New York
        April 19, 2007

                                        /s/ Burton R. Lifland_____
                                        United States Bankruptcy Judge