**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------x
| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| Dana Corporation, et al. | : | Case No. 06-10354 (BRL) |
| | : | (Jointly Administered) |
| Debtors, | | |

-------------------------------------------------------x
APPEARANCES:

PACHULSKI STANG ZIEHL YOUNG
JONES & WEINTRAUB LLP
Conflicts Counsel to Debtors
780 Third Avenue
New York, New York 10017
212-561-7700
By:   Dean A. Ziehl, Esq.
        Robert J. Feinstein, Esq.
        Debra I. Grassgreen, Esq.
        Robert M. Saunders, Esq.

BROUSE MCDOWELL L.P.A.
Attorneys for Creditor, Goodyear Tire & Rubber Co.
1001 Lakeside Avenue
Cleveland, Ohio 44114
216-830-6830
By:   Marc B. Merklin, Esq.
        Alan M. Koschik, Esq.

HERRICK FEINSTEIN LLP
Attorneys for Creditor, Goodyear Tire & Rubber Co.
2 Park Avenue
New York, New York 10016
212-592-1400
By:   Joshua J. Angel, Esq.
        Paul Rubin, Esq.


Before: Burton R. Lifland,
            United States Bankruptcy Judge

## MEMORANDUM DECISION DENYING
## REQUEST TO FILE LATE 503(B)(9) CLAIM

The Goodyear Tire & Rubber Company ("Goodyear") moves for enlargement of time pursuant to rule 9006(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") to file claims for the sale of goods delivered during the twenty-day period immediately preceding the bankruptcy filing of the Dana Corporation and its affiliated debtor corporations (collectively, the "Debtors") on March 3, 2006 (the "Petition Date") despite the expiration of a bar date six months earlier. The Debtors and the Creditors Committee object.

**Background**

Goodyear is one of the Debtors' major vendors of automotive hoses for braking, transmission, and air conditioning systems. According to Goodyear, as of Petition Date, Goodyear was owed more than $3.2 million by the Debtors, slightly more than the amount the Debtors' schedules reported as owing to Goodyear. Of the total claims, slightly more than half are attributable to goods Goodyear believed had been delivered to Debtors before Friday, February 10, 2006 (i.e., the last business day twenty days prior to the Petition Date) (the "Unsecured Claim"), while the reminder of Goodyear's claims pertained to goods delivered during the twenty-day period immediately prior to the Petition Date.

On March 8, 2006, Goodyear made a reclamation demand of $2,789,413.11, pursuant to section 546(c) of title 11, United States Code (the "Bankruptcy Code"), on account of goods delivered during the forty-five days immediately prior to the Petition Date. However, Goodyear states that it did not to pursue the reconciliation process for reclamation claims primarily because of the priority given to the new category of prepetition administrative expense claims provided

2

for by section 503(b)(9) of the Bankruptcy Code, which became effective on October 17, 2005, pursuant to the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"). Goodyear's section 503(b)(9) claim (the "503(b)(9) Claim") is in the amount of $1,401,053.85 for goods delivered to the Debtors within three weeks of the Debtors' bankruptcy filing.

On June 28, 2006, Goodyear entered into an essential supplier agreement with the Debtors pursuant to this Court's order dated March 3, 2006, authorizing such agreements. In that agreement, Goodyear expressly reserved the remainder of its Unsecured Claim and its Section 503(b)(9) Claim. On June 30, 2006, Goodyear filed a proof of claim on account of the remaining portion of its Unsecured Claim. That proof of claim specified that Goodyear's address for service in this case was its Law Department at its corporate headquarters, 1144 East Market Street, Akron, Ohio. Goodyear had previously reached an agreement to sell this unsecured claim to J.P.Morgan. On the same day the unsecured claim was filed, a notice of assignment of the claim to J.P.Morgan was filed with the Court. Goodyear contends that it did not include its Section 503(b)(9) Claim with the proof of claim filed on June 30, 2006, because it was not being sold to J.P.Morgan, because it was of a higher priority pursuant to Section 503(b)(9), and Goodyear was uncertain of the procedure that would be provided for filing Section 503(b)(9) administrative expense claims.

