JONES DAY
222 East 41st Street
New York, New York 10017
Telephone:  (212) 326-3939
Facsimile:  (212) 755-7306
Corinne Ball (CB 8203)
Steven C. Bennett (SB 2746)
Pedro A. Jimenez (PJ 1026)

JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio 44114
Telephone:  (216) 586-3939
Facsimile:  (216) 579-0212
Heather Lennox (HL 3046)
Robert W. Hamilton (RH 3130)

Attorneys for Debtors
  and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-------------------------------------------------------------x
                                      :
In re                                 :   Chapter 11
                                      :
Dana Corporation, et al.,             :   Case No. 06-10354 (BRL)
                                      :
                Debtors.              :   (Jointly Administered)
                                      :
-------------------------------------------------------------x
```

**NOTICE OF FILING OF AMENDED PLAN SUPPORT
AGREEMENT IN CONNECTION WITH MOTION OF
DEBTORS  AND DEBTORS  IN POSSESSION FOR ENTRY OF AN
ORDER  (A) APPROVING SETTLEMENT AGREEMENTS WITH THE
UNITED STEELWORKERS AND UNITED AUTOWORKERS, PURSUANT
TO 11 U.S.C. §§ 1113 AND 1114(E) AND FEDERAL RULE OF BANKRUPTCY
PROCEDURE 9019, AND (B) AUTHORIZING THE DEBTORS TO ENTER INTO
PLAN SUPPORT AGREEMENT, INVESTMENT AGREEMENT AND RELATED
AGREEMENTS, PURSUANT TO 11 U.S.C. §§ 105(A), 363(B), 364(C)(1), 503 AND 507**

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

1.       On July 6, 2007, the undersigned filed with this Court the Motion of Debtors and Debtors in Possession for Entry of an Order (A) Approving Settlement Agreements with the United Steelworkers and United Autoworkers, Pursuant to 11 U.S.C. §§ 1113 and 1114(e) and Federal Rule of Bankruptcy Procedure 9019, and (b) Authorizing the Debtors to Enter into Plan Support Agreement, Investment Agreement and Related Agreements, Pursuant to 11 U.S.C. §§ 105(a), 363(b), 364(c)(1), 503 and 507 (Docket No. 5645) (the "Motion").

2.       The undersigned are hereby filing the Amended Plan Support Agreement, which shall be substantially in the form annexed hereto (the "Amended Plan Support Agreement"), in connection with the Motion.

3.       Copies of the Motion, and the Amended Plan Support Agreement may be obtained on from the Court's website http://www.ecf.nysb.uscourts.gov or, without charge, at the website of the Debtors' claims and noticing agent at http://www.dana.bmcgroup.com

Dated:  July 25, 2007
        New York, New York

Respectfully submitted,


/s/ Corinne Ball
Corinne Ball (CB 8203)
Steven C. Bennett (SB 2746)
Pedro A. Jimenez (PJ 1026)
JONES DAY
222 East 41st Street
New York, New York  10017
Telephone:  (212) 326-3939
Facsimile:  (212) 755-7306

Heather Lennox (HL 3046)
Robert W. Hamilton (RH 3130)
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio  44114
Telephone:  (216) 586-3939
Facsimile:  (216) 579-0212

ATTORNEYS FOR DEBTORS AND
DEBTORS IN POSSESSION

**THIS AGREEMENT IS NOT AN OFFER WITH RESPECT TO ANY SECURITIES OR A SOLICITATION OF ACCEPTANCES OF A CHAPTER 11 PLAN. SUCH OFFER OR SOLICITATION ONLY WILL BE MADE IN COMPLIANCE WITH ALL APPLICABLE SECURITIES LAWS AND/OR PROVISIONS OF THE BANKRUPTCY CODE.**

---

AMENDED PLAN SUPPORT AGREEMENT

by and among

DANA CORPORATION,

UNITED STEELWORKERS,

INTERNATIONAL UNION, UAW,

CENTERBRIDGE CAPITAL PARTNERS, L.P. AND

CERTAIN CREDITORS OF DANA CORPORATION

---

Dated as of July __, 2007

# TABLE OF CONTENTS

                                                                                        **Page**

RECITALS ............................................................................................................... 2
ARTICLE I       OVERVIEW OF CERTAIN DEFINED TERMS ......................................... 3
ARTICLE II      OBLIGATIONS OF THE DEBTORS........................................................... 5
ARTICLE III     SUPPORT OBLIGATIONS OF THE USW, THE UAW  AND
                CENTERBRIDGE ............................................................................................ 6
ARTICLE IV      SUPPORT OBLIGATIONS OF THE SUPPORTING CREDITORS ........... 7
