**FOR PUBLICATION**

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
In re:                                                   :          Chapter 11
                                                         :
Dana Corporation, *et al.,*                              :          Case No. 06-10354 (BRL)
                                                         :
           Debtors.                                   :
------------------------------------------------------------x

**MEMORANDUM DECISION AND ORDER GRANTING OMNIBUS
OBJECTION OF DEBTORS AND DEBTORS IN POSSESSION SEEKING TO
DISALLOW CLAIMS RELATING TO LITIGATION
OF THE PENNSYLVANIA WIRETAP ACT**

Dana Corporation ("Dana") and forty of its domestic direct and indirect subsidiaries, as debtors and debtors in possession (collectively, the "Debtors"), seek entry of an order disallowing and expunging proofs of claims (collectively, the "Wiretap Act Claims"), pursuant to sections 105 and 502 of title 11, United States Code (the "Bankruptcy Code"), Rule 3007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and the Claims Procedures Order entered in these cases (see ECF Docket #4044). The Wiretap Act Claims relevant to the motion relate to an action pending in Pennsylvania state court, *Daulph Kline and Terry Kline v. Security Guards, Inc. and Dana Corporation* (the "Wiretap Act Lawsuit"). Dana contends that the claimants asserting the Wiretap Act Claims (collectively, the "Wiretap Act Claimants") cannot establish *prima facie* elements of their causes of actions and thus Dana moves for summary judgment in its favor. Dana, Security Guards, Inc. ("SGI") who is a co-defendant in the Wiretap Act Lawsuit, and the Wiretap Act Claimants agreed and submitted a scheduling order to the Court requesting the Court to determine the summary judgment motion based on the summary judgment briefs and supporting exhibits

1

previously filed in the United States District Court for the Eastern District of Pennsylvania.

**The Wiretap Act Lawsuit**

The Wiretap Act Lawsuit arises out of a security measure taken by Dana at the Reading, Pennsylvania facility. The areas of Dana's facility that are the focus of the Wiretap Act Lawsuit are the main entryway to the Dana plant facility and an adjacent SGI control office.[1] SGI is an independent contractor that provided security protection to Dana's facility.[2] On October 1, 1998, Dana had cameras installed in the main entryway to the Dana plant facility in response to increased employee time theft.[3] On January 3, 2000 Daulph and Terry Kline – two of the Wiretap Act Claimants - filed a putative class action in Pennsylvania state court. The Wiretap Act Claims alleged violations of the Pennsylvania Wiretap Act. 18 PA. CONS. STAT. ANN. §§ 5701-5726 (Supp. 2000) (the "Wiretap Act"). All plaintiffs were employees of Dana at the time the suit was filed. The defendants in the Wiretap Act Lawsuit were Dana, SGI, and the company that sold certain video equipment to Dana, Radio Maintenance Inc. ("RMI").[4]

The Wiretap Act Claimaints asserted that Dana violated the Wiretap Act by installing electronic surveillance equipment in the main entryway to the Dana facility for the purpose of intercepting and disclosing the Wiretap Act Claimants' oral

---

[1] The main entryway was a 7-feet wide by 9-feet deep vestibule flanked by two sets of swinging doors. Between the two sets of vestibule doors were the windows of the control office on one side opposite the employee time clocks on the other side. A steel door and a sliding glass window separated the control from the entrance vestibule. The interior set of swinging glass doors provided access to the plant. Inside the entryway vestibule were a public pay phone and an intra-company phone.

[2] Plaintiffs assert that SGI acted as an agent of Dana, However, in Dana and SGI's employment contract it states that they have an "independent contractor" relationship. Based on the summary judgment decision before the Court, this Court need not address this issue.

[3] Dana sought to prevent employees from punching time cards for work they did not actually perform, punching a second employee's time card when the second employee was not actually working and leaving early or arriving late and having another employee "hit" their time card.

