**EXHIBIT E**

## DANA CORPORATION
### Liquidation Analysis

The Debtors believe that the Plan meets the "best interest of creditors" test as set forth in section 1129(a)(7) of the Bankruptcy Code. Classes 2C, 5B, 5C, 5D, 5E, 5F, 6A, 6C and 7 are impaired classes with respect to the Plan. The Debtors believe that the holders of Allowed Claims in each impaired class will receive at least as much under the Plan as they would if the Debtors were liquidated under chapter 7 of the Bankruptcy Code. The Debtors believe the Liquidation Analysis and the conclusions set forth herein are fair and accurate, and represent management's best judgment with regard to the results of a chapter 7 liquidation of these Debtors.

Obligations under the DIP Credit Agreement are secured by a first priority lien on substantially all of the assets of Dana Corporation and all of its domestic subsidiaries, and are likewise guaranteed by all of Dana's domestic subsidiaries. These obligations are also secured by a pledge of 100% of the shares of Dana's domestic subsidiaries and 65% of the shares of certain of its foreign subsidiaries. The remaining 35% of the shares of such foreign subsidiaries are unencumbered. Accordingly, only 65% of the proceeds from the liquidation of the non-Debtor subsidiaries may be applied to satisfy claims of the Debtors. The remaining 35% of the proceeds are returned, once creditors of the foreign subsidiaries are satisfied, to the equity holders of such entities, including EFMG, LLC, Dana Automotive Aftermarket, Inc. and Dana Corporation as distributable value.

The Plan contemplates a consolidated treatment for all creditors of the Debtors excluding the creditors of a single Debtor, EFMG, LLC. The Debtors estimate that EFMG, LLC has few individual creditors and a relatively insignificant level of unsecured claims when taken against the aggregate of the claims of the Debtors as a whole. In addition, EFMG, LLC has substantial assets, including but not limited to its equity interests in the unencumbered stock of certain of the non-Debtor subsidiaries. Under the Plan, the Debtors contemplate payment in full to holders of unsecured claims of EFMG, LLC thereby meeting the test as set forth in Section 1129(a)(7). Accordingly, no effort has been made to separately classify the assets or the claims of EFMG, LLC in this Liquidation Analysis.

In addition, the Plan also contemplates the Reinstatement of Asbestos Personal Injury Claims. In chapter 7 liquidation, such Claims would be pari passu with the Consolidated Debtors' current General Unsecured Claims, would significantly increase the General Unsecured Claims against the Consolidated Debtors and would ultimately reduce the overall recovery to holders of General Unsecured Claims. An estimate of such Claims is not included in this analysis.

The Liquidation Analysis reflects the estimated cash proceeds, net of liquidation-related costs that would be realized if the Debtors were to be liquidated in accordance with chapter 7 of the Bankruptcy Code. Underlying the Liquidation Analysis are a

number of estimates and assumptions that, although developed and considered reasonable by management of the Debtors, and by the Debtors' professionals, are inherently subject to significant business, economic and competitive uncertainties and contingencies beyond the control of the Debtors and management, and are also based upon assumptions with respect to certain liquidation decisions that could be subject to change. ACCORDINGLY, THERE CAN BE NO ASSURANCE THAT THE VALUES REFLECTED IN THE LIQUIDATION ANALYSIS WOULD BE REALIZED IF THE DEBTORS WERE, IN FACT, TO UNDERGO SUCH A LIQUIDATION, AND ACTUAL RESULTS COULD VARY MATERIALLY FROM THOSE SHOWN HERE.

The Liquidation Analysis was prepared by management of the Debtors, with the assistance of its professionals. The Liquidation Analysis is based on Dana's balance sheet as of June 30, 2007 and is predicated on the assumption that the Debtors would commence chapter 7 liquidation on December 31, 2007. The Liquidation Analysis assumes that the actual June 30, 2007 balance sheet is a conservative proxy for the December 31, 2007 balance sheet. The actual amount of tangible assets on the balance sheet of the Debtors at June 30, 2007, including cash, accounts receivable, inventory, and property, plant and equipment, exceeds the amount of tangible assets on the balance sheet of the Debtors both at December 31, 2006, and as projected at December 31, 2007. The Debtors believe that the use of the June 30, 2007 balance sheet provides the most detailed view of the specific classes of assets for each Debtor and, given the higher level of tangible assets at that time, provides a more optimistic recovery under a liquidation scenario than might otherwise be realized if the projected assets at December 31, 2007 were used.

