**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------x
In re:                                                                 Chapter 11

       Dana Corporation, *et al.*,                      Case No. 06-10354 (BRL)

       Debtors,
------------------------------------------------------------x

**MEMORANDUM DECISION DENYING MOTION**
**FOR ABSTENTION AND STAY RELIEF AND GRANTING**
**SUMMARY JUDGMENT DISALLOWING CLAIM**

Dana Corporation ("Dana"), and forty of its domestic direct and indirect subsidiaries (collectively, the "Debtors"), seek entry of an order disallowing and expunging claim number 9592, filed by Jasco Tools, Inc. ("Jasco"), in the amount of $20 million (the "Jasco Claim"), pursuant to sections 105 and 502 of title 11, United States Code (the "Bankruptcy Code"), Rule 3007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and the Claims Procedures Order entered in these cases. Jasco opposes the motion and seeks abstention and stay relief.

At the initial hearing on the Debtor's objection to the Jasco Claim, Jasco protested that it had not been given sufficient notice that the Debtor was moving by summary judgment. Accordingly, the Court adjourned the objection to allow the parties to supplement their pleadings.

**Background**

The Jasco Claim arises out of a purchase agreement (the "Agreement"), between Dana's predecessor, Eaton Corporation[1] and Jasco on July 21, 1995. Pursuant to the Agreement, Jasco supplied precision-machined castings from 1995 through December

---
[1] On or about December 31, 1997, Dana acquired Eaton's business and became a successor-in-interest to Eaton under the Agreement

1

31, 2000 at which time the Agreement expired. The Agreement contained a term and termination provision that states: "The Agreement shall remain in effect until December 31, 2000. The parties agree to meet in the second quarter of the year 1999 to negotiate an extension of the term." (Agreement § 4.01). The parties did not meet in the second quarter but in September 1999, Dana sent Jasco a letter attempting to schedule a meeting to discuss an extension. Jasco prepared a proposal for a contract extension and met with Dana's representatives on December 3, 1999. During that meeting Jasco proposed a price increase over the term of any renewed agreement. Dana found Jasco's proposal to be unacceptable and the Agreement expired by its terms the following year.

Prior to the expiration of the Agreement, Dana considered bids from several alternative suppliers, including Nationwide Precision Products ("Nationwide"). Nationwide submitted a proposal to Dana in November 1999 that contained a 10% reduction of the prices Dana was paying under the Agreement. Upon expiration of the Agreement Nationwide became the new supplier.[2]

Jasco's key personnel responsible for serving Dana under the Agreement included Gary Rogers, Jasco's president; Charles Zicari, a business manager; and Sean Convertino, a senior engineer. Mr. Rogers left Jasco in May 1999. Mr. Zicari and Mr. Convertino left Jasco at the end of June 1999 and went to work for Nationwide in August. Mr. Rogers pursued other business interests. When Mr. Convertino left Jasco, he retained information from Jasco on his personal computer such as machining cycle times, pricing information, and a list of machines required for performance under the Agreement. In his

---

[2] Dana asserts that Jasco was one of its worst suppliers in terms of product nonconformity during its performance under the Jasco Agreement and that Nationwide was chosen as the new supplier because it offered lower pricing and the potential for higher quality through the use of new machinery.

new position at Nationwide, Mr. Zicari played a role in soliciting the Dana business and Mr. Convertino helped prepare Nationwide's proposal to Dana.

On July 31, 2002, Jasco commenced an action against Dana, Nationwide and Messrs. Rogers, Zicari and Convertino in New York Supreme Court (the "Lawsuit") asserting causes of action against Dana for breach of contract, trade secret misappropriation, *prima facie* tort and unjust enrichment.  Jasco claims that Dana diverted the contract from Jasco to its competitor, Nationwide, through the use of stolen trade secrets in conspiracy with Messrs. Convertino, Rogers, and Zicari.

Prior to the chapter 11 petition date, the parties had nearly four years to conduct discovery.  Since the petition date, the Lawsuit has been stayed as to Dana, but Jasco and the remaining defendants, Nationwide and Messrs. Rogers and Zicari, continued to conduct depositions. The State Court severed Jasco's claim against Mr. Rogers from Jasco's claim against Dana.  Ultimately Mr. Roger successfully moved for summary judgment, and Jasco settled with Nationwide and Messrs. Zicari and Convertino.  On September 15, 2006, Jasco filed its proof of claim in this Court.