Also, on June 30, 2006, the Debtors filed their Schedules of Assets and Liabilities. The Debtors scheduled Goodyear with six general unsecured claims totaling $3,109,995 owed by five Different Debtors.

On July 19, 2006, this Court entered an order (the "Bar Date Order"), establishing

September 21, 2006 as the last date to file proofs of claims for all prepetition claims (the "Bar Date"), including prepetition administrative expense claims under section 503(b)(9) of the Bankruptcy Code. The notice of the bar date (the "Bar Date Notice") specifically provided that "Claims under section 503(b)(9) of the Bankruptcy Code must be filed by the General Bar Date." Bar Date Notice, § 3.

The Debtors' Bar Date Notice was served between August 2-8, 2006.[1] According to the certificate of service filed by BMC, the Debtors' noticing agent, copies of the notice were mailed to several Goodyear addresses, including Goodyear's Law Department at the address that appeared on Goodyear's unsecured proof of claim filed on June 30, 2006, and that was designated as the correct address for service to Goodyear. Those notices were never returned by the United States Postal Service as undeliverable. Goodyear contends however that the Bar Date Notice was not received by Goodyear's Law Department or any other office at its headquarters. Goodyear also contends that its Law Department, and specifically the office of one of its associate general counsels, maintains a strict procedure for tracking the receipt of bankruptcy notices and service of process which includes forwarding all bankruptcy notices to a paralegal responsible for bankruptcy and collection matters who then ensures that they are brought to the attention of counsel. The legal department also maintains a detailed log of all notices and summonses received, including bankruptcy notices delivered to the bankruptcy and collection paralegal. That log does not include a listing of a claims bar date notice in the Debtors' cases. Moreover, Goodyear also contends that its bankruptcy paralegal has no recollection of the

---

[1] In addition to the mailing, notice of the Bar Date was published in The Wall Street Journal and The Toledo Blade.

notice, is confident that she would have recognized the importance of a bar date notice if received, and has confirmed that no bar date notice or order appears in the file she maintains for the Debtors' cases.

The Debtors' certificate of service regarding the Bar Date Notice also states that notices were mailed to Goodyear's general counsel and chief executive officer. Goodyear contends that those offices routinely direct all legal process and notices concerning bankruptcies to the same associate general counsel whose office in the law department tracks legal process and who delivers bankruptcy notices to the bankruptcy and collection paralegal. Goodyear argues that office also did not receive the Bar Date Notice.  Similarly Goodyear submits that its Chief Executive Officer forwards copies of bankruptcy pleadings received by his office to Damon Audia, an assistant treasurer of the company, who maintains a file for the Debtors' case as well. Upon investigation, Goodyear determined that materials were located in that file pertaining to the Debtors' cases but did not include the Bar Date Notice.  Mr. Audia has no recollection of receiving the Bar Date Notice.  Mr. Audia also assertedly forwards copies of legal notices in the Debtors' cases to an attorney and a financial planning director in Goodyear's Engineered Products Division, neither of whom have any recollection of the Bar Date Notice nor a copy of the notice in their files. On March 29, 2007, over six months after the Bar Date had passed, Goodyear filed its 503(b)(9) Claim.

**Discussion**

The claims allowance process is an integral component of the court's equitable power to restructure debtor-creditor relationships. *In re Best Products Co., Inc.*, 140 B.R. 353, 356 (Bankr. S.D.N.Y. 1992)(citations omitted); *see also First Fidelity Bank, N.A. v. Hooker Invs. Inc.*