ARTICLE V       ................................................................................................................... 9
PLAN FRAMEWORK ............................................................................................................ 9
ARTICLE VI      ADDITIONAL AGREEMENTS................................................................... 9
ARTICLE VII     TERMINATION EVENTS ......................................................................... 9
ARTICLE VIII    GOVERNING LAW; JURISDICTION; VENUE........................................ 10
ARTICLE IX      IMPLEMENTATION.................................................................................... 10
ARTICLE X       GENERAL PROVISIONS ........................................................................... 11

<u>EXHIBITS</u>
Exhibit A:  Supporting Creditors
Exhibit B:  Plan Term Sheet
Exhibit C:  Investment Agreement
Exhibit D:  Qualified Investor and Qualified Claim Definitions

NYI-3998015v21

# PLAN SUPPORT AGREEMENT

This Amended Plan Support Agreement (this "<u>Agreement</u>"), is entered into as of July __, 2007, by and among Dana Corporation ("<u>Dana</u>"), on behalf of itself and its subsidiaries operating as debtors and debtors-in-possession (together with Dana, the "<u>Debtors</u>") in the Chapter 11 Cases (as defined below); the United Steelworkers (the "<u>USW</u>"); the International Union, UAW (the "<u>UAW</u>"); Centerbridge Capital Partners, L.P. on behalf of itself and its affiliates ("<u>Centerbridge</u>"); and the creditors set forth on Exhibit A hereto (collectively, the "<u>Supporting Creditors</u>"). Each of the Debtors, the USW, the UAW, Centerbridge and the Supporting Creditors is referred to herein individually as a "<u>Party</u>," and collectively, as the "<u>Parties</u>". As used herein, the words "this Agreement", "hereto", "hereunder" and words of like import shall mean this Agreement.

# RECITALS

A.      On March 3, 2006, the Debtors commenced jointly administered chapter 11 cases (together, the "<u>Chapter 11 Cases</u>") in the Bankruptcy Court (as defined below). The Debtors' successful reorganization as a sustainable, viable business requires the simultaneous implementation of several distinct restructuring initiatives and the cooperation of all the Debtors' key business constituencies: customers, vendors, employees and retirees.

B.      On March 3, 2006, Stroock & Stroock & Lavan LLP ("<u>Stroock</u>") was retained as counsel to an *ad hoc* group of holders of the Debtors' unsecured bonds (the "<u>Ad Hoc Group</u>").

C.      The USW and the UAW have retained Centerbridge as an advisor.

D.      On February 1, 2007, the Debtors filed the Motion and Memorandum of Law of Debtors and Debtors in Possession to Reject their Collective Bargaining Agreements and to Modify their Retiree Benefits Pursuant to Sections 1113 and 1114 of the Bankruptcy Code (the "<u>1113/1114 Litigation</u>").

E.      In March and April 2007, the trial with respect to the 1113/1114 Litigation took place before the Bankruptcy Court.

F.      Since April 2007, the Debtors, the USW, the UAW and Centerbridge have engaged in discussions regarding a possible consensual resolution of (i) the 1113/1114 Litigation and (ii) all other issues between the Debtors and each of the USW and the UAW related to the Debtors' restructuring (the "<u>Global Settlement</u>"). The Global Settlement includes, among other things, these Parties' respective views of certain of the terms for a chapter 11 plan for the Debtors. The Global Settlement is conditioned upon the Debtors, the USW, the UAW, the Supporting Creditors and Centerbridge reaching agreement on all documents pertinent in any way to the Global Settlement, including Centerbridge's and the Supporting Creditors' participation in the Plan (as defined below) and/or all transactions contemplated thereby.

G.      As a consequence of the discussions mentioned above, this Agreement sets forth the Parties' agreement with respect to their support of a plan of reorganization for the Debtors in

order to implement the Global Settlement (the "Plan"), including the Plan Term Sheet and the entry into the Investment Agreement (as defined below) and the Union Settlement Agreements (as defined below).