[4] On January 26, 2001, the Wiretap Act Claimants voluntarily dismissed RMI from the Wiretap Act Lawsuit.

communications along with other related tort claims for invasion of privacy and negligence.[5]

On January 21, 2000, Dana removed the Wiretap Act Lawsuit to the District Court for the Eastern District of Pennsylvania contending that the Wiretap causes of action were pre-empted under the National Labor Relations Act. 29 U.S.C. § 185 (2000). On August 8, 2000, the District Court denied class certification. Subsequently, after five separate joinder motions, three hundred seventy two Wiretap Act Claimants became named plaintiffs. However, twelve were dismissed for failing to cooperate with counsel resulting in three hundred sixty remaining Wiretap Act Claimants.

Dana and its co-defendants moved to dismiss the Wiretap Act Lawsuit for failure to state claims upon which relief could be granted. The Wiretap Act Claimants opposed dismissal and moved to remand back to Pennsylvania state court. On April 18, 2001, the District Court denied both these motions, thereby allowing the case to proceed to discovery on the merits. Discovery was bifurcated and "Phase I" focused exclusively on *prima facie* elements of the Wiretap Act under Pennsylvania law. The Wiretap Act Claimants conceded that, if there is no basis for liability under the Wiretap Act itself, their other claims for negligence and strict liability could be dismissed.

On February 26, 2003, the District Court entered an order staying all claims other than the claims for violation of the Wiretap Act itself pending the disposition of the summary judgment motion. During discovery, the Wiretap Act Claimants were expressly obligated to identify each and every witness who might have information establishing a Wiretap Act violation. The process led to the depositions of fifty-seven people, including hourly employees; officials of the employees labor union; and managers and employees

---

[5] At issue is a total time period of approximately twenty-nine days, from October 1, 1998 to October 29, 1998.

3

of SGI, Dana and RMI.  At the conclusion of "Phase I" discovery, seven of twenty-eight deposed Wiretap Act Claimants stated they had personally been victims of improper conduct under the Wiretap Act.

On February 27, 2003, Dana and SGI filed motions for summary judgment.  On May 5, 2003, the District Court held consolidated oral argument on both summary judgment motions.  On July 30, 2003, the District Court granted summary judgment in favor of both Dana and SGI. *Kline v. Security Guards Inc.,* No. 00-566, 2003 U.S. Dist. LEXIS 15476 (E.D. Pa. Jul. 30, 2003).  Upon disposition of the summary judgment motion, such stayed claims were dismissed with prejudice.  On August 13, 2003, the Wiretap Act Claimants appealed.  On June 2, 2004, the Court of Appeals for the Third Circuit *sua sponte* ordered briefing on the jurisdictional matter of whether the case had properly been removed in 2000.  Consequently, on October 5, 2004, the Third Circuit Court vacated the District Court's jurisdiction and summary judgment ruling, specifically finding that there had been no original federal jurisdiction.  The Third Circuit did not address the merits of the District Court ruling.  As a result of the Third Circuit's narrow jurisdictional ruling, the Wiretap Act Lawsuit was remanded to state court on December 9, 2004.

On March 3, 2006, the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  The Debtors' petitions stayed any further proceeding relating to the Wiretap Act Lawsuit and the Wiretap Act Claimants filed the Wiretap Act Claims in this Court.  SGI also filed a proof of claim for an unliquidated amount based on a contribution from Dana for any liability SGI may owe to the Wiretap Act Claimants in connection with the Wiretap Act Lawsuit.  On July 20, 2007, the Debtors filed the Omnibus Objection of Debtors and Debtors in Possession Seeking to Disallow Claims

4

Alleging Violation of the Pennsylvania Wiretap Act (Tier III – Specialized Substantive) ("Wiretap Act Lawsuit Objection"). The Debtors seek to disallow the Wiretap Act Claims pursuant to section 502(b)(1) of the Bankruptcy Code. Because the District Court granted summary judgment on the Wiretap Act Claims and the Third Circuit Court remanded the case solely on jurisdictional grounds, Debtors claim the Third Circuit did not disturb the premises of the District Court's ruling, thus entitling the Debtors to summary judgment in their favor. Each of the parties merely submitted the same briefs that were submitted to the District Court.[6]