It is also assumed that the liquidation of the Debtors would commence under the direction of a Court-appointed trustee and would continue for a period of nine months, during which time all of the Debtors' major assets would either be sold or conveyed to the respective lien holders, and the cash proceeds, net of liquidation-related costs, would then be distributed to creditors. Although the liquidation of some assets might not require nine months, other assets would be more difficult to collect or sell, thus requiring a liquidation period substantially longer than nine months. The liquidation period would allow for the collection of receivables, the conversion of inventory both on hand and, in some instances, from additional purchases of raw materials, into finished goods for sale to the Debtors' customers, the orderly sale of fixed assets, and the orderly wind-down of daily operations following the completion of any remaining production. For certain assets, estimates of the liquidation values were made for each asset individually. For other assets, liquidation values were assessed for general classes of assets by estimating the percentage recoveries that a trustee might achieve through this orderly disposition. It is assumed that the liquidation of the Debtors' non-U.S. subsidiaries would be accomplished via an out-of-court restructuring. Should the liquidation of non-U.S. operations require legal oversight in the local jurisdiction, the cost of such liquidation would increase significantly.

The Liquidation Analysis assumes, among other things, the orderly liquidation and wind down of all assets (including the non-Debtor assets) of the Torque, Traction, Structures and Commercial Vehicle businesses. Although the Debtors operate in a highly competitive industry and have many direct competitors, certain trends in the historical relationship between the OEMs and their Tier 1 suppliers (including improvements in just-in-time inventory methods, a trend toward consolidating suppliers and the long lead times for platform development) have increased the mutual dependence of Tier 1 suppliers on the OEMs and, likewise, the dependence of the OEMs on their large Tier 1 suppliers.

Management believes that developing acceptable alternative sources of supply for the parts currently provided by these business units would be costly to execute quickly, and that its OEM customers would be dependent upon the Debtors to continue to provide product for some period of time sufficient to replace the volumes currently provided by the Debtors. Management believes its OEM customers would react to an exit by the Debtors from the supply chain with a combination of actions that would likely include (a) continuing to purchase product from the Debtors at cost for some limited period of time following the conversion to chapter 7, (b) altering production schedules to accelerate the production of platforms with components not currently supplied by the Debtors, and (c) contracting with its other suppliers of like parts to develop acceptable alternatives on an expedited basis. While the Debtors would continue to produce product pursuant to the specific assumptions detailed herein, developing alternative sources of supply on an expedited basis would likely be very costly to the OEMs. The Debtors believe that causing the OEMs to re-source their supply of the Debtors' products would likely result in significant additional claims against the Debtors for breaches of their supply contracts. Such claims have not been estimated for purposes of this analysis.

Management believes its OEM customers would require product supplied by certain of its businesses, including its Torque, Traction and Commercial Vehicle businesses. Specifically, management believes that, with regard to the aforementioned businesses, certain alternative sources of supply exist for the Debtors' products and that such sources, while costly to switch to on an expedited basis, could be available within a 90 day time frame. The Debtors believe that its customers may require the Debtors to continue to supply product from its Structures business for 180 days while they developed alternative sources of supply.

Management believes the remaining Debtor and non-Debtor assets, specifically those comprising its Sealing, Thermal and Off Highway businesses, have greater value as going concerns than in an orderly wind-down and that the sale of those businesses could be completed in 90 to 120 days. Thus, the Liquidation Analysis assumes an orderly liquidation on a going concern basis for these assets. Net proceeds from the sale of these businesses, assuming a purchaser would also assume the go forward liabilities associated with these businesses, would be available for distribution to creditors of the Debtors.

There can be no assurances that the actual value realized in a sale of these operations would yield the results as assumed in the Liquidation Analysis.