**Discussion**

*Mandatory Abstention*

In a very similar matter in these chapter 11 proceedings - an objection to a claim of another disappointed supplier to Dana - this court issued a comprehensive ruling denying a motion for mandatory abstention and stay relief.  Jasco and its attorney were present at that hearing and were advised to take heed of it as they had informed this Court they planned to make a similar motion.  Jasco however, persisted upon filing the motion for mandatory abstention and stay relief on the same identical grounds.  I find that

3

conduct bordering on sanctionable. For the reasons set forth below, the motion for abstention and stay relief is denied.

First, mandatory abstention does not apply to core proceedings. *See S.G. Phillips Constrs., Inc. v. City of Burlington (In re S.G. Phillips Constrs., Inc.),* 45 F.3d 702, 708 (2d Cir.1995)("abstention is only mandated with respect to non-core matters"). Contrary to Jasco's assertions, proceedings for the allowance or disallowance of claims are "core." *See* 28 U.S.C. § 157(b)(2)(B); *see also In re S.G. Phillips Constrs., Inc.*, 45 F.3d at 704, 707 (the filing of a proof of claim triggers Section 157(b)(2)(B) and transforms prepetition contract claim arising under state law into core matter); *see also In re G.I. Indus., Inc.*, 204 F.3d 1276, 1279 (9th Cir.2000) (noting that "[t]he filing of a proof of claim is the prototypical situation involving the 'allowance or disallowance of claims against the estate,' a core proceeding under 28 U.S.C. 157(b)(2)"). "Because nothing is more directly at the core of bankruptcy administration than the quantification of all liabilities of the debtor, the bankruptcy court's determination whether to allow or disallow a claim is a core function." *See In re S.G. Phillips Constrs., Inc.*, 45 F.3d at 705 *citing In re BKW Sys., Inc.,* 66 B.R. 546, 548 (Bankr. D.N.H. 1986). "[W]hen a creditor files a proof of claim, the bankruptcy court has core jurisdiction to determine that claim, even if it was a prepetition contract claim arising under state law." *See In re S.G. Phillips Constrs., Inc.*, 45 F.3d at 705 *citing Gulf States Exploration Co. v. Manville Forest Prods. Corp. (In re Manville Forest Prods. Corp.)*, 896 F.2d 1384, 1389-90 (2d Cir.1990); *First Fidelity Bank, N.A. v. Hooker Invs., Inc. (In re Hooker Invs., Inc.)*, 937 F.2d 833, 838 (2d Cir.1991)("filing a proof of claim is not merely a means of providing information to the bankruptcy court, but is a means of invoking the bankruptcy court's

4

equitable jurisdiction over the bankruptcy estate to establish the creditor's right to participate in the distribution of the estate."). *See also Travellers International A.G. v. Robinson*, 982 F.2d 96 (3d Cir. 1992) (The filing of a proof of claim constitutes a creditor's consent to the jurisdiction of the bankruptcy court).

Moreover, abstention is "an extraordinary and narrow exception to the duty of the federal courts to adjudicate controversies which are properly before it." *See S.N.A. Nut Co. v. Haagen-Daz Co. (In re S.N.A. Nut Co.)*, 206 B.R. 495, 501 (Bankr.N.D.Ill.1997) *citing Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 813 (1976). Abstention is the exception rather than the rule. *In re Chicago, Milwaukee, St. Paul & Pacific R. Co.,* 6 F.3d 1184, 1189 (7th Cir.1993).

### *Permissive Abstention*

Although Jasco has not moved under 28 U.S.C. § 1334(c)(1), a movant must show "exceptional circumstances" to warrant permissive abstention where the claim, as here, involves a matter within the bankruptcy court's core jurisdiction. *See Luan Investment, S.E. v. Franklin 145 Corp. (In re Petrie Retail, Inc.)*, 2001 WL 826122, at *5 (S.D.N.Y. July 19, 2001), *aff'd* 304 F.3d 223 (2d Cir.2002). The factors considered by the court in determining whether to exercise permissive abstention are virtually identical to the factors considered in deciding whether to lift the automatic stay, relief that is also sought by Jasco. *Compare JCC Capital Corp. v. Fisher (In re JCC Capital Corp.),* 147 B.R. 349, 354 (Bankr. S.D.N.Y. 1992) *with Sonnax Indus., Inc. v. Tri Component Products Corp. (In re Sonnax Indus., Inc.),* 907 F.2d 1280, 1286 (2d Cir.1990).