*(In re Hooker Invs., Inc.),* 937 F.2d 833, 840 (2d Cir.1991) ("[A] bar order does not function merely as a procedural gauntlet, but as an integral part of the reorganization process.")  Under chapter 11 of the Bankruptcy Code, certain claimants against an estate in bankruptcy must file proofs of claim in order to participate in the reorganization.  Fed. R. Bankr. P. 3003(c).  After the passage of the bar date, whatever date that may be pursuant to order of the court, the claimant cannot participate in the reorganization unless he establishes sufficient grounds for the failure to file a proof of claim.  *In re Best Products Co., Inc*., 140 B.R. at 357, *citing Certified Class in Charter Securities Litigation v. Charter Co.* (*In re Charter Co.)*, 876 F.2d 866 (11th Cir. 1989).  In chapter 11, a known creditor must receive proper, adequate notice before its claim is forever barred.  *In re Best Products Co., Inc*., 140 B.R. at 357.  Thus, except when a known creditor is not listed on the schedules and hence fails to receive notice of the bar date, the bar date is strictly enforced.  *Id. citing Wright v. Placid Oil Co.*, 107 B.R. 104, 106 (N.D. Tex. 1989); *see also In re Hooker Invs., Inc.,* 937 F.2d at 840 ("If individual creditors were permitted to postpone indefinitely the effect of a bar order . . . the institutional means of ensuring the sound administration of the bankruptcy estate would be undermined.").  Only if the claimant can demonstrate excusable neglect may the court apply general principles of equity and permit a late-filed proof of claim, whether an administrative expense claim under section 503 or a general unsecured claim under Bankruptcy Rule 3003.  *See Pioneer Investment Services Company v. Brunswick Associates Limited Partnership,* 507 U.S. 380, 382-83 (1993); Fed. R. Bankr. P. 9006(b)(2).[2]  The burden of proving excusable neglect is on the movant who is seeking to

---

[2] Bankruptcy Rule 9006(b)(1) provides in relevant part that the court for cause shown may at any time in its discretion on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect.

enlarge his time. *In re Drexel Burnham Lambert Group, Inc.*, 148 B.R. 1002, 1005 (S.D.N.Y. 1993); *In re R.H. Macy & Co., Inc.*, 161 B.R. 355, 360 (Bankr. S.D.N.Y. 1993). As the Supreme Court noted in *Pioneer*, the determination as to granting permission to file a late claim is, at bottom, an equitable one, which takes into account all of the relevant circumstances surrounding the party's failure to file timely. These factors include, (i) the danger of prejudice to the debtor; (ii) the length of the delay and its potential impact on judicial proceedings; (iii)the reason for the delay, including whether it was within the reasonable control of the movant and taking into account the movant's sophistication; and (iv) whether the movant acted in good faith. *Pioneer,* 507 U.S. at 395.

In the Second Circuit, however, the "*Pioneer* factors are not accorded equal weight. Typically, the length of the delay, the danger of prejudice, and the movant's good faith usually weigh in favor of the parties seeking the extension. Consequently, the Second Circuit, as well as other Circuits, focus on the reason for the delay as the predominant factor." *In re Musicland Holding Corp.*, 356 B.R. 603, 607 (Bankr. S.D.N.Y. 2006).

As cautioned by the Second Circuit however,

> We operate in an environment . . . in which substantial rights may be, and often are, forfeited if they are not asserted within time limits established by law. Judges, of course, make mistakes. We, like the district court, have considerable sympathy for those who, through mistakes-counsel's inadvertence or their own-lose substantial rights in that way. And there is, indeed, an institutionalized but limited flexibility at the margin with respect to rights lost because they have been slept on. But the legal system would groan under the weight of a regimen of uncertainty in which time limitations were not rigorously

---

> enforced-where every missed deadline was the occasion for the embarkation on extensive trial and appellate litigation to determine the equities of enforcing the bar.

*Midland Cogeneration Venture Ltd. v. Enron Corp. (In re Enron Corp.)*, 419 F.3d 115, 123 (2d Cir. 2005).

Goodyear argues that the reason for the delay in filing its 503(b)(9) Claim is because it did not receive the Bar Date Notice. Goodyear agrees that the Certificate of Mailing reflects that the Bar Date Notice was mailed to Goodyear at the address designated by Goodyear as the correct address for service and addressed to the attention of the appropriate department. In addition, BMC, the Debtors' claims and noticing agent, mailed an additional twenty Bar Date Notices to Goodyear. Goodyear contends they were never received.