   H. Centerbridge will make the New Investment (as defined below) on the terms and on the conditions set forth in the Investment Agreement (as defined below), which sets forth the obligations of Centerbridge to make the New Investment in exchange for certain Convertible Preferred Shares (as defined below) to be issued by Reorganized Dana under a confirmed Plan.

   I. Certain holders of general unsecured claims who are members of the Ad Hoc Group wish to express their support for the Global Settlement and wish to be part of the group formulating a Plan.

   J. Subject to the terms of this Agreement, the Parties have agreed to work together to attempt to complete the negotiation of the terms of the Plan, as well as to resolve other outstanding issues, and to formulate and facilitate confirmation and consummation of the Plan and the transactions contemplated hereby; provided, however, that Dana will be the sole proponent of the Plan.

   K. In so agreeing, the Parties do not desire and do not intend in any way to avoid, violate or diminish (i) the disclosure, solicitation and other requirements of applicable securities and bankruptcy laws or (ii) the fiduciary duties of the Debtors or any such other Party having such duties.

## AGREEMENT

## ARTICLE I

## OVERVIEW OF CERTAIN DEFINED TERMS

| | |
|---|---|
| 1113/1114 Litigation | Has the meaning set forth in Recital D hereof |
| Ad Hoc Group | Has the meaning set forth in Recital B hereof |
| Agreement | Has the meaning set forth in the Preamble hereof |
| Bankruptcy Code | Means the Bankruptcy Reform Act of 1978, as amended, and codified at title 11 of the United States Code and as applicable to the Chapter 11 Cases |
| Bankruptcy Court | Means the United States Bankruptcy Court for the Southern District of New York |
| Bankruptcy Rules | Mean the Federal Rules of Bankruptcy Procedure |

| | |
|---|---|
| Centerbridge | Has the meaning set forth in the Preamble hereof |
| Chapter 11 Cases | Has the meaning set forth in Recital A hereof |
| Claim | Has the meaning ascribed to it in section 101 of the Bankruptcy Code |
| Confirmation Order | Means the order of the Bankruptcy Court approving the Debtors' Plan in form and substance reasonably acceptable to the USW, the UAW, Centerbridge and the Supporting Creditors |
| Convertible Preferred Shares | Means, collectively, the Series A Preferred and the Series B Preferred (both as defined in the Investment Agreement) |
| Dana | Has the meaning set forth in the Preamble hereof |
| Debtors | Has the meaning set forth in the Preamble hereof |
| Disclosure Statement | Means a disclosure statement with respect to the Plan filed by the Debtors with the Bankruptcy Court |
| Disclosure Statement Order | Means the order of the Bankruptcy Court approving the Debtors' Disclosure Statement, which shall be in form and substance reasonably acceptable to the USW, the UAW, Centerbridge and the Supporting Creditors |
| Effective Date | Means a day, as determined by the Debtors and reasonably acceptable to Centerbridge, that is the business day as soon as reasonably practicable after all conditions to the effective date set forth in the Plan have been met or waived |
| Global Settlement | Has the meaning set forth in Recital F hereof |
| Investment Agreement | Means the Investment Agreement among Dana Corporation, Centerbridge and a subsidiary of Centerbridge attached hereto as Exhibit C and incorporated herein by reference to which no changes shall be made without the consent of the Supporting Creditors |
| Motion | Has the meaning set forth in section 2.1 hereof |
| New Investment | Means the proposed investment in the Reorganized Company by Centerbridge and other potential investors |
| Party or Parties | Has the meaning set forth in the Preamble hereof |
| Plan | Has the meaning set forth in Recital G hereof, shall include |

| | exhibits to the Plan and shall be in form and substance reasonably acceptable to the USW, the UAW, Centerbridge and Supporting Creditors holding $650 million in aggregate amount of Qualified Claims (as such term is defined on Exhibit D) |
|---|---|
| Plan Term Sheet | Means the term sheet entitled "Dana Corporation, *et al*. Critical Elements to be Included in a Plan of Reorganization," which is attached hereto as Exhibit B and incorporated herein by reference |
| Reorganized Company | Means the Reorganized Debtors and their nondebtor subsidiaries |
| Reorganized Dana | Means a corporation that shall be the successor of Dana under a confirmed Plan |
| Reorganized Debtors | Means the Debtors, or any successor thereto, on or after the Effective Date of the Plan |
| Supporting Creditors | Has the meaning set forth in the Preamble hereof; the Supporting Creditors are identified on Exhibit A hereto |