**Discussion**

*The District Court Decision*

On July 30, 2003, the District Court for the Eastern District of Pennsylvania granted Dana and SGI's motions for summary judgment. *Kline,* 2003 U.S. Dist. LEXIS 15476. The District Court held that the plaintiff must establish a *prima facie* case under the Wiretap Act in order to avoid summary judgment. According to the Pennsylvania Supreme Court, the elements to establish a *prima facie case* under the Wiretap Act are: (1) that the Wiretap Act Claimaints engaged in an oral communication; (2) under circumstances in which they had an expectation of privacy; (3) at which time Dana acted intentionally; (4) to intercept such communications. *Agnew v. Dupler*, 717 A.2d 519, 523 (Pa. 1998). The District Court held that the Wiretap Act Claimants were unable to establish a *prima facie* case under the Wiretap Act. *Kline,* 2003 U.S. Dist. LEXIS 15476, at *21.

---

[6] Prior to the Wiretap Act Lawsuit Objection, the Debtors filed the Objection of Debtors And Debtors in Possession Seeking Disallowance of Claim Of Security Guards, Inc. (Tier II –Books and Records) to the proof of claim filed by SGI, based on section 502(e) of the Bankruptcy Code. This Court determined to deal with both Objections at the same time.

The District Court first addressed whether the Wiretap Act Claimants engaged in (1) a communication (2) in which they had an expectation of privacy (3) that was justified. *Id.* The Wiretap Act defines an "oral communication" as "any oral communication uttered by a person possessing an expectation that such communication is not subject to interception under circumstances justifying such expectation." Wiretap Act at § 5702. The District Court held that an employee entering the workplace would have a reasonable expectation that any conversations in the entryway would not be intentionally intercepted by means of electronic eavesdropping. *Kline,* 2003 U.S. Dist. LEXIS 15476, at *21. Thus, the Wiretap Act Claimants had a reasonable expectation of privacy when they had communications in the entryway.

Second, the District Court looked to whether the oral communications of the Wiretap Act Claimants were intercepted. Intercept is defined as the "aural or other acquisition of the contents of any wire, electronic or oral communication through the use of any electronic, mechanical or other device." Wiretap Act at §5702. The District Court concluded that there was "no question that an intercom was a means of intercepting a communication." *Kline,* 2003 U.S. Dist. LEXIS 15476, at *21. However, the District Court found that in relating to this specific intercom, there is no evidence that the "contents"[7] of the conversations were intercepted, and therefore, the second part of the definition of "intercept" was not satisfied. *Id.* The District Court found that the Wiretap Act Claimants did not show any evidence that amounted to the interception of the "substance" of a communication. *Id.* The SGI employees testified that they overheard voices of several of Dana's employees, but there was no testimony stating that they remember or tried to listen to the content of their conversations. Thus, no persons

---

[7] "Contents" is defined as "any information concerning the substance, purport or meaning of that conversation." The Wiretap Act at § 5702.

6

listened to the content of any conversation and accordingly, there was no interception. *Id.* at 24.

Third, the District Court looked to intent on the part of Dana, holding this factor to be dispositive. The Wiretap Act Claimants presented no evidence with regard to intentional conduct on the part of Dana or SGI. A plaintiff is required to prove intentional conduct under the Wiretap Act by a preponderance of the evidence. *Kline v. Security Guards, Inc.*, 159 F. Supp. 2d 848, 854 (E.D. Pa. 2001). Dana and SGI assert that "intentional" should be defined according to the Pennsylvania Crimes Code:

> A person acts intentionally with respect to a material element of an offense when: (1) the element involves the nature of his conduct or a result thereof, it is his conscious object to engage in conduct of that nature or to cause such a result; and (2) if the element involves the attendant circumstance, he is aware of the existence of such circumstances or he believes or hopes that they exist.

18 PA. CONS. STAT. ANN. § 302 (1998). However, the Wiretap Act Claimants argued that using the criminal statute definition is unsupported and that the definition of "intentional" for civil actions should be used.[8] The District Court did not decide whether to use the definition of "intentional" as defined in the Pennsylvania Crimes Code or to use the civil definition. It concluded that regardless of which interpretation is used the evidence the Wiretap Act Claimants offered does not show "intentional" conduct on the part of Dana or SGI. *Kline,* 2003 U.S. Dist. LEXIS 15476, at *25.