The Liquidation Analysis assumes that liquidation proceeds would be distributed in accordance with Bankruptcy Code section 726. If a chapter 7 liquidation were pursued for the Debtors, the amount of liquidation value available to unsecured creditors would be reduced, first, by the costs of the liquidation, including fees and expenses of the trustee appointed to manage the liquidation, fees and expenses of other professionals retained by the trustee to assist with the liquidation and asset disposition expenses; second, by claims under the DIP Credit Facility and the carve-out for unpaid professional fees (the "Carve-Out"); third, by the claims of secured creditors to the extent of the value of their collateral except as described herein; and, fourth, by the priority and administrative costs and expenses of the chapter 7 estates, including unpaid operating expenses incurred during the Chapter 11 Cases and any accrued and unpaid professional fees and expenses in excess of the Carve-Out allowed in the chapter 7 cases.

The liquidation itself would trigger certain priority payments that otherwise would not be due in the ordinary course of business. These priority payments would be made in full before any distribution of proceeds to pay general unsecured claims or to make distributions in respect of equity interests. The liquidation would likely prompt certain other events to occur, including the termination of Dana's pension and retiree benefit plans, the rejection of remaining executory contracts and unexpired leases (including rejection of the Debtors' collective bargaining agreements), defaults under agreements with customers to provide products, the need for estimation of any asbestos personal injury Claims against the Debtors and the acceleration of Claims related to environmental liabilities. Such events would likely create a much larger number of unsecured creditors and would subject the chapter 7 estates to considerable additional claims for damages for breaches of those contracts or for the rejection of those contracts under the Bankruptcy Code. Such claims would also materially increase the amount of unsecured claims against the Debtors and would dilute any potential recoveries to other holders of unsecured claims. No attempt has been made to estimate additional unsecured claims that may result from such events under a chapter 7 liquidation scenario. In addition, the Claims currently filed by the Pension Benefit Guaranty Corporation, by asbestos claimants and by Dana's non-union retirees have been excluded from this analysis and would likely change in amount and/or classification if liquidation under chapter 7 were commenced.

The Liquidation Analysis necessarily contains an estimate of the amount of Claims that will ultimately become Allowed Claims. Estimates for various classes of Claims are based solely upon the Debtors' continuing review of the Claims filed in these Chapter 11 Cases and Dana's books and records. No order or finding has been entered by the Court estimating or otherwise fixing the amount of Claims at the projected levels set forth in this Liquidation Analysis. In preparing the Liquidation Analysis, the Debtors

have projected amounts of Claims that are consistent with the estimated Claims reflected in the Plan with certain modifications as specifically discussed herein.

The Liquidation Analysis assumes that there are no recoveries from the pursuit of any potential preferences, fraudulent conveyances, or other causes of action and does not include the estimated costs of pursuing those actions.

EXHIBIT E

## DANA CORPORATION (Note A)
### Liquidation Analysis
### As of December 31, 2007

The Company has prepared this liquidation analysis (the "Liquidation Analysis") in connection with the Disclosure Statement and Plan. The Liquidation Analysis estimates the value that may be recovered by classes of Claims upon disposition of the assets in a Chapter 7 liquidation.