Under section 362(d)(1) of the Bankruptcy Code, the court may modify the automatic stay for "cause". The burden of proof on a motion to lift the automatic stay is a

shifting one. *In re Sonnax Indus.*, 907 F.2d at 1285. Section 362(d)(1) requires an initial showing of cause by the movant. *Id.* "If the movant fails to make an initial showing of cause, however, the court should deny relief without requiring any showing from the debtor that it is entitled to continued protection." *Id.*

Neither section 362(d)(1) nor the legislative history defines the term "for cause" and the legislative history gives only very general guidance. *Id.* However, the court in *Sonnax* adopted a dozen factors to be weighed in deciding whether litigation should be permitted to continue in another forum.[1] *Id.* at 1286.

In a given case, however, not all of the factors will be relevant, and the court may disregard irrelevant factors. *See Mazzeo v. Lenhart (In re Mazzeo)*, 167 F.3d 139, 143 (2d Cir. 1999). "When applying these factors and considering whether to modify the automatic stay, the Court should take into account the particular circumstances of the case, and ascertain what is just to the claimants, the debtor and the estate." *In re Keene Corp.*, 171 B.R. 180, 183 (Bankr. S.D.N.Y. 1994).

Jasco argues that the stay should be lifted because its claim is based on noncore state law causes of action, final adjudication would not interfere with Dana's chapter 11

---

[1] The relevant factors are:  (1) whether relief would result in a partial or complete resolution of the issues;  (2) lack of any connection with or interference with the bankruptcy case;  (3) whether the other proceeding involves the debtor as a fiduciary;  (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action;  (5) whether the debtor's insurer has assumed full responsibility for defending it;  (6) whether the action primarily involves third parties;  (7) whether litigation in another forum would prejudice the interests of other creditors;  (8) whether the judgment claim arising from the other action is subject to equitable subordination;  (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor;  (10) the interests of judicial economy and the expeditious and economical resolution of litigation;  (11) whether the parties are ready for trial in the other proceeding;  and (12) impact of the stay on the parties and the balance of harms. *In re Sonnax Indus., Inc.*, 907 F.2d at 1286.

6

proceeding and that lifting the stay is the most expeditious and economical way to resolve the claim.

First, as already noted the quantification of claims such as Jasco's is a core function of the bankruptcy court and is essential to the administration of a debtor's reorganization and timely emergence from chapter 11.  A primary purpose of the Bankruptcy Code is to deal with all of the liabilities of a debtor in one collective proceeding.  Allowing the thousands of claims filed in Dana's proceedings to continue in courts throughout the country would undermine one of the main purposes for utilizing chapter 11.  *See In re WorldCom, Inc.*, 2006 WL 2270379, *9 (S.D.N.Y. Aug. 4, 2006) (holding that the bankruptcy court did not abuse its discretion in declining to lift the automatic stay to allow a creditor to pursue an action in state court, because the purpose of the automatic stay "is to allow the Bankruptcy Court to administer promptly the claims before it, a purpose which would be undermined by constant disruption if separate claims before other courts were permitted to continue until final resolution in the courts, particularly when the claims involve issues of law easily disposed of by the Bankruptcy Court").  Moreover, the Jasco claim does not raise any unsettled issues of state law and is not before a specialized tribunal.  With all of the pleadings now before this Court, the claim can be expeditiously dealt with here.

Accordingly, for all of the reasons stated, Jasco's motion for abstention and modification of the automatic stay is denied.

### *Summary Judgment*

Summary judgment, made applicable through Bankruptcy Rule 7056, is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together

with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Fed R. Bankr. P. 7056; *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). Accordingly, a factual dispute will be found "material" only if it will affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986). On a summary judgment motion, the moving party has the burden of demonstrating the absence of any genuine issue of material fact. *Id.* at 249. Once the movant has made its showing, the burden of production shifts to the non-movant who must "go beyond the pleadings and by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, establish that there is a specific and genuine issue of material fact warranting a trial." *Celotex Corp.,* 477 U.S. at 324 *quoting* Fed. R. Civ. P. 56(c).