Courts uniformly presume that an addressee receives a properly mailed item when the sender presents proof that it properly addressed, stamped, and deposited the item in the mail. *See In re R.H. Macy Co., Inc.,* 161 BR 355, *citing Hagner v. United States,* 285 U.S. 427, 430 (1932) ("the rule is well settled that proof that a letter properly directed was placed in a post office creates a presumption that it reached its destination in usual time and was actually received by the person to whom it was addressed"); *see also Leon v. Murphy*, 988 F.2d 303, 309 (2d Cir.1993) (finding, under New York law, that when sender "presents proof of office procedure followed in a regular course of business, and these procedures establish that the required notice has been properly addressed and mailed," a presumption of receipt arises).

While the presumption is a rebuttable one, it is a very strong presumption and can only be rebutted by specific facts and not by invoking another presumption and not by a mere affidavit to the contrary. *See In re Borchert*, 143 B.R. 917, 920 (Bankr. D.N.D. 1992) *citing*

*Arkansas Motor Coaches Ltd., Inc.*, 198 F.2d 189, 191 (8th Cir. 1952). Some courts require clear and convincing evidence to overcome the presumption of delivery. *See Moody v. Bucknum (In re Bucknum),* 951 F.2d 204, 207 (9th Cir. 1991) ("The presumption can only be overcome by clear and convincing evidence that the mailing was not, in fact, accomplished."). Evidence of an objective nature going beyond the claimant's statement of non-receipt is necessary. *CUNA Mutual Ins. Group v. Williams (In re Williams)*, 185 B.R. 598, 600 (9th Cir. BAP 1995) (evidence of business routine regarding receipt of mail not sufficient; more positive evidence such as testimony of a clerk's office employee that notice was not sent or proof that none of the listed creditors received notice or that the mail was returned unclaimed.); *In re Chicago P'ship Bd., Inc.*, 236 B.R. 249, 256 (Bankr. N.D. Ill.1999) ( the presumption that the addressee of a properly addressed and mailed notice receives that notice may be rebutted by "direct" and "substantial" evidence); *Ms. Interpret v. Rawe Druck-Und-Veredlungs-GMBH (In re Ms. Interpret),* 222 B.R. 409, 413 (Bankr. S.D.N.Y. 1998) (a party must do more than merely assert that it did not receive the mailing; its testimony or affidavit of non-receipt is insufficient, standing alone, to rebut the presumption.); *Dependable Insurance Co. v. Horton (In re Horton),* 149 B.R. 49, 58 (Bankr. S.D.N.Y.1992) (finding that an addressee did not rebut the presumption of receipt as it did not present evidence that, because of the incomplete address, the postal service could not deliver the notice of bankruptcy to its post office box and further, its affidavits denying receipt, "[stood] merely as general denials" and were insufficient to rebut the presumption); *In re STN Enterprises, Inc.,* 94 B.R. 329, 335 (Bankr. D. Vt. 1988) ("the combination of the facts that the address was only 'slightly incorrect,' the notice was never returned to debtor's attorney as undelivered, and that [the creditor] had received other mailings

from debtor's attorney at the incorrect address lead us to conclude that the [creditor received the] notice of the bar date.").