| Termination Event | Has the meaning set forth in section 7.1 hereof |
| UAW | Has the meaning set forth in the Preamble hereof |
| Unions | Means the authorized representatives of the USW and UAW |
| Union Settlement Agreements | Means the settlement agreements reached by and among the Debtors and each of the Unions as of July 5, 2007, as amended on the date hereof. |
| USW | Has the meaning set forth in the Preamble hereof |

# ARTICLE II

## OBLIGATIONS OF THE DEBTORS

The Debtors presently believe that, subject to the exercise of their fiduciary duties as debtors and debtors-in-possession (after consultation with outside legal and financial advisors), prompt consummation of the Plan will facilitate the Debtors' reorganization and is in the best interests of their creditors, shareholders and other parties-in-interest. Accordingly, the Debtors hereby agree, subject to the exercise of their fiduciary duties as debtors and debtors-in-possession (after consultation with outside legal and financial advisors), to use reasonable best efforts to propose the Plan and prosecute confirmation and consummation thereof. Subject to the foregoing, for as long as this Agreement remains in effect, the Debtors agree to:

2.1    Prepare and file with the Bankruptcy Court a motion (the "<u>Motion</u>") seeking an order, which shall be in form and substance reasonably acceptable to the USW, the UAW and Centerbridge, from the Bankruptcy Court (i) approving and authorizing the Debtors to enter into the Union Settlement Agreements, the Investment Agreement and this Agreement; (ii) authorizing payment of the Expense Reimbursement, the Termination Fee, the Commitment Fee and the Break-up Fee (as such terms are defined in the Investment Agreement) pursuant to, and on the terms and conditions set forth in, Article VII of the Investment Agreement; and (iii) determining that the Parties' entry into, and performance of, their obligations under the Union Settlement Agreements, the Investment Agreement and this Agreement do not violate any law, including the Bankruptcy Code, and do not give rise to any claim or remedy against the Parties; and

2.2    Not object to any application under section 503(b) or inclusion as part of the Plan under section 1129(a)(4) by Stroock for its representation of the Ad Hoc Group for payment of its reasonable legal fees and expenses from the filing of the Debtors' chapter 11 cases to the Effective Date up to a cap of $5 million; and

2.3    Not propose any Plan premised upon the use of section 382(l)(5) of the Internal Revenue Code and will propose only a Plan premised upon the use of section 382(l)(6) of the Internal Revenue Code; and

2.4    Engage in good faith negotiations with the other Parties and other parties in interest regarding the Plan, Disclosure Statement and other definitive documents that are consistent with this Agreement and that resolve all unresolved items reflected herein and/or are necessary to the implementation of the transactions contemplated by this Agreement; including, without limitation:

a.    Using reasonable best efforts to negotiate with parties in interest and thereafter file the Plan and the Disclosure Statement by September 3, 2007; and

b.    Use reasonable best efforts to obtain entry by the Bankruptcy Court of the Confirmation Order on or before February 28, 2008.

## ARTICLE III

## SUPPORT OBLIGATIONS OF THE USW, THE UAW
## AND CENTERBRIDGE

Unless and until this Agreement has been terminated in accordance with its terms, each of the USW, the UAW and Centerbridge agrees (and shall cause its respective affiliates to agree) that:

3.1    It will support prosecution, confirmation and consummation of the Plan including without limitation, (i) the entry of the Disclosure Statement Order and (ii) the entry of the Confirmation Order, despite objection or the rejection of the Plan (whether by vote or operation of section 1126(g) of the Bankruptcy Code) by any impaired class; <u>provided</u>, <u>however</u>, that, for the avoidance of doubt, nothing in this subsection is an agreement by any of the USW or the UAW to vote to accept or reject the Plan.

3.2     It will not, nor will it encourage any other person or entity to, (i) object to, delay, impede, appeal, or take any other action, directly or indirectly, to interfere with, the entry of the Disclosure Statement Order; (ii) commence any proceeding or prosecute, join in, or otherwise support any action to oppose or object to the Plan or Disclosure Statement; and (iii) delay, object to, impede, appeal, or take any other action, directly or indirectly, to interfere with the acceptance or confirmation of the Plan, the entry of the Confirmation Order or the occurrence of the Effective Date.