The Wiretap Act Claimants also asserted that the video equipment had audio capabilities and that Dana was aware of this. However, the fact that the surveillance equipment had audio capabilities is not enough to establish intent. Mere ownership of equipment capable of violating the Wiretap Act does not establish that the Act was violated. *Gross v. Taylor,* No. 96-6514, 1997 U.S. Dist. LEXIS 11657 (E.D. Pa. Aug. 5,

---

[8] Accordingly, the Wiretap Act Claimants assert that they only need to prove that the defendants' act was a conscious one, rather than a mistake or an accident. *U.S. v. Townsend,* 987 F. 2d 927, 940 (2d Cir. 1993).

7

1997). In *Gross,* the Court differentiated between ownership of equipment with illegal capabilities and equipment that was actually used illegally. *See United States v. Kahn*, 468 U.S. 705, 712 (1984) (holding that the existence of a monitoring system creates a potential for an invasion of privacy but is not an actual invasion of privacy). Thus, the Wiretap Act Claimants must actually show that the communications were in fact intentionally intercepted. Jeffrey Koch, President of RMI, testified that Dana wasn't "interested" in audio. *See* Jeffrey Kosh dep. at 36. As such, the Wiretap Act Claimants have failed to show that Dana purchased the system with the intent to intercept their conversations or that Dana purchased the equipment with the knowledge of its audio capabilities.

**Summary Judgment Standard**

Summary judgment, made applicable through Bankruptcy Rule 7056, is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). Accordingly, a factual dispute will be found "material" only if it will affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242 (1986). On a summary judgment motion, the moving party has the burden of demonstrating the absence of any genuine issue of material fact. *Id.* at 249. Once the movant has made its showing, the burden of production shifts to the non-movant who must "go beyond the pleadings and by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, establish that there is a specific and genuine issue of material fact warranting a trial." *Celotex* at 324 (*quoting* Fed. R. Civ. P. 56(c)).

8

*Discussion*

Based upon the discussion of the District Court and all of the evidence presented, it is clear that after extensive discovery the Wiretap Act Claimants have not offered evidence that would establish a "general issue" for trial on either an intentional interception or intentional behavior on the part of either defendant. The discovery, which included over fifty depositions, interrogatories, and thousands of documents, resulted in only eight Wiretap Act Claimants offering any type of evidence suggesting that defendants have violated the Wiretap Act. Wiretap Act Claimants Terry Kline and Rose Marie Hessler testified in deposition that they heard the "echo" of their voices emanating from control. Three other Wiretap Act Claimants also claim that they heard their voices coming from control. Additionally, SGI guards told two other Wiretap Act Claimants that their conversations could be overheard in control.

Nonetheless, as framed by the District Court, this evidence viewed even in light most favorable to Wiretap Act Claimants, is not sufficient to establish intent on the part of Dana or SGI. Other evidence suggests that intentionality did not exist. For instance, SGI guard Manuel Maldonado testified that he was never instructed by Dana or SGI to use the equipment to listen to the employees' conversations. Additionally, SGI guard William Harvey stated that he could hear the employees conversations but "tried not to listen" (William Harvey dep. at 15-16). If Dana or SGI had intended to listen in on the conversations then they would have instructed the guards to pay attention to the conversations. Therefore, in accordance with the District Court for the Eastern District of Pennsylvania and pursuant to sections 105 and 502 of the Bankruptcy Code, Rule 3007 of the Federal Rules of Bankruptcy Procedure and the Claims Procedures Order, Dana and SGI's motions for summary judgment are granted.

9

**Conclusion**

For all the reasons set forth above, the Objection to the Wiretap Act Claimants' proofs of claim and the proof of claim filed by SGI are sustained and those claims are expunged.

It is so ordered.

Dated: October 3, 2007                                  /s/ Hon. Burton R. Lifland
       New York, New York                               United States Bankruptcy Judge