### STATEMENT OF ASSETS
*($ in millions)*

| | Note | Projected Net Book Value (Note B) (Unaudited) | Hypothetical Percentage Recovery | | Hypothetical Recovery (Amount) | | |
|---|---|---|---|---|---|---|---|
| | | | Low | High | Low | High | Midpoint |
| Cash and Cash Equivalents | C | $ 876.2 | 87.5% | 87.5% | $ 766.7 | $ 766.7 | $ 766.7 |
| Accounts Receivable | D | | | | | | |
| Trade | | 950.1 | 48.4% | 76.6% | 459.9 | 728.1 | 594.0 |
| Other | | 265.2 | 25.3% | 54.2% | 67.0 | 143.8 | 105.4 |
| Inventories | E | 449.7 | 78.0% | 97.4% | 351.0 | 438.0 | 394.5 |
| Other Current Assets | F | 121.5 | 0.0% | 0.0% | - | - | - |
| Investments in Equity Affiliates | G | 431.2 | 29.6% | 37.9% | 127.7 | 163.3 | 145.5 |
| Investments and Other Non-Current Assets | H | 448.5 | 15.2% | 21.1% | 68.4 | 94.7 | 81.5 |
| Property, Plant and Equipment | I | 1,366.8 | 16.7% | 29.3% | 227.8 | 400.8 | 314.3 |
| Value of Going Concern Entities (Net) | J | 2,197.9 | 40.4% | 42.2% | 888.0 | 928.0 | 914.0 |
| Total Assets | | $ 7,107.1 | | | $ 2,956.5 | $ 3,663.4 | 3,315.9 |
| Costs Associated with Liquidation: | | | | | | | |
| Payroll/Overhead Costs | K | | | | (107.7) | (89.4) | (98.5) |
| Non-Debtor Creditors | K | | | | (893.3) | (893.3) | (893.3) |
| Liquidation Costs of PP&E | K | | | | (22.8) | (40.1) | (31.4) |
| Chapter 7 Trustee Fees | K | | | | (89.4) | (111.1) | (100.2) |
| Chapter 7 Professional Fees (9 months) | K | | | | (45.0) | (45.0) | (45.0) |
| | | | | | $ (1,158.1) | $ (1,178.9) | (1,168.5) |
| Net Estimated Liquidation Proceeds Available for Distribution | | | | | $ 1,798.3 | $ 2,484.5 | $ 2,147.4 |

The accompanying notes are an integral part of the Liquidation Analysis

D-4

**EXHIBIT E**

**DANA CORPORATION**
**Liquidation Analysis**
**as of December 31, 2007**

*DISTRIBUTION ANALYSIS SUMMARY*
($ in millions)

| | Note | Estimated Allowable Claims | Estimated Recovery Value |
|---|---|---|---|
| **Net Estimated Proceeds Available for Distribution** | Midpoint | | $ 2,147.4 |
| Less Superpriority Administrative Claims: | | | |
|    Carve Out for Professional Fees | L | $ 20.0 | |
|    Additional Drawn Letters of Credit | L | 138.1 | |
|    Debtor-in-Possession Facility | L | 900.0 | |
|    Total Superpriority Administrative Claims | | | $ 1,058.1 |
| Hypothetical recovery to Superpriority Administrative Claims | | | 100.0% |
| **Proceeds Available after Superpriority Administrative Claims** | | | $ **1,089.3** |
| Less Secured Claims: | | | |
|    Synthetic Leases - Port Authority | M | $ - | |
|    Other Secured Claims | M | 5.0 | |
|    Total Secured Claims | | | $ 5.0 |
| Hypothetical recovery to Secured Claims | | | 100.0% |
| **Proceeds Available after Secured Claims** | | | $ **1,084.3** |
| Less Administrative and Priority Claims: | | | |
|    Chapter 11 Post-Petition Account Payable and Accruals | N | $ 731.7 | |
|    Unpaid Chapter 11 Professional Fees | N | 6.1 | |
|    Priority Claims | N | 92.0 | |
|    503(b)(9) Claims | N | 30.0 | |
|    Total Administrative and Priority Claims | | | $ 859.7 |
| Hypothetical recovery to Administrative and Priority Claims | | | 100.0% |
| **Proceeds Available after Administrative and Priority Claims:** | | | $ **224.6** |
| Less Total Unsecured Claims: | | | |
|    Unsecured Bonds | O | $ 1,621.0 | |
|    General Unsecured Claims | O | 1,614.0 | |
|    Synthetic Lease Deficiency Claim | O | 15.0 | |
|    Other Claims Estimated | O | - | |
|    Total Unsecured Claims | | | $ 3,250.0 |
| Hypothetical recovery to Unsecured Claims | | | 6.9% |
| **Net Estimated Deficiency to Unsecured Claims** | | | $ **(3,025.4)** |

The accompanying notes are an integral part of the Liquidation Analysis

## FOOTNOTES TO LIQUIDATION ANALYSIS

*Note A – Organization and Ownership*

Dana Corporation is the direct or indirect parent entity for all the Debtors and non-Debtor Subsidiaries and Affiliates. Its primary assets are the direct and indirect ownership interests in its Subsidiaries and Affiliates including ownership of significant non-Debtor Subsidiaries, intercompany receivables from other Debtor entities and certain operating assets.