Jasco claims it needs more discovery before the case is ready for a dispositive motion. However, before the Jasco Lawsuit was stayed, Jasco had nearly four years to conduct discovery. The discovery efforts included 18 depositions, some lasting for several days. Among them Jasco deposed three Dana employees, taking five days to do so. In addition Dana responded to interrogatories and two notices to produce providing voluminous documentation.

Jasco made a similar argument in response to Mr. Rogers' motion for summary judgment in the Lawsuit in July 2006, claiming that it needed to conduct in excess of a dozen depositions of Nationwide employees and depositions of Mr. Roger's wife and girlfriend. The State Court found that Jasco's cry for additional discovery "rings hollow" concluding that Jasco "offers nothing but mere hope and speculation" that additional discovery would reveal evidence to prove the alleged conspiracy. *See Jasco Tools, Inc. v.*

*Rogers,* Index No. 4948/01Amended Decision and Order, at 9, 10 (N.Y. Sup. Ct. August 14, 2006). I find similarly that Jasco's continuing requests for discovery at this stage are meritless.

### *Breach of Contract*[3]

Jasco's breach of contract claim is based on its allegation that Dana did not comply in good faith with the provision in Section 4.01 that the parties agree to meet to negotiate an extension of the Agreement. However, "in ordinary commercial situations, a mere agreement to agree is unenforceable for indefiniteness where material terms are left open for future resolution." *See Candid Prods., Inc. v. Int'l Skating Union*, 530 F. Supp. 1330, 1336 (S.D.N.Y. 1982). "An agreement must be definite and certain. . . . If the obligation to become binding rests on some future agreement to be reached by the parties, so that either party may refuse to agree, there is no contract." *General Motors Corp. v. Keener Motors, Inc.*, 194 F.2d 669, 676 (6th Cir. 1952). Thus contractual provisions that make renewal of an agreement subject to future negotiations between the parties are not binding and cannot be enforced. *W.A. Inc. v. Romocean*, 1982 WL 4930 *5-6 (Ohio Ct. App. March 24, 1982); *see also Candid Prods.,* 530 F. Supp at 1138 (Court found that good faith negotiation clause in contract was vague and indefinite and unenforceable); *Metromedia, Inc. v. The Greater Cleveland Regional Transit Auth.,* 1979 Ohio App. LEXIS 11970, *17 (Ohio Ct. App. Jan. 11, 1979) (a provision whereby a party covenanted and agreed to negotiate as to the terms and conditions and consideration of said extension or term deemed unenforceable.); *Royce Haulage Corp v Bronx Terminal Garage, Inc.*, 57 N.Y.S.2d 760 (App. Term Sup. Ct.1945) ("A promise to negotiate at a

---

[3] The parties agree that section 9.06 of the Agreement provides that it is governed by Ohio law which is no different that the applicable New York law.

9

future time is not a contract; such a promise means no more than a contemplated discussion in arranging the terms of a contemplated contract").

The obligation to negotiate in "good faith" does not change the enforceability of a renewal clause premised on future negotiations between the parties. *Necchi S.p.A v. Necchi Sewing Machine Sales Corp.,* 348 F.2d 693, 698 (2d Cir. 1965). In *Necchi,* the agreement at issue required the parties to meet six months before the expiration of the agreement to discuss the possibility of renewal. *Id.* at 698. That meeting never occurred, and plaintiff sought damages for defendant's failure to negotiate an extension in good faith. *Id.* In determining that the conduct did not give rise to an arbitrable dispute, the Second Circuit concluded that, regardless of whether Necchi's action were in good faith, it could not write a renewal contract for the parties or determine damages. As the Second Circuit noted: "Certainly we cannot ask that a renewal contract be written for the parties, as it is altogether too conjectural that the parties would have agreed and on what terms. It is impossible to assess any damages, as there is no way that anyone could foresee what would have come from examining the possibility of executing a new contract, even if this were done in the utmost good faith." *Id; compare with May Metropolitan Corp. v. May Oil Burner Corp.*, 290 N.Y. 260, 262 (1943) (Automatic renewal provision providing that the parties agreed on a quota for the new year was exercised for eight successive years before the dispute arose raising question of fact as whether a reasonable standard had emerged between the parties to determine the yearly quota).