Here, Goodyear has failed to overcome the presumption of receipt. Goodyear failed to demonstrate that the Bar Date Notice was not mailed nor that there was any deficiency in the address or mailing process. Despite Goodyear's attempts to trace its receipt of mail and forwarding procedures, I find it incredulous that of 21 Bar Date Notices mailed, including Notices sent to Goodyear's general counsel and chief executive officer, Goodyear failed to receive even one. *See North American Car Corp. v. Peerless Weighing & Vending Mach. Corp.*, 143 F.2d 938, 940-41 (2d Cir. 1944) ("at least four notices of various forms were sent to its treasurer, Johnson, at its Chicago address. The inference that not all of these communications failed of arrival is rather violent . . . it seems more probable that the presently important details of these communications were overlooked, rather than that they were not received at all."); *In re Robinson*, 228 B.R. 75, 83 (Bankr. E.D.N.Y.1998) ("It is highly unlikely that two properly addressed notices, one sent to Pennsylvania and the other to North Carolina, were both lost in the mail. "); *In re Borchert* 143 B.R. at 920 ("it is incredulous to think that four letters sent by two different people were not received by two different intended recipients. An affidavit suggesting non-receipt of a single letter by a single recipient might be worthy of belief but for two separate entities to both claim to have no record of receiving the letters is a rather convenient defense at this late date").

Goodyear's argument that it should also be excused for failing to file timely because the 503(b)(9) Claims were a new breed of claim is meritless. The 503(b)(9) claims are prepetition claims and were clearly provided for in the Bar Date Notice. The face of the proof of claim

forms even had a separate box and checkbox for section 503(b)(9) claims and accompanying instructions. Goodyear filed its Unsecured Claims even before the Bar Date was set. Although it was well aware of its 503(b)(9) Claim, Goodyear admits that "[b]ecause the market for Section 503(b)(9) Claims was not sufficiently attractive, Goodyear held those claims . . . " Clearly Goodyear is a highly sophisticated creditor who initially chose not to file its 503(b)(9) Claim for business reasons. Although Goodyear asserts it was waiting further instructions, it failed to check the docket for such instructions for more than six months after the Bar Date and eight months after the Bar Date Order was entered. *See, i.e., Wechsler v. Equitable Life Assurance Society,* 246 B.R. 490, 495 (S.D.N.Y. 2000) (reason for delay weighs against party where he failed to check the docket for weeks). Once the Bar Date Order was entered, a simple review of the docket would have revealed the date and the type of claims that were covered. In fact, according to Goodyear such a review did finally reveal that information.

Contrary to Goodyear's assertion, its six-month delay is not excusable. *See In re Enron Corp*. 419 F.3d at 125 (Cir. 2005) ( delay of more than six months after that date was "substantial, "). While the Debtors have not yet filed their plan, the process is well underway in light of the stringent time lines under BAPCPA. The strict bar date provided by this Court was intended, in part, to facilitate the equitable and orderly intake of claims and enable the Debtors to understand the universe of liabilities in connection with plan negotiations and formation. In this Circuit, whether a claim is submitted before the date on which a reorganization plan is filed ordinarily will not be conclusive. "Magnifying the importance of that date necessarily minimizes the importance of the bar date, and fails to recognize adequately the practical centrality to bankruptcy reorganizations of negotiations among creditors and debtors." *In re Enron Corp*.,

419 F.3d at 129; *see also In re Kmart Corp.,* 381 F.3d 709, 713 (7th Cir. 2004) (affirming the disallowance of a late-filed claim notwithstanding the fact that the debtor was "on full notice of [the creditor's] claim and could have easily taken it into account when it drafted its reorganization plan").

Lastly, allowing Goodyear's 503(b)(9) Claim would prejudice the Debtor. First, as an administrative claim, it is a substantial claim. Second, the floodgates argument is a viable one. There are close to 15,000 claims filed in the Debtors' cases, more than 800 of which were filed after the Bar Date. Granting the requested relief to Goodyear, a creditor who was well aware of its claim, was mailed 21 Notices of the Bar Date, filed other claims and has actively participated in these cases would set an untenable precedent and would likely precipitate a flood of similar claims. *See In re Enron,* 419 F.3d at 130; *In re Kmart*, 381 F.3d at 709.

Accordingly, for the reasons set forth above, the motion to file the late 503(b)(9) Claim is denied.

IT IS SO ORDERED.

Dated: New York, New York
      May 30, 2007

                                            /s/ Burton R. Lifland
                                            United States Bankruptcy Judge