3.3     It will engage in good faith negotiations with the other Parties and other parties in interest regarding the Plan, Disclosure Statement and other definitive documents that are consistent with this Agreement and/or are necessary to the implementation of the transactions contemplated by this Agreement.

3.4     Centerbridge hereby acknowledges and agrees that it has completed such due diligence review as is required in order to commit to the New Investment and that its obligations hereunder are not subject to any due diligence condition.  Without limiting the foregoing, the Debtors will continue to provide Centerbridge with such information and access as it reasonably requests.

3.5     With respect to the UAW and USW only, not object to any application under section 503(b) or as part of the Plan under section 1129(a)(4) by Stroock for its representation of the Ad Hoc Group for payment of its reasonable legal fees and expenses from the filing of the Debtors' Chapter 11 Cases to the Effective Date up to a cap of $5 million.

3.6     With respect to Centerbridge only, support through publicly filed pleadings any application under section 503(b) or as part of the Plan under section 1129(a)(4) by Stroock for its representation of the Ad Hoc Group for payment of its reasonable legal fees and expenses from the filing of the Debtors' chapter 11 cases to the Effective Date up to a cap of $5 million.

3.7     It will not support any Plan premised upon the use of section 382(l)(5) of the Internal Revenue Code and will support only a Plan premised upon the use of section 382(l)(6) of the Internal Revenue Code.

## ARTICLE IV

## SUPPORT OBLIGATIONS OF THE SUPPORTING CREDITORS

Unless and until this Agreement has been terminated in accordance with its terms, each Supporting Creditor agrees that:

4.1     It will support prosecution, confirmation and consummation of the Plan including without limitation, (i) the entry of the Disclosure Statement Order and (ii) the entry of the Confirmation Order, despite objection or the rejection of the Plan (whether by vote or operation of section 1126(g) of the Bankruptcy Code) by any impaired class; provided, however, that, for the avoidance of doubt, nothing in this subsection is an agreement by any Supporting Creditor to vote to accept or reject the Plan.

4.2     It will not, nor will it encourage any other person or entity to, (i) object to, delay, impede, appeal, or take any other action, directly or indirectly, to interfere with, the entry of the Disclosure Statement Order; (ii) commence any proceeding or prosecute, join in, or otherwise support any action to oppose or object to the Plan or Disclosure Statement; (iii) support or encourage anyone to compete with the Investment Agreement; and (iv) delay, object to, impede, appeal, or take any other action, directly or indirectly, to interfere with the acceptance or confirmation of the Plan, the entry of the Confirmation Order or the occurrence of the Effective Date.

4.3     It will engage in good faith negotiations with the other Parties and other parties in interest regarding the Plan, Disclosure Statement and other definitive documents that are consistent with this Agreement and/or are necessary to the implementation of the transactions contemplated by this Agreement.

4.4     It agrees not to sell, transfer, assign, pledge, or otherwise dispose, directly or indirectly (including by creating any subsidiary or affiliate for the sole purpose of acquiring any Claims against any Debtor) their right, title or interest in respect of any Supporting Creditor Claim (or any such Claim against any Debtor acquired after the date of this Agreement) against any Debtor ( a "Transfer"), in whole or in part, or any interest therein (collectively, the "Relevant Claims") unless the recipient of such Relevant Claim (a "Transferee") agrees in writing (such writing, a "Transferee Acknowledgment"), prior to such Transfer, to be bound by this Agreement in its entirety without revisions.  Upon the execution of the Transferee Acknowledgment, the Transferee shall be deemed to constitute a Supporting Creditor and shall be entitled to purchase shares of the Series B Preferred subject to the limitations of the Investment Agreement.  Any Transfer that does not comply with this paragraph shall be void *ab initio.*  In the event of a Transfer, the transferor shall, within five (5) business days, provide written notice of such transfer to the Company, together with a copy of the Transferee Acknowledgment.

4.5     Subject to the provisions of any confidentiality agreement between the Supporting Creditor and any Debtor, it shall be permitted to purchase additional Claims against any Debtor; provided, however, that any such claims so acquired shall, whether or not the Supporting Creditor holds any Relevant Claims at the time of the acquisition, automatically be deemed to be Relevant Claims and to be subject to all of the terms of this Agreement hereof.

## ARTICLE V

## PLAN FRAMEWORK

5.1     The Plan will contain the terms set forth in the Plan Term Sheet and the Investment Agreement, both of which are attached as Exhibits hereto and are incorporated herein by reference.