*Note B - Book Values at June 30, 2007*

Unless stated otherwise, the book values used in this Liquidation Analysis are the unaudited net book values of the Debtors as of June 30, 2007 and are assumed to be a proxy for the assets of these entities as of December 31, 2007. The balances exclude the assets of the Sealing, Thermal and Off Highway businesses. These assets are valued on a going concern basis and are discussed in *Note J – Value of Going Concern Entities (Net)*.

*Note C - Cash and Cash Equivalents*

The Liquidation Analysis assumes that operations during the liquidation period would not generate additional cash available for distribution except for net proceeds from the disposition of non-cash assets. Approximately $109.5 million of cash on Dana's balance sheet is pledged to support foreign obligations that would likely be set off in liquidation under chapter 7. It is assumed that the unrestricted cash and cash equivalents of approximately $766.7 million held in Dana's accounts are fully collectible.

*Note D - Accounts Receivable*

The analysis of accounts receivable assumes that a chapter 7 trustee would retain certain existing staff of the Debtors to handle an aggressive collection effort for outstanding trade accounts receivable for the entities undergoing an orderly liquidation. Collectible accounts receivable are assumed to include all third party trade accounts receivable. The liquidation value of trade accounts receivable was estimated based upon a review and assessment of the probability of collection of specific types of trade receivables such as third party receivables, steel procurement program credits, related party receivables and intercompany receivables owed from one Debtor to another Debtor, among others. A range of discount factors were then applied to receivables to estimate. The result is an estimate of the proceeds that would be realized in an orderly liquidation scenario and takes into account the inevitable difficulty a liquidating company has in collecting its receivables and any concessions which might be required to facilitate the collection of certain accounts. Collections during a liquidation of the Debtors may be

further compromised by the likely claims for damages for breaches of or the likely rejection of customer contracts as customers may attempt to set off outstanding amounts owed to the Debtors against such claims. The liquidation value of trade accounts receivable is estimated to be approximately 62.5% of the net book value as of June 30, 2007.

Other accounts receivable is comprised of current notes receivable, tax refunds, deferred receivables, tools chargeable to customers, asbestos insurance receivables and other current receivables. The liquidation value of other accounts receivable is estimated to be approximately 39.7% of the net book value as of June 30, 2007.

*Note E – Inventories*

Inventories are comprised of certain raw materials, work-in-process and finished goods, as well as factory supplies and spare parts. Due to the limited ready supply of alternative product and the short lead times for certain of the Debtors' products, the Liquidation Analysis contemplates the OEM customers of those business units would presumably be willing to compensate the Debtors for the cost of a supply of such products in sufficient quantity to enable the OEM customers to adjust their supply chains to alternative sources. Accordingly, the Liquidation Analysis assumes no new purchases of raw materials are made after December 31, 2007, except for amounts sufficient to supply customers of the Structures business with product through June 30, 2008 and to supply customers of the Torque, Traction and Commercial Vehicle businesses with product through March 31, 2008. Any raw material and WIP inventory remaining at the end of the production process would be sold to a liquidator.

*Note F—Other Current Assets*

Other current assets include prepaid taxes, prepaid insurance, income taxes receivable, ongoing service contracts, and other prepaid expenses. Other current assets are estimated to have no value.

*Note G—Investments in Equity Affiliates*

Investments in Equity Affiliates includes the equity earnings in unconsolidated subsidiaries. Recoveries were estimated by Miller Buckfire and reflect the impact on value of an expedited sale process.

*Note H—Investments and Other Non-Current Assets*

Investments and other non-current assets are comprised primarily of investments in consolidated Subsidiaries, other non-current receivables, the Affinia Note, certain other tangible assets and intangible assets and intercompany receivables.

Other tangible assets include capitalized financing costs associated with the DIP Credit Facility and other amortizing financing instruments, the cash surrender value of a life insurance policy and stock investments. Intangible assets of the Debtors arose in connection with its numerous acquisitions and consist predominantly of goodwill, acquired workforce and trade names.

Of these other non-current assets of the Debtors, value has been estimated for the cash surrender value of life insurance and for certain of its stock investments. Intercompany receivables generally represent certain costs and overhead charges allocated by Dana to its Subsidiaries and are estimated to have no value.