Section 4.01 of the Agreement rests on the need to negotiate a future, extended agreement, and thus it is inherently unenforceable. *See General Motors Corp.*, 194 F.2d at 676; *W.A. Inc.*, 1982 Ohio App. LEXIS at *5-6. As in *Necchi*, the term of any renewed

10

agreement is indefinite, as are other essential terms on which the parties could not agree, most significantly, the pricing of parts under any renewed contract. Thus, it is pure conjecture as to what the terms of any new contract might be or that continued negotiations would ever have resulted in an agreement. *See Necchi,* 348 F.2d at 698 .

Jasco's further argument that Dana did not negotiate in good faith because it met with an alternative supplier prior to the negotiations with Jasco is meritless. Nothing in Section 4.01 required Dana to negotiate exclusively with Jasco or forbade Dana from seeking bids from other potential suppliers before discussing a potential renewal with Jasco. In fact in the exhibits submitted by Jasco, the Haybach memo acknowledges that Dana had an oral commitment from Nationwide for a ten percent price reduction on the parts Jasco was supplying and suggests that "we need to push Jasco into meeting a lot sooner than the end of November; we now have a general target for pricing ..... *Good starting point."* See Exhibit C to Declaration in Response to Objection (emphasis added). Moreover, at the time, Dana listed Jasco as one of its worst suppliers in terms of product non-conformities during its performance of the Agreement and thus it made perfect sense for Dana to consider its alternatives.[4]

Accordingly, Jasco's breach of contract claim does not give rise to damages and is denied.

---

[4] In the "Dana Corporation Program Analysis" exhibit submitted by Jasco, the paragraph entitled Former Supplier states
> Dana has offered this opportunity to Nationwide because former supplier did not perform. For example, Nationwide's part per million at New Venture Gear, a key automotive customer, is under 100. Former supplier is trying to achieve 5,000 parts per million and experienced levels over 10,000.

See Exhibit J to Jasco's Declaration in Response to Objection.

11

*Trade Secret Misappropriation*

Jasco's Claim also alleges conversion based upon misappropriation of trade secret information.[5] New York courts have long recognized a cause of action for misappropriation of trade secrets and confidential business information. *Geritrex Corp. v. Dermarite Indus., LLC,* 910 F.Supp. 955, 961 (S.D.N.Y.1996). "To recover under New York law for the misappropriation of a trade secret, the plaintiff must demonstrate (i) that it possessed a trade secret and (ii) that the defendant used that trade secret in breach of an agreement, a confidential relationship, or duty, or as a result of discovery by improper means." *Millenium Expressions, Inc. v. Chauss Marketing, Ltd*., 2007 WL 950070, *8 -9 (S.D.N.Y. March 30, 2007) *citing Hudson Hotels Corp. v. Choice Hotels International,* 995 F.2d 1173, 1176 (2d Cir. 1993), *abrogated on other grounds by Nadel v. Play-By-Play Toys & Novelties, Inc.,* 208 F.3d 368 (2d Cir. 2000) ). The New York Court of Appeals has defined a "trade secret" as "any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it." *Ashland Mgmt. Inc. v. Janien,* 82 N.Y.2d 395, 407 (1993) (internal citations omitted).

Jasco's claim is based upon an alleged conspiracy between Dana and Nationwide and Messrs. Rogers, Zicari and Convertino to steal and use Jasco information in order to replace Jasco with Nationwide as the supplier to Dana. However, despite the allegations with respect to Nationwide and Jasco's former employees, there is no evidence connecting Dana to the alleged conspiracy. The fact that Dana knew that Messrs. Zicari and Convertino became Nationwide employees is not probative of a conspiracy or proof

---

[5] Interestingly, the "Confidentiality" section of the Agreement simply speaks to Jasco's commitment to keep Eaton's, (that is., Dana's), information confidential. The Agreement contains no corresponding obligation on behalf of Eaton. *See* Agreement §7.00.

12

of trade secret misappropriation. Nationwide's employment of individuals who had worked with Dana and knew Dana's business is conduct consistent with permissible business competition. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 597 and n.21 (1986) ("conduct that is a s consistent with permissible competition as with illegal conspiracy does not, without more, support even an inference of conspiracy.")