## ARTICLE VI

## ADDITIONAL AGREEMENTS

The Parties acknowledge and agree that as a critical and integral part of the Global Settlement, the following agreements have been executed and delivered:

6.1     The Debtors have executed and delivered the Union Settlement Agreements, including the amendment dated as of the date hereof.

6.2     The USW and the UAW have executed and delivered their respective Union Settlement Agreement in accordance with their respective constitutions, including the amendment dated as of the date hereof; and

6.3     The Debtors and Centerbridge will execute and deliver the Investment Agreement.

## ARTICLE VII

## TERMINATION EVENTS

7.1     The occurrence of any of the following shall be a "<u>Termination Event</u>":

a.      The termination of the Investment Agreement once executed;

b.      The termination of any one of the Union Settlement Agreements;

c.      The Plan fails to become effective on or before May 1, 2008;

d.      Any court shall declare, in a final, non-appealable order, this Agreement to be unenforceable;

e.      The Debtors obtain approval of a disclosure statement other than the Disclosure Statement;

f.      The Motion is denied by the Bankruptcy Court;

g.      The failure of the fees of Miller Buckfire, as financial advisor to the Debtors, to be reduced to an amount agreed upon by the Supporting Creditors, Centerbridge and the Debtors; or

h.      With respect to the obligations of each Supporting Creditor (but not with respect to the obligations of any other Party hereto), the Plan fails to become effective by its terms by February 28, 2008 or (ii) any changes made to the Investment Agreement without the consent of Supporting Creditors holding $650 million in aggregate amount of Qualified Claims.

7.2     All obligations hereunder of all Parties shall terminate and shall be of no further force and effect:

a.      Automatically, and without written notice, upon the occurrence of the Termination Events described in Subsections 7.1(a), (b), (d), (e) and (f) above;

b.      Unless waived in writing by all Parties, upon written notice by one Party upon the occurrence of the Termination Events described in Subsection 7.1(c) above; and

c. Automatically, and without written notice, immediately prior to the issuance of the common stock and Convertible Preferred Shares contemplated by the Plan and the Investment Agreement.

7.3     All obligations hereunder with respect to an applicable Supporting Creditor (but not with respect to the obligations of any other Party hereto), shall terminate and shall be of no further force and effect after written notice is delivered to all other Parties by such Supporting Creditor or its counsel, upon the occurrence of the Termination Events described in Subsection 7.1(g) and (h).

## ARTICLE VIII

## GOVERNING LAW; JURISDICTION; VENUE

This Agreement shall be governed and construed in accordance with the internal laws of the State of New York without regard to any conflict of law provision that could require the application of the law of any other jurisdiction.  By its execution and delivery of this Agreement, each Party hereby irrevocably and unconditionally agrees that the Bankruptcy Court will retain exclusive jurisdiction over all matters related to the construction, interpretation or enforcement of this Agreement.  Each Party further agrees to waive any objection based on forum non conveniens.  Each Party waives any right it may have to a trial by jury and consents to the Bankruptcy Court hearing and determining any matters related to the construction, interpretation or enforcement of this Agreement and the Investment Agreement without regard to whether such matter is a core matter within the meaning of 28 U.S.C. § 157(b).

## ARTICLE IX

## IMPLEMENTATION

9.1     After execution of this Agreement by all Parties, the Debtors will file the Motion with the Bankruptcy Court.  The Supporting Creditors, the USW and the UAW will timely file statements in support of the Motion with the Bankruptcy Court.

9.2     The Parties agree to negotiate in good faith all of the documents and transactions described in, or in connection with, this Agreement.

9.3     A Supporting Creditor will be entitled to purchase Series B Preferred in accordance with the terms of the Investment Agreement; provided that, such Supporting Creditor is a Qualified Investor, as defined in the Investment Agreement and set forth in Exhibit D hereto.

9.4     Nothing in this Agreement shall be deemed to preclude (a) any Supporting Creditor, acting alone and not in concert with any other Supporting Creditor, from making a proposal for an Alternative Investment, Alternative Majority Investment or Alternative Transaction (as such terms are defined in the Investment Agreement) that would be an alternative to the New Investment or (b) any Supporting Creditor from taking any action in its capacity as a fiduciary.