*Note I – Property, Plant & Equipment, Net*

Property, Plant & Equipment includes all land, buildings, machinery and equipment owned by the Debtors.

In connection with obtaining the DIP Credit Facility in March, 2006, Dana obtained fair market value appraisals for 16 of the Debtors' owned facilities. The Liquidation Analysis presumes these appraisals are representative of current values. For certain properties where no appraisal was completed, a fair market value was estimated by multiplying the net book value of the facility by the ratio of the aggregate fair market value to aggregate net book value for the facilities appraised in conjunction with Dana's DIP Credit Facility.

Dana also obtained orderly liquidation value appraisals for machinery and equipment located in 23 of the Debtors' manufacturing locations. The liquidation value for the Debtors' machinery and equipment at other facilities was derived by comparing the orderly liquidation value for the equipment appraised in connection with Dana's DIP Credit Facility to its net book value.

Total liquidation value for Property, Plant & Equipment in the aggregate is an estimated 23.0% of its net book value, which reflects an adjustment for the difficulty in executing the sale of a large portfolio of commercial properties and equipment on an expedited basis given current economic conditions without negatively impacting the ultimate price realized for such properties. An estimated cost of 10% was included as a reduction to net proceeds to reflect the cost of marketing and liquidating the fixed assets.

The Liquidation Analysis does not include any value associated with any leased property, including the Synthetic Lease Property. All leased property, including the Synthetic Lease Property, is assumed returned to the respective lessor in satisfaction of any secured claim.

*Note J – Value of Going Concern Entities (Net)*

In order to maximize total liquidation value, the Liquidation Analysis assumes the orderly liquidation on a going concern basis of Dana's Sealing, Thermal and Off Highway businesses. The net proceeds estimate assumes that post-petition and non-US liabilities of the businesses would be assumed by the respective purchasers. The net proceeds from the sale of these entities would be available for distribution to the Debtors' creditors.

The estimated sale prices of these businesses was estimated by applying market multiples to projected EBITDA and Operating Cash Flow for 2007 and 2008 to arrive at an estimated Enterprise Value. Since these businesses are assumed to be sold to third parties, savings from projected restructuring initiatives associated with customer pricing and labor were excluded from EBITDA for purposes of this analysis. A 25% discount was applied to the estimated Enterprise Value to reflect the effect of a sale process under chapter 7, the likelihood of a "damaged goods" or fire sale perception by bidders and the loss of value attributable to being part of a global Tier 1 automotive supplier.

Proceeds from the sale ultimately available to satisfy Allowed Claims has been reduced by 3% for estimated transaction costs and for the repayment of $5 million of foreign debt associated with those businesses. The remaining proceeds would be available for distribution to the Debtors' creditors. The estimated net proceeds available for distribution to the Debtors, including proceeds from the sale of the Pumps businesses of $10.0 million, are $914 million collectively.

For purposes of maximizing the liquidation value, it is assumed that the going concern sale transactions would be structured as a sale of the stock of the operations by the respective Debtor holders of the stock, and that any proceeds would be sheltered from any tax liabilities by the net operating losses of the Debtors. Alternative structures for the transaction, including a direct sale of assets would likely generate certain un-estimated tax liabilities that would reduce the net proceeds available to be distributed back to the Debtors.

*Note K – Costs Associated with Liquidation*

Corporate payroll and certain operating costs during the liquidation are based upon the assumption that certain plant and corporate functions would be retained to oversee the liquidation process. The remaining staff would also be needed to maintain and close the accounting records and to complete certain administrative tasks including payroll and tax forms and records. Certain minimum staff would be required at the physical locations to complete the closure of the facilities, to disassemble the equipment and to oversee the sale process for equipment and real estate. For purposes of estimating the maximum liquidation value for the Debtors, no additional payments for employee retention through the chapter 7 liquidation period are assumed to be made.

Payments to non-Debtor creditors include payments to foreign creditors of the liquidating businesses (excluding liabilities of Sealing, Thermal and Off Highway which are presumed transferred to the purchaser in the going concern transaction) and are estimated at $893.3 million.

Chapter 7 trustee fees include those fees associated with the appointment of a chapter 7 trustee in accordance with section 326 of the Bankruptcy Code. Trustee fees are estimated based on historical experience in other similar cases and are calculated at 3% of the total net liquidation value of the Debtor assets.