Mr. Baldino's affidavit claiming that Nationwide bragged to Dana about information it had stolen from Dana is not based upon personal knowledge. The PowerPoint presentation stating that Nationwide had employees who were "intimately knowledgeable with [the Dana] program" simply acknowledges the fact that experienced former Jasco employees would be involved with a Nationwide-Dana relationship. An employee's knowledge and experience is not considered a trade secret. *See Reed Roberts Assoc. v. Strauman*, 40 N.Y.2d 303, 307-09 (1976); *Marietta Corp. v. Fairhurst,* 754 N.Y.S.2d 62, 67 (N. Y. App.Div. 2003)("mere knowledge of the intricacies of a business is simply not enough.") Similarly, as the State Court found in granting summary judgment in favor of Mr. Rogers, the evidence of telephone calls between former Jasco employees and Dana employees "does not (even given every available inference that might justifiably be drawn in favor of the plaintiff) salvage plaintiff's position." *See Jasco Tools, Inc. v. Rogers,* Index No. 4948/01Amended Decision and Order, at 5 (N.Y. Sup. Ct. August 14, 2006); *see also Goetzke v. Ferro Corp.,* 280 F.3d 766, 778 (7th Cir. 2002)(granting summary judgment on conspiracy claim).

*Prima Facie Tort*

To recover for *prima facie* tort the plaintiff must demonstrate (1) intentional infliction of harm (2) causing special damages (3) without excuse or justification (4) by an act or acts that otherwise would be lawful. *See Sigmon v. Parker Chapin Flattau & Klimpl,* 901 F.Supp. 667, 680 (S.D.N.Y.1995); *Freihofer v. Hearst Corp.*, 65 N.Y.2d 135, 142-43 (N.Y. 1985). In order to satisfy the third element, the plaintiff must allege and prove that the conduct complained of was done with the sole intent to harm. *Liberty Mut. Ins. Co. v. York Hunter, Inc*. 945 F.Supp. 742, 749 (S.D.N.Y. 1996). "Motives such as profit, self-interest, or business advantage will defeat a *prima facie* tort claim." *Sigmon v. Parker Chapin Flattau & Klimpl,* 901 F.Supp. at 680.

To establish the intentional infliction of harm and the lack of excuse or justification, Jasco must show that Dana's "sole motive" was to harm Jasco. First, Jasco has no probative evidence that Dana conspired with Nationwide to harm Jasco. Dana was Jasco's customer, not a competitor. More importantly, where any economic motivation exists for Dana's actions, Jasco's *prima facie* tort claim fails as a matter of law. *Id*. Thus, the fact that Dana made an economic decision to choose Nationwide over Jasco – i.e., lower prices and potentially better quality - defeats Jasco's claim.

In addition, Jasco cannot prove special damages. The $20 million that Jasco asserts as damages is the same amount Jasco demands for Dana's alleged breach of contract. "When the identical contractual benefit of the bargain recovery is sought, the tort action is barred as duplicative." *Maxus Leasing Group, Inc. v. Kobelco Am., Inc*., 2007 U.S. Dist. LEXIS 13312, at *14 (N.D.N.Y. Feb. 26. 2007) *citing Rockefeller Univ. v. Tishman Constr. Corp. of N.Y.*, 659 N.Y.S.2d 460, 463 (N.Y. App. Div. 1997).

*Unjust Enrichment*

Jasco alleges that Dana was unjustly enriched[6] by the misappropriation and conversion of Jasco's business confidential and trade secret information. However, where a claim for unjust enrichment is premised on a defendant's misappropriation of trade secrets, the unjust enrichment claim necessarily fails when the plaintiff cannot establish the defendant's misappropriation. *Cross Media Marketing Corp. v. CAB Marketing, Inc.*, 367 B.R. 435 (Bankr. S.D.N.Y. 2007) ("Plaintiff cannot establish a claim for unjust enrichment because it failed to establish that Defendants misappropriated Plaintiff's customer lists.") Accordingly, because Jasco cannot prove that Dana engaged in any misappropriation or conversion, judgment as a matter of law is warranted.

**Conclusion**

For the reasons stated, Jasco's motion for abstention and relief from the stay is denied. Dana's motion for summary judgment disallowing the Jasco Claim is granted.

SUBMIT AN ORDER CONSISTENT WITH THIS DECISION.

Dated: New York, New York
       November 6, 2007

                                            /s/ Burton R. Lifland
                                            United States Bankruptcy Judge

---

[6] The elements of unjust enrichment under New York law are "(1) a benefit to the defendant, (2) at the Plaintiff's expense, and (3) that 'equity and good conscience' require restitution. *Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000).

15