# ARTICLE X

## GENERAL PROVISIONS

10.1     It is an express condition to the effectiveness of this Agreement that (a) the Bankruptcy Court shall have entered an order approving the Motion and (b) the Union Settlement Agreements shall have been executed by the Debtors, and the relevant Union Settlement Agreement shall have been approved, executed and delivered by the USW or the UAW, as applicable, in accordance with their respective constitutions.

10.2     Except as expressly provided in this Agreement, nothing contained herein (a) is intended to, or does, in any manner waive, limit, impair or restrict the ability of each of the Parties to protect and preserve its rights, remedies, and interests; (b) may be deemed an admission of any kind; or (c) effects a modification of any existing agreement until such time as the Bankruptcy Court may have approved such modification.  If the transactions contemplated herein are not consummated, or if this Agreement is terminated for any reason, the Parties fully reserve any and all of their rights.  Pursuant to Federal Rule of Evidence 408 and any applicable state rules of evidence, this Agreement and all negotiations relating thereto are not admissible into evidence in any proceeding other than a proceeding to enforce the terms of this Agreement.

10.3     Centerbridge shall promptly deliver to the Debtors, the USW, the UAW and the Supporting Creditors written notice upon the termination of the Investment Agreement.  The Debtors shall promptly deliver to Centerbridge, the USW, the UAW and the Supporting Creditors written notice upon the termination of the Investment Agreement.

10.4     The Supporting Creditors shall promptly deliver to Centerbridge, the Debtors, the USW and the UAW written notice upon the termination of this Agreement.

10.5     The USW and/or the UAW shall deliver to the Debtors, the Supporting Creditors, the USW or the UAW (as applicable) and Centerbridge written notice upon the termination of any one of the Union Settlement Agreements as and when provided therein.

10.6     Each Party hereby acknowledges that this Agreement is not, and shall not be deemed to be, a solicitation to accept or reject a plan or the Plan in contravention of section 1125(b) of the Bankruptcy Code.  Each Party further acknowledges that no securities of any Debtor are being offered or sold hereby and that this Agreement does not constitute an offer to sell or a solicitation of an offer to buy any securities of any Debtor.

10.7     Each Party, severally and not jointly, represents, covenants, warrants and agrees to each other Party, only as to itself and not as to each of the others, that the following statements, as applicable, are true, correct and complete as of the date hereof:

        a.     It has all requisite power and authority to enter into this Agreement and to perform its obligations hereunder;

        b.     It is duly organized, validly existing, and in good standing under the laws of its state of organization and it has the requisite power and authority to execute and deliver this Agreement and to perform its obligations hereunder;

c. The execution and delivery of this Agreement and the performance of its obligations hereunder have been duly authorized by all necessary action on its part; <u>provided, however,</u> that the Debtors' authority to enter into this Agreement is subject to Bankruptcy Court approval;

d. This Agreement has been duly executed and delivered by it and constitutes its legal, valid, and binding obligation, enforceable in accordance with the terms hereof, subject to entry of the order approving the Motion;

e. The execution, delivery, and performance by it (when such performance is due) of this Agreement do not and shall not (i) violate any provision of law, rule, or regulation applicable to it or any of its affiliates or its certificate of incorporation or bylaws or other organizational documents or those of any of its affiliates or (ii) conflict with, result in a breach of, or constitute (with due notice or lapse of time or both) a default under any material contractual obligation to which it or any of its affiliates is a party; and

f. There are no undisclosed agreements or commitments between or among the Parties regarding matters subject to the terms of this Agreement.

10.8    Each Supporting Creditor, severally and not jointly, represents, covenants, warrants and agrees to each other Party, only as to itself and not as to each of the others, that it is the legal or beneficial holder of, or holder of investment authority over, the Supporting Creditor Claim set forth on Exhibit A and has or will have the authority to vote or direct the voting of claims relating to the Supporting Creditor Claim set forth on Exhibit A in respect of the Plan.  .

10.9    Except as otherwise specifically provided herein, this Agreement may not be modified, waived, amended or supplemented unless such modification, waiver, amendment or supplement is in writing and has been signed by each Party.  No waiver of any of the provisions of this Agreement shall be deemed or constitute a waiver of any other provision of this Agreement, whether or not similar, nor shall any waiver be deemed a continuing waiver.

10.10   This Agreement is intended to bind and inure to the benefit of the Parties and their respective successors, assigns, heirs, executors, administrators, and representatives; <u>provided, however,</u> that nothing contained in this subsection shall be deemed to permit sales, assignments, delegations or transfers of this Agreement or any Party's rights or obligations hereunder.