Chapter 7 professional fees include legal, appraisal, broker and accounting fees expected to be incurred during the nine-month liquidation period and not already deducted from liquidation values. Monthly professional fees for legal, accounting and other professionals to assist the estates and the chapter 7 trustee with the process are assumed to be $5.0 million per month for a period of nine months.

The costs of administering the chapter 7 liquidation are estimated as follows:

| | |
|---|---|
| Payroll/Overhead Costs | $   98.5 million |
| Non-Debtor Creditors | $ 893.3 million |
| Liquidation Costs of PP&E | $   31.4 million |
| Trustee Fees | $ 100.2 million |
| Professional Fees | $   45.0 million |
| Total | $1,168.5 million |

*Note L – Super-priority Administrative Claims*

The estimated obligation under the DIP Credit Facility is estimated to be $900.0 million at December 31, 2007. In addition, it is estimated that approximately $138.1 million of letters of credit issued for benefit of the Debtors would be drawn upon conversion to a chapter 7. The Carve-Out at December 31, 2007 is estimated to be $20.0 million. Obligations under the DIP Credit Facility and the Carve-Out for accrued and unpaid professional fees from the Chapter 11 Estates are assumed to be paid after the liquidation costs of the chapter 7 estates, with the Carve-Out assumed paid in its entirety first and the DIP Facility Claim paid subsequently.

The Liquidation Analysis contemplates the orderly liquidation of certain of the non-Debtor operations, which are not a part of the chapter 7 estates, and, therefore, the distribution of proceeds from their liquidation would not be subject to the priority order established in the Bankruptcy Code. The Liquidation Analysis assumes that the current creditors of the non-Debtor assets liquidated would be repaid first.

*Note M – Secured Claims*

For purposes of the Liquidation Analysis, management has assumed that Secured Claims will consist primarily of the estimated Synthetic Lease Secured Claim, and estimated Other Secured Claims. The Synthetic Lease Secured Claim is assumed to be equal to the value in the underlying Synthetic Leased Property and is assumed satisfied by the return of the Synthetic Lease Property to the Synthetic Lessor. Any deficiency claim remaining after disposal of the Synthetic Leased Properties is assumed to be a General Unsecured Claim.

*Note N – Administrative and Priority Claims*

Administrative and priority claims include unpaid post-petition operating expenses of the chapter 11 Estates as estimated by the post-petition accounts payable and accrued expenses reflected in the books and records of the Debtors at June 30, 2007, estimated chapter 7 administrative claims, unpaid professional fees from the chapter 11 estates and estimated Priority Claims. Administrative claims are assumed paid on a pro rata basis from the net proceeds, if any, remaining after the payment of liquidation costs, DIP Facility Claims (including the Carve-Out), and Secured Claims. Other Priority Claims are assumed to be paid on a pro rata basis from the net proceeds available, if any, after the payment of liquidation costs, DIP Facility Claims (including the Carve-Out), Secured Claims and Administrative Claims. These Claims are assumed to have their priority as set out in the Bankruptcy Code. Administrative and Priority Claims are estimated to be $859.7 million.

*Note O – Unsecured Claims*

For purposes of the Liquidation Analysis, management has assumed that unsecured claims will consist of estimated unsecured claims as defined in the Plan. It should be noted that the Liquidation Analysis does not attempt to estimate potential additional unsecured claims that would likely arise as a result of the termination of the Debtors' pension and benefit plans (including re-valuing the current claims filed by the Pension Benefit Guaranty Corporation in these Chapter 11 Cases), the rejection of remaining executory contracts and leases (including collective bargaining agreements of the Debtors), the failure of the Debtors to perform under existing contracts with its customers, the need for estimation of the Asbestos Personal Injury Claims against the Debtors, and the acceleration of Claims related to environmental liabilities. Such additional claims would likely result from a cessation of operations as contemplated herein and would likely be substantial in amount. Unsecured claims are assumed to be paid on a pro rata basis from the net liquidation proceeds available, if any, after the payment of all other Claims. Unsecured Claims are estimated to be $3.25 billion solely for purposes of this Liquidation Analysis.