10.11   Nothing contained in this Agreement is intended to confer any rights or remedies under or by reason of this Agreement on any person or entity other than the Parties hereto, nor is anything in this Agreement intended to relieve or discharge the obligation or liability of any third party to any Party to this Agreement, nor shall any provision give any third party any right of subrogation or action over or against any Party to this Agreement.

10.12   All notices and other communications in connection with this Agreement shall be in writing and shall be deemed given (and shall be deemed to have been duly given upon receipt) if delivered personally, sent via electronic facsimile (with confirmation), mailed by registered or certified mail (return receipt requested) or delivered by an express courier (with confirmation) to the Parties at the following addresses:

a.   <u>If to the Debtors, to</u>:

    Dana Corporation
    4500 Dorr Street
    Toledo, OH  43615
    Facsimile:  (419) 535-4790
    Attention:  Marc S. Levin, Esq.

    with a copy to:

    Jones Day
    222 East 41st Street
    New York, NY  10017
    Facsimile:  (212) 755-7306
    Attention:  Corinne Ball, Esq.
            Marilyn W. Sonnie, Esq.

b.   <u>If to the USW, to</u>:

    United Steelworkers
    Five Gateway Center
    Pittsburgh, PA  15222
    Facsimile:  (412) 562-2429
    Attention:  David R. Jury, Esq.

c.   <u>If to the UAW, to</u>:

    International Union, UAW
    Solidarity House
    8000 East Jefferson Avenue
    Detroit, MI  48214
    Facsimile:  (313) 926-5240
    Attention:  Niraj R. Ganatra, Esq.

d.   <u>If to Centerbridge, to</u>:

    Centerbridge Partners, L.P.
    375 Park Avenue, 12th Floor
    New York, NY  10019
    Facsimile:  (212) 301-6501
    Attention:  Jeff Aronson
            Brent Buckley

    with a copy to:

    Willkie Farr Gallagher LLP
    787 Seventh Avenue
    New York, NY  10019

Facsimile:  (212) 728-8111
Attention:  Matthew A. Feldman, Esq.
Jeffrey R. Poss, Esq.


e.    If to the Supporting Creditors, to:

the addressees set forth on Exhibit A.


with a copy to:

Stroock & Stroock & Lavan LLP
180 Maiden Lane
New York, NY  10038
Facsimile:  (212) 806-6006
Attention:  Kristopher M. Hansen, Esq.
Sayan Bhattacharyya, Esq.

10.13   This Agreement may be executed in one or more counterparts, each of which shall be deemed an original and all of which shall constitute one and the same Agreement.  Delivery of an executed signature page of this Agreement by facsimile or electronic transmission shall be effective as delivery of a manually executed signature page of this Agreement.

10.14   This Agreement constitutes the entire agreement among the Parties with respect to the subject matter hereof and supersedes all prior agreements, whether oral or written, with respect to such subject matter, provided, however, that upon execution of the Investment Agreement by the parties thereto, the Investment Agreement will supersede the New Investment Term Sheet.  This Agreement is the product of negotiations among the Parties and represents the Parties' intentions.  In any action to enforce or interpret this Agreement, this Agreement shall be construed in a neutral manner, and no term or provision of this Agreement, or this Agreement as a whole, shall be construed more or less favorably to any Party.

10.15   The agreements, representations and obligations of the Parties under this Agreement are, in all respects, several and not joint.  Any breach of this Agreement by any Party shall not result in liability for any other non-breaching Party.

[Remainder of page intentionally blank; remaining pages are signature pages.]

IN WITNESS WHEREOF, the undersigned have each caused this Agreement to be duly executed and delivered by their respective, duly authorized representatives as of the date first above written.

**DANA CORPORATION**

By: _____
        Name:
        Title:

**UNITED STEELWORKERS**

By: _____
        Name:
        Title:

**INTERNATIONAL UNION, UAW**

By: _____
        Name:
        Title:

**CENTERBRIDGE CAPITAL PARTNERS, L.P.**

By: _____
        Name:
        Title:

**SUPPORTING CREDITOR**


By:    _____

       Name:
       Title:
       Name of Institution:_____
       Amount of Unsecured Claims
          Held:  $_____