JONES DAY
222 East 41st Street
New York, New York  10017
Telephone:  (212) 326-3939
Facsimile:  (212) 755-7306
Corinne Ball (CB 8203)
Richard H. Engman (RE 7861)

JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio  44114
Telephone:  (216) 586-3939
Facsimile:  (216) 579-0212
Heather Lennox (HL 3046)
Carl E. Black (CB 4803)
Ryan T. Routh (RR 1994)

JONES DAY
1420 Peachtree Street, N.E.
Suite 800
Atlanta, Georgia  30309-3053
Telephone:  (404) 521-3939
Facsimile:  (404) 581-8330
Jeffrey B. Ellman (JE 5638)

Attorneys for Debtors
and Debtors in Possession

# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF NEW YORK

```
----------------------------------------------------------x
                                        :
In re                                   :   Chapter 11
                                        :
Dana Corporation, et al.,               :   Case No. 06-10354 (BRL)
                                        :
                  Debtors.              :   (Jointly Administered)
                                        :
----------------------------------------------------------x
```

## SUPPLEMENTAL BRIEF IN SUPPORT OF
## CONFIRMATION OF THIRD AMENDED JOINT PLAN OF
## REORGANIZATION OF DEBTORS AND DEBTORS IN POSSESSION

TABLE OF AUTHORITIES ....................................................................................................ii

PRELIMINARY STATEMENT ............................................................................................ 1

STATEMENT OF FACTS ..................................................................................................... 3

ARGUMENT .......................................................................................................................... 3

I.      THE ASBESTOS OBJECTIONS SHOULD BE OVERRULED ................................... 3

      A.      Asbestos Personal Injury Claims Are Not Impaired by the Plan........................... 4

              1.      The Reinstatement and "Pass-Through" of the Asbestos Personal Injury Claims Pursuant to the Plan Does Not Constitute Impairment Under the Bankruptcy Code ...................................................5

              2.      Because the Applicable Reorganized Debtors Will Be Capitalized With Sufficient Assets to Satisfy Reinstated Asbestos Personal Injury Claims into the Foreseeable Future, the Asbestos Personal Injury Claims are Not Impaired by the Plan ................................................. 9

              3.      The Plan Does Not Deny the Asbestos Personal Injury Claimants Any Remedies Available to Such Claimants Prior to the Petition Date ...................................................................................................... 11

              4.      To the Extent the Debtors and the Asbestos Personal Injury Claimants Cannot Resolve any Objection Related to the Tolling of the Automatic Stay, the Debtors Will Amend the Plan to Remove That Provision ........................................................................................... 12

      B.      The Asbestos Personal Injury Claims are Properly Classified Under the Plan ..................................................................................................................... 13

      C.      The Plan Provides Identical Treatment to All Asbestos Personal Injury Claims ................................................................................................................... 16

      D.      The Debtors are Not Obliged to Comply With the Requirements of Section 524(g) of the Bankruptcy Code.............................................................. 18

      E.      The Remainder of the Asbestos Objections Should Be Overruled for the Reasons Already Set Forth Above ...................................................................... 19

CONCLUSION..................................................................................................................... 21

# TABLE OF AUTHORITIES

## FEDERAL CASES

Page

ACC Bondholders Group v. Adelphia Comm. Corp. (In re Adelphia Comm. Corp.),
361 B.R. 337 (S.D.N.Y. 2007) ............................................................................ 16

In re Am. Solar King Corp., 90 B.R. 808 (Bankr. W.D. Tex. 1988) ............................. 8

In re Armstrong World Indus., Inc., 348 B.R. 136 (D. Del. 2006) ................................ 14

In re Babcock & Wilcox Co., No. 00-10992, 2004 WL 4945985 (Bankr. E.D. La.
Nov. 9, 2004) ...................................................................................................... 15

Carey v. Crescenzi, 923 F.2d 18 (2d Cir. 1991) ......................................................... 11

In re Congoleum Corp., 362 B.R. 198 (Bankr. D.N.J. 2007) ....................................... 18

In re Dow Corning Corp., 255 B.R. 445 (E.D. Mich. 2000) ......................................... 18

In re Dow Corning Corp., 280 F.3d 648 (6th Cir. 2002) ............................................. 18

In re G-I Holdings, Inc., 323 B.R. 583 (Bankr. D.N.J. 2005) ...................................... 18

In re Kaiser Aluminum Corp., No. 02-10429 (JKF), 2006 WL 616243
(Bankr. D. Del. Feb. 6, 2006) .............................................................................. 14

In re Quigley Co., Inc., No. 04-15739 (SMB), 2007 WL 3077310
(Bankr. S.D.N.Y. Oct. 23, 2007) ............................................................ 14, 15, 17, 18

In re Smith, 123 B.R. 863 (Bankr. C.D. Cal. 1991) ................................................. 6, 7, 8

In re Spirited, Inc., 23 B.R. 1004 (Bankr. E.D. Pa. 1982) ......................................... 6, 8

Owens Corning v. Credit Suisse First Boston, 322 B.R. 719, 724-25 (D. Del. 2005) .... 9

UNARCO Bloomington Factory Workers v. UNR Indus., Inc.,
124 B.R. 268 (N.D. Ill. 1990) .............................................................................. 14

Vienna Park Properties v. United Postal Savs. Ass'n (In re Vienna Park Properties),
976 F.2d 106 (2d Cir. 1992) ................................................................................. 9

In re WorldCom, Inc., No. 02-13533 (AJG), 2003 WL 23861928 (Bankr. S.D.N.Y.
Oct. 31, 2003) ...................................................................................................... 14

## FEDERAL STATUTES

11 U.S.C. § 1122 ........................................................................................................... 3, 13, 14

11 U.S.C. § 1122(a) .......................................................................................................... 14, 15

11 U.S.C. § 1123(a)(4) ...................................................................................................... 4, 16, 17, 18

11 U.S.C. § 1129 ............................................................................................................... 1

11 U.S.C. § 1129(a)(1) ...................................................................................................... 16, 18

11 U.S.C. § 1129(a)(3) ...................................................................................................... 4, 19

11 U.S.C. § 1129(a)(7) ...................................................................................................... 19

11 U.S.C. § 1129(a)(8) ...................................................................................................... 19

11 U.S.C. § 1129(a)(11) .................................................................................................... 12, 19

11 U.S.C. § 1129(b) .......................................................................................................... 4

11 U.S.C. § 1129(b)(2)(B) ................................................................................................ 19

11 U.S.C. § 524(g) ............................................................................................................ 4, 18

28 U.S.C. § 157(b)(2)(B) .................................................................................................. 7

## STATE STATUTES

N.Y. Debt. & Cred. Law § 273-a ..................................................................................... 11

CLI-1573983v5

The above-captioned debtors and debtors in possession (collectively, the "Debtors") respectfully submit this supplemental brief in support of confirmation of the Third Amended Joint Plan of Reorganization of Debtors and Debtors in Possession, dated October 23, 2007 (Docket No. 6671) (as it may be modified or amended, the "Plan").[1]

## PRELIMINARY STATEMENT

As described in detail in (i) the Debtors' Consolidated Reply to Objections to Confirmation of Third Amended Joint Plan of Reorganization of Debtors and Debtors in Possession and Request for Judicial Notice (the "Consolidated Reply")[2] and (ii) the Debtors' (I) Memorandum of Law in Support of Confirmation of Third Amended Joint Plan of Reorganization of Debtors and Debtors in Possession and (II) Consolidated Reply to Certain Objections to Confirmation of Third Amended Joint Plan of Reorganization of Debtors and Debtors in Possession (the "Confirmation Memorandum"),[3] the Plan provides for the restructuring and reorganization of the Debtors through the implementation of several interrelated undertakings to restructure the Debtors' businesses (the "Restructuring") and the Global Settlement among the Debtors and the Unions, involving Centerbridge and the Supporting Creditors as the New Equity Investors, serving as the foundation for such Restructuring. The Plan is the culmination of the Debtors' (i) intensive reorganization and rehabilitation efforts and (ii) extensive good-faith, arm's-length negotiations with their primary

---

[1]     Capitalized terms not otherwise defined herein shall have the meanings given to them in the Plan.

[2]     The Consolidated Reply, among other things:  (a) demonstrates how the Debtors have pursued and achieved the broad goals of reorganization under chapter 11 of the Bankruptcy Code while simultaneously maximizing value for the Debtors' creditors; (b) has been filed contemporaneously with this Response; and (c) is incorporated herein by reference.

[3]     The Confirmation Memorandum, among other things:  (a) demonstrates the Debtors' compliance with the requirements for Confirmation set forth in section 1129 of the Bankruptcy Code; (b) has been filed contemporaneously with this Response; and (c) is incorporated herein by reference.

stakeholder, customer, vendor and employee constituencies with respect to the Restructuring and the Global Settlement.

The Plan, however, does more than accomplish the discrete goal of rehabilitating an ailing company.  It also provides the mechanism through which the Debtors make manifest their continuing commitment to maximization of value for each of their various creditor constituencies, nearly all of which enjoy complete or substantial recoveries from the Debtors. Given this commitment to the preservation of value for creditors, it is unsurprising that the Plan enjoys the full support of each of these constituencies, and has been overwhelmingly accepted by voting creditors by 96% in number and 98% in amount.[4]  Moreover, as described in the Consolidated Reply and the Confirmation Memorandum, the Plan complies with each of the requirements for confirmation set forth in the Bankruptcy Code.

In this Supplemental Brief, the Debtors separately address the objections to Confirmation raised by a discrete subset of their overall creditor constituency:  Asbestos Personal Injury Claimants.  Of the 4 contested objections to Confirmation remaining in these cases (out of 11 timely objections filed), two were filed by certain of the Debtors' Asbestos Personal Injury Claimants (as such term is defined below):  (i) the Ad Hoc Committee of Asbestos Personal Injury Claimants' Objection to the Third Amended Joint Plan of Reorganization of Debtors and Debtors in Possession (Docket No. 7208) (the "Ad Hoc Asbestos Objection"); and (ii) the Objection of José Angel Valdez to Third Amended Joint Plan of Reorganization of Debtors and Debtors in Possession (Docket No. 7274) (the "Valdez

---

[4]      See Declaration of Jeffrey B. Ellman Certifying the Tabulation of Votes on, and the Results of Voting with Respect to, the Third Amended Joint Plan of Reorganization of Debtors and Debtors in Possession, at ¶¶ 7-8 (the "Voting Declaration"), attached as Exhibit A to the Confirmation Memorandum.

Objection").[5] The gravamen of the Asbestos Objections is that, by restructuring the Debtors and Reinstating Asbestos Personal Injury Claims against a significantly healthier company than existed prepetition, the Debtors thereby have "impaired" Asbestos Personal Injury Claims. Because the retention of all legal, contractual and equitable rights against stronger, solvent Reorganized Debtors could never be honestly characterized as impairment, the Debtors request that the Asbestos Objections be overruled for the reasons set forth herein and that the Plan be confirmed.

## STATEMENT OF FACTS

The facts relevant to Confirmation of the Plan are set forth in the Disclosure Statement, the Plan, the Voting Declaration, the Consolidated Reply (and exhibits) and any evidence presented or testimony that may be adduced at the Confirmation Hearing, all of which are incorporated herein by reference.

## ARGUMENT

## I.     THE ASBESTOS OBJECTIONS SHOULD BE OVERRULED

The Asbestos Objections allege:  (A) that the Debtors' implementation of the Restructuring Transactions, among other things, leaves Asbestos Personal Injury Claims "impaired" within the meaning of section 1124 of the Bankruptcy Code; (B) the classification of all Asbestos Personal Injury Claims in Class 3 under the Plan violates section 1122 of the Bankruptcy Code; (C) even if properly classified, the alleged separate treatment accorded to

---

[5]     On November 29, 2007, certain Asbestos Personal Injury Claimants filed the Joinder of Clients of Cooney & Conway in the Objection of José Angel Valdez to Third Amended Joint Plan of Reorganization of Debtors and Debtors in Possession (Docket No. 7275) (the "Cooney Joinder" and, collectively with the Ad Hoc Asbestos Objection and the Valdez Objection, the "Asbestos Objections").  The Cooney Joinder was filed after the deadline for filing objections to Confirmation, as established by the Order (I) Approving Disclosure Statement, (II) Establishing Procedures for Solicitation and Tabulation of Votes to Accept or Reject Joint Plan of Reorganization, (III) Scheduling Hearing on Confirmation of Joint Plan of Reorganization and (IV) Approving Related Notice Procedures (Docket No. 6673), entered October 23, 2007.  As the Cooney Joinder joins in the Valdez Objection, the arguments set forth below in response to that timely-filed objection are set forth in opposition to the late-filed Cooney Joinder as well.

certain Asbestos Personal Injury Claims violates section 1123(a)(4) of the Bankruptcy Code;

(D) the Plan attempts to provide for the treatment of Asbestos Personal Injury Claims without

complying with section 524(g) of the Bankruptcy Code; (E) the Plan does not provide for

payment to holders of Asbestos Personal Injury Claims once such Claims are allowed;

(F) the Plan is not feasible within the meaning of section 1129(a)(11) of the Bankruptcy Code;

(G) the Plan violates the "absolute priority rule" embodied in section 1129(b) of the Bankruptcy

Code; and (H) the Plan is not proposed in "good faith" within the meaning of section 1129(a)(3)

of the Bankruptcy Code.  For the reasons set forth in detail below, the Debtors submit that the

Plan's treatment of Asbestos Personal Injury Claims not only fully complies with all relevant

sections of the Bankruptcy Code, but scrupulously protects the position of all holders of

Asbestos Personal Injury Claims.  Accordingly, the Debtors respectfully request that the

Asbestos Objections be overruled.[6]

### A.  Asbestos Personal Injury Claims Are Not Impaired by the Plan

There can be no question as to the unimpairment of Class 3 Asbestos Personal

Injury Claims under the Plan.  Simply put, under the Plan, on the Effective Date, the legal,

equitable and contractual rights of the Asbestos Personal Injury Claimants will be Reinstated

against a solvent Reorganized Dana in accordance with section 1124(1) of the Bankruptcy

Code.[7]  After Confirmation, all holders of Asbestos Personal Injury Claims against the Debtors

---

[6]     As a threshold matter, Mr. Valdez has not established that he is either a creditor or a party in interest in these Chapter 11 Cases.  Thus, Mr. Valdez's standing to prosecute the Valdez Objection is questionable. With the exception of the Valdez Objection, the Debtors have not received any information that indicates Mr. Valdez is looking to the Debtors as a possible source of recovery for his alleged injuries.  In fact, while the lawsuit commenced by Mr. Valdez in August of 2007 names over 90 defendants from industries as divergent as construction materials, pesticide/insecticide and automobile parts, Dana was not named in, nor was Dana informed that it might be a target of, such action.  Dana has received no other communication from Mr. Valdez or his counsel setting forth the basis of a Claim against any of the Debtors.

[7]     Section II.B.6 of the Plan provides that "[o]n the Effective Date, the Asbestos Personal Injury Claims will be Reinstated."  See Plan at § II.B.6.

(collectively, the "Asbestos Personal Injury Claimants") may continue to prosecute, and settle if they so choose, precisely the same Claims and cases they possessed prior to the Petition Date against the same entities[8] with the same insurance resources and significantly improved balance sheets; the parties retain the exact causes of action and defenses thereto.[9]  Indeed, to ensure that the rights of the Asbestos Personal Injury Claimants are not infringed, the continuing, prospective rights of the Asbestos Personal Injury Claimants are assiduously protected throughout the Plan.  See Consolidated Reply, at ¶ 13.

1.  **The Reinstatement and "Pass-Through" of the Asbestos Personal Injury Claims Pursuant to the Plan Does Not Constitute Impairment Under the Bankruptcy Code**

As the Debtors have continually emphasized, these Chapter 11 Cases are not driven by the Debtors' asbestos-related Liabilities.  The Plan — and the Restructuring Transactions contemplated therein and in the Disclosure Statement — do not alter this fact in any respect.  As described in the Disclosure Statement (and as the testimony presented at, and the declarations filed in advance of, the Confirmation Hearing will confirm), Reorganized Dana will

---

Section I.A.164 of the Plan provides, in relevant part:

"Reinstated" or "Reinstatement" means rendering a Claim or Interest unimpaired within the meaning of section 1124 of the Bankruptcy Code.  Unless the Plan specifies a particular method of Reinstatement, when the Plan provides that a Claim or Interest will be Reinstated, such Claim or Interest will be Reinstated, at Dana's sole discretion, in accordance with one of the following:

(a)      The legal, equitable and contractual rights to which such Claim or Interest entitles the holder will be unaltered ….

Plan at § I.A.156.

[8]   As part of the Restructuring Transactions, Dana will merge into Dana Companies LLC, with the surviving, merged entity possessing the same rights and obligations that Dana possesses today.  See Plan, Exhibit V.C.1; Consolidated Reply, at ¶ 47.

[9]   To the extent that the Asbestos Objections allege that either the Plan or the Restructuring Transactions extinguish the obligation of any Debtor defendant to make payment on an Allowed Asbestos Personal Injury Claim (see Ad Hoc Asbestos Objection, at ¶¶ 23-24 ("Under the Plan, a Restructuring Transaction can extinguish a Reorganized Debtor's obligation to pay asbestos personal injury claims . . . .")) or that the Asbestos Personal Injury Claims may be "transferred" between Reorganized Debtors pursuant to the Plan (see Ad Hoc Asbestos Objection, at ¶¶ 12-13), such allegations are demonstrably false.  The Plan plainly reinstates all such obligations.  See Plan, Section II.B.6.

be (a) solvent as of the Effective Date,[10] (b) insured for the majority of future indemnity and defense costs related to Asbestos Personal Injury Claims (the vast majority of which insurance is subject to coverage-in-place agreements)[11] and (c) adequately capitalized and sufficiently liquid to satisfy valid Asbestos Personal Injury Claims as they come due into the foreseeable future.[12] Which is to say:  the entity against which Asbestos Personal Injury Claimants may assert their Asbestos Personal Injury Claims after the Effective Date (i.e., Reorganized Dana) is significantly healthier than the entity against which such claimants had recourse prepetition.  Accordingly, the Asbestos Objections' allegations that the Plan and the Restructuring Transactions "remov[e] . . . any meaningful avenue of compensation" for Asbestos Personal Injury Claims (see Ad Hoc Objection, at ¶ 10) and/or are designed to implement a "scheme" whereby "the Debtors will use their bankruptcy to try and strip assets from the corporate entity liable for asbestos claims" (see Valdez Objection, at p.4) are entirely unfounded and should be overruled.  The rehabilitation of a sick company into a healthy one does not serve to impair claims against that company.

The Asbestos Objections allege that the failure of the Debtors to estimate and pay Asbestos Personal Injury Claims pursuant to the Plan — indeed, that Reinstatement itself — constitutes impairment of those Claims.[13]  Each of the Asbestos Objections cite the same two cases in support of this remarkable proposition:  In re Smith, 123 B.R. 863 (Bankr. C.D. Cal. 1991) and In re Spirited, Inc., 23 B.R. 1004 (Bankr. E.D. Pa. 1982).  The threadbare nature of

---

[10]     See Exhibit D to Consolidated Reply (Summary of Sources and Uses).

[11]     See Consolidated Reply, at ¶ 59; Exhibit G to Consolidated Reply (Heintz Declaration), at ¶¶ 5-29; Exhibit H to Consolidated Reply (Terrell Declaration), at ¶¶ 6-9.

[12]     See Consolidated Reply, at ¶ 63; Exhibit D to Consolidated Reply (Summary of Sources and Uses).

[13]     See Ad Hoc Asbestos Objection, at ¶ 9; Valdez Objection, at pp. 6-7.

this support, however, will not suffice to undermine the basic principle of bankruptcy law that bankruptcy does not *enhance* a creditor's rights against a debtor.

The Asbestos Objections' reliance on <u>Smith</u> is misplaced.  In <u>Smith</u>, the objecting creditors were denied their "right to have the validity and extent of their claim determined by [the bankruptcy] court; and the further right to receive property or payment equal to the allowed amount of their claim to the extent there are assets in the bankruptcy estate from which payment can be made" and, therefore, were deemed impaired under the debtor's proposed plan of reorganization.  <u>Smith</u>, 123 B.R. at 866.  The Asbestos Personal Injury Claimants compare themselves to the objecting creditors in <u>Smith</u> and argue that the Plan strips them of this same right and, therefore, they are similarly impaired.  <u>See</u> Ad Hoc Asbestos Objection at ¶ 9; Valdez Objection, at p. 6.

Notably, however, in <u>Smith</u>, the objecting creditors were *contract* creditors of the debtor with *liquidated* claims, which status bestowed upon them the rights under the Bankruptcy Code described above.  In sharp contrast, the Asbestos Personal Injury Claimants are personal injury *tort* creditors of Dana with *disputed, unliquidated and contingent* Claims.  As tort creditors, the Asbestos Personal Injury Claimants enjoy no right identical to that denied the contract creditors in <u>Smith</u> because the former do not possess undisputed, liquidated Claims that carry a right of immediate payment and because bankruptcy courts lack the jurisdiction to provide similar relief.  Section 157(b)(2)(B) of title 28 of the United States Code specifically removes "the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11" from the category of "core proceedings" that bankruptcy judges may hear and determine.  Although this Court has jurisdiction to direct the payment of liquidated tort claims (and, indeed

— just as Dana has indicated its intention to assume all prepetition settlement agreements with Asbestos Personal Injury Claimants and perform its obligations thereunder — each of the settling Asbestos Personal Injury Claimants will be paid upon Dana's receipt of all documentation required by their respective agreements),[14] it does not have jurisdiction to resolve the Asbestos Personal Injury Claims on their merits, thus rendering <u>In re Smith</u> inapposite.

The <u>Spirited</u> court espoused the novel proposition that "a class of claims or interests for which no payment is made in a plan is impaired." <u>Spirited</u>, 23 B.R. at 1007. This proposition has gained no traction in the 25 years since <u>Spirited</u> was decided, and this is small wonder. The court in <u>In re Am. Solar King Corp.</u>, 90 B.R. 808, 821 n.21 (Bankr. W.D. Tex. 1988), effectively demolished this holding by stating that "[w]hat should have been but apparently was not obvious to that court is that not all interests by their 'previously established rights' have any right to payment or compensation." Such is the case here. Because the Asbestos Personal Injury Claimants do not possess undisputed, liquidated Claims that carry a right of immediate payment, and because the Court would lack the jurisdiction to liquidate the Asbestos Personal Injury Claims in the first instance, the Asbestos Personal Injury Claimants can assert no present "right to compensation" under the Plan.

At the heart of this objection is the Asbestos Personal Injury Claimants' evident desire to receive a windfall — <u>i.e.</u>, more than they could have recovered from the Debtors upon their disputed, contingent, unliquidated and unproven Claims if these bankruptcy cases had not been filed — at the expense of the Debtors' other creditors. In light of the fact that Asbestos Personal Injury Claimants have yet to prove up their Claims, the clamoring for *immediate*

---

[14]     <u>See</u> Notice of Filing of Supplements to Certain Exhibits to Third Amended Joint Plan of Reorganization Relating to Executory Contract and Unexpired Leases and Joint Venture Agreements (Docket No. 7342), filed on December 4, 2007; Consolidated Reply, at ¶ 50.

payment is beyond the pale. Because the Asbestos Personal Injury Claimants cannot leverage these Chapter 11 Cases to obtain greater rights against the Debtors than they enjoyed prior to the Petition Date, any objection on this basis should be overruled. See Vienna Park Props. v. United Postal Savs. Ass'n (In re Vienna Park Props.), 976 F.2d 106, 113 (2d Cir. 1992) (stating that a creditor should not receive "a windfall merely by reason of the happenstance of bankruptcy.") (quoting Butner v. U.S., 440 U.S. 48, 55 (1979)).

> **2. Because the Applicable Reorganized Debtors Will Be Capitalized With Sufficient Assets to Satisfy Reinstated Asbestos Personal Injury Claims into the Foreseeable Future, the Asbestos Personal Injury Claims are Not Impaired by the Plan**

As suggested above, the Asbestos Objections primarily boil down to one indefensible and incredible complaint: namely, that the transformation of Dana Corporation from an ailing and insolvent company into a healthy and solvent company impairs Asbestos Personal Injury Claims. This is not simply counter-intuitive; it is empirically false. Reorganized Dana's assets will be more than sufficient to satisfy any potential net asbestos-related liabilities remaining after their probable insurance recovery. See Consolidated Reply, at ¶¶ 49, 59-63; Exhibit E to Consolidated Reply (Hanlon Declaration), Attachment, *passim*; Exhibit F to Consolidated Reply (Radcliffe Declaration), at ¶¶ 14, 28, 38; Exhibit D to Consolidated Reply (Summary of Sources and Uses) (establishing Reorganized Dana's ability to satisfy asbestos Personal Injury Claims over a 45-year time horizon); see also Owens Corning v. Credit Suisse First Boston, 322 B.R. 719, 724-25 (D. Del. 2005) (finding that estimates of future asbestos-related personal injury liabilities are properly reduced on account of, among other things, decreased disease incidence and changes in the asbestos litigation landscape benefiting defendants).

Indeed, Dana's initial capitalization, which takes into account a 45-year horizon for potential asbestos liabilities at the maximum estimated amount is proof positive that Dana has no intention whatsoever of leaving the asbestos plaintiffs bereft of future satisfaction of any claims that they might be able to prove or settle in the future. Dana is not being "denuded" or "stripped" of assets pursuant to the Restructuring Transactions. See Consolidated Reply, at ¶ 48 (describing consideration received by Dana from New Dana Holdco). Moreover, the Asbestos Objections simply ignore the fact that the Restructuring Transactions significantly benefit the Asbestos Personal Injury Claimants with respect to the assets of the defendant Reorganized Debtors. Comparing the prepetition and post-Confirmation positions of the Asbestos Personal Injury Claims with respect to Dana's assets clearly demonstrates this improvement.

See Consolidated Reply, at ¶ 49 n.42. No other general unsecured creditor of Dana (all of whom are receiving property of a value that is worth approximately 72% to 86% of the amount of their claims; see Disclosure Statement, at 12) receives treatment as beneficial as that accorded Asbestos Personal Injury Claimants, which are *pari passu* in priority with Dana's other general unsecured creditors. The characterization of the Restructuring Transactions as "channel[ing] asbestos claims to an entity that will be a mere shadow of the enterprise that once provided assets to satisfy any judgment obtained" (Valdez Objection, at p.6) fundamentally misrepresents both the Asbestos Personal Injury Claimants' enhanced ability to recover from Dana's available assets (whatever their nominal value) and the effect of the Restructuring Transactions generally.[15] Credible allegations of impairment under such circumstances are inconceivable.

---

[15]     Moreover, even though Reorganized Dana will be prudently capitalized such that it will be able to satisfy projected liabilities at maximum 45-year projections, characterizing the Restructuring Transactions as an exercise in asset-stripping nevertheless exaggerates the nature of the Asbestos Personal Injury Claimants' rights against the Debtors, which rights did not and do not presently include a guarantee of payment. Indeed, such a notion was fundamentally challenged when the Debtors filed for bankruptcy.

### 3. The Plan Does Not Deny the Asbestos Personal Injury Claimants Any Remedies Available to Such Claimants Prior to the Petition Date

The Ad Hoc Asbestos Objection alleges that the combination of the Restructuring Transactions and the exculpation provisions set forth at Section IV.E.7 of the Plan work to deny the Asbestos Personal Injury Claimants recourse to certain remedies (e.g., actions to recover a fraudulent conveyance) that were available to the Asbestos Personal Injury Claimants prior to the Petition Date.  See Ad Hoc Asbestos Objection, at 15, 17-22.  Because the remedies allegedly endangered by the Plan are not simply hypothetical but, in the event of Confirmation, would be unavailable to the Asbestos Personal Injury Claimants regardless of the existence of the Plan's exculpation provisions, Asbestos Personal Injury Claims are not impaired by the Plan and this objection should be overruled.

*First*, section 273-a of the New York Debtor and Creditor Law (and any similar laws in other states) preserves the Asbestos Personal Injury Claimants' ability to pursue the Reorganized Debtors in the event that Reorganized Dana is unable to satisfy any judgment upon an Asbestos Personal Injury Claim.  See N.Y. Debt. & Cred. Law § 273–a ("Every conveyance made without fair consideration when the person making it is a defendant in an action for money damages or a judgment in such an action has been docketed against him, is fraudulent as to the plaintiff in that action without regard to the actual intent of the defendant if, after final judgment for the plaintiff, the defendant fails to satisfy the judgment.").  It is worth noting that (a) the Plan does not, and could not, attempt to impair the Asbestos Personal Injury Claimants' access to the recovery protected by this statute and (b) the statute of limitations on any action commenced thereunder is tolled until a judgment actually goes unpaid.  See, e.g., Carey v. Crescenzi, 923 F.2d 18, 21 (2d Cir. 1991) (stating that actions based on N.Y. Debt. & Cred. Law § 273–a do

not accrue until after a judgment is returned unsatisfied). Accordingly, the Asbestos Personal Injury Claimants are well-protected against any risk of collection without regard to solvency.

*Second*, the spectre of impairment conjured by the Ad Hoc Asbestos Objection is wholly without substance. The Ad Hoc Asbestos Objection argues that Confirmation of the Plan would nullify the hypothetical legal right of Asbestos Personal Injury Claimants to bring a fraudulent conveyance action against the Reorganized Debtors (thus impairing the Asbestos Personal Injury Claims) while ignoring the fact that Confirmation of the Plan would necessitate findings by the Court that would make this hypothetical right impossible. For example, to confirm the Plan with respect to the defendant Debtors, the Court would necessarily have to find, under section 1129(a)(11) of the Bankruptcy Code, that the defendant Reorganized Debtors against which the Reinstated Asbestos Personal Injury Claims may be asserted are solvent as of the Effective Date. That is, the Court would have to find that the Restructuring Transactions perform their intended function of strengthening the Debtors for the benefit of all interested parties (including Asbestos Personal Injury Claimants) going forward. If the Debtors have been successful, and the Plan is therefore confirmable, such theoretical fraudulent conveyance actions would be stillborn; the solvency of the Reorganized Debtors would necessarily frustrate any such action. Indeed, this objection can fairly be said to be subsumed within the Asbestos Personal Injury Claimants' broader objection that the Restructuring Transactions will denude the Reorganized Debtors (which objection is addressed and refuted above). Accordingly, because the Plan does not deny the Asbestos Personal Injury Claimants any remedy such claimants may have enjoyed prepetition (and therefore does not alter such claimants' legal rights), the Plan does not impair the Asbestos Personal Injury Claims.

### 4. To the Extent the Debtors and the Asbestos Personal Injury Claimants Cannot Resolve any Objection Related to the Tolling of the Automatic Stay, the Debtors Will Amend the Plan to Remove That Provision

The Valdez Objection argues that the Debtors "impair Mr. Valdez's claim by providing that the automatic stay against Class 3 claimants will lift 60 days after the Effective Date." Valdez Objection, at p.7. Specifically, Section IV.E.5.a.5.c of the Plan provides that "[s]olely with respect to Asbestos Personal Injury Claims, the automatic stay imposed by section 362 of the Bankruptcy Code will be terminated as of the date that is 60 days after the Effective Date and, pursuant to section 108(c) of the Bankruptcy Code, the applicable statute of limitations with respect to any such Claim that did not expire prior to the Petition Date will cease to be tolled as of that date." Although the Valdez Objection attributes this offending provision to the Debtors' supposed desire to frustrate the recovery of Asbestos Personal Injury Claimants generally, the Debtors in fact included this provision merely to give all parties a short period to gear up again for litigation as a practical matter. Indeed, the Ad Hoc Asbestos Committee apparently wishes for *more* time. See Hearing Transcript, October 23, 2007, at 66:16-21 ("Ms. Hartwick: . . . . the Debtors have now told us that the statute of limitations will be tolled only to 60 days after the Effective Date . . . . We do believe that's too short of a period, we think we need more than 60 days."). To the extent that the Debtors and their various Asbestos Personal Injury Claimants cannot come to a resolution with respect to this question, however, the Debtors will excise the sentence from the Plan.

### B. The Asbestos Personal Injury Claims are Properly Classified Under the Plan

The Asbestos Objections further allege that the Debtors' classification of all Asbestos Personal Injury Claims in Class 3 under the Plan violates section 1122 of the

Bankruptcy Code.[16]  See Ad Hoc Asbestos Objection, at ¶¶ 28-35; Valdez Objection, at pp. 2-3.

The Asbestos Objections' utter lack of citation in support of this objection is unsurprising, as it is

plainly contrary to prevailing law in this and other jurisdictions and the facts of these cases.

Indeed, because the Debtors' basis for separately classifying all Asbestos Personal Injury Claims

in Class 3 is reasonable, the Plan fully complies with section 1122 of the Bankruptcy Code and

any objection on this basis should be overruled.

       Plan proponents may separately classify claims "as long as the debtor has a

reasonable basis for the separate classification."  In re WorldCom, Inc., No. 02-13533 (AJG),

2003 WL 23861928, at *47 (Bankr. S.D.N.Y. Oct. 31, 2003).  Courts in the Southern District of

New York and elsewhere have routinely blessed the discrete classification of asbestos personal

injury claims as reasonable.  See, e.g., In re Armstrong World Indus., Inc., 348 B.R. 136, 159-60

(D. Del. 2006) (holding that "it is appropriate to classify Asbestos Personal Injury Claims . . . in

a separate class from Unsecured Claims.  Because all Asbestos Personal Injury Claims . . . relate,

directly or indirectly, to AWI's liability for asbestos-related personal injury and wrongful death

claims . . ., a reasonable basis exists for the classification of the Asbestos Personal Injury Claims

together in a single class.");  UNARCO Bloomington Factory Workers v. UNR Indus., Inc.,

124 B.R. 268, 271 (N.D. Ill. 1990) (observing without comment that asbestos personal injury

claimants had been discretely classified under plan); In re Quigley Co., No. 04-15739 (SMB),

2007 WL 3077310, at *4 (Bankr. S.D.N.Y. Oct. 23, 2007) (approving the separate classification

of asbestos personal injury claimants); In re Kaiser Aluminum Corp., No. 02-10429 (JKF),

2006 WL 616243, at *6 (Bankr. D. Del. Feb. 6, 2006) (approving of classification of asbestos

---

[16]      Section 1122(a) of the Bankruptcy Code requires that "a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class."  11 U.S.C. § 1122.

personal injury claimants separate from other unsecured claims and other personal injury tort claims).

The fact that certain of the Asbestos Personal Injury Claims have been liquidated while others remain unliquidated — or that some settling Asbestos Personal Injury Claimants may look to escrowed settlement funds for payment while other Asbestos Personal Injury Claims may not — does not mandate separate classification of those Claims.  See, e.g., Quigley, 2007 WL 3077310, at *4 (emphasizing that it is the nature of the legal rights underlying claims, rather than the specific assets to which the holders of such claims may look, that is the relevant inquiry with respect to classification; approving of the classification of settled and unliquidated asbestos personal injury claims in the same class where "[a]ll of the PI Claimants have the same legal rights against Quigley's estate; they are unsecured creditors."); In re Babcock & Wilcox Co., No. 00-10992, 2004 WL 4945985, at *4 (Bankr. E.D. La. Nov. 9, 2004), vacated, No. Civ.A. 05-232, 2005 WL 4982364 (E.D. La. Dec. 28, 2005) (describing previous, unvacated order of bankruptcy court denying objection to classification of settled and unliquidated asbestos personal injury claims together where, among other things, "[b]oth the settled claims and the unliquidated personal injury and wrongful death claims are unsecured claims with common priority and rights against the estate [and] both are based on injuries or death claims stemming from alleged asbestos exposure . . . .").

Accordingly, the Debtors' separate classification of Asbestos Personal Injury Claims in Class 3 fully complies with section 1122(a) of the Bankruptcy Code, and the Asbestos Objections should be overruled on this basis.

### C. The Plan Provides Identical Treatment to All Asbestos Personal Injury Claims

The Ad Hoc Asbestos Objection further alleges that, "[b]ecause the holders of unliquidated asbestos personal injury claims (and perhaps the holders of asbestos personal injury claims liquidated prepetition) will receive less favorable treatment than the holders of asbestos personal injury claims that were liquidated pursuant to settlement agreement[s] that were approved by the Court, the Plan clearly violates 11 U.S.C. §§ 1123(a)(4) and 1129(a)(1)." See Ad Hoc Asbestos Objection, at 41.[17]  Because (1) the Plan inarguably provides all Asbestos Personal Injury Claims with precisely the same treatment — Reinstatement — and (2) the settling Asbestos Personal Injury Claimants have agreed to *less*, not more, favorable treatment, this objection should be overruled.

Casting the Debtors' attempts to follow through on their established commitments to Asbestos Personal Injury Claimants as discrimination fundamentally misrepresents the intention of the Plan.  The Debtors' motivation is plainly to pay all valid and liquidated Asbestos Personal Injury Claims (whether settled or litigated to judgment) *in full*.  The Debtors' assumption of all prepetition asbestos-related settlement agreements (as described above) and their establishment of an escrow related to certain postpetition asbestos-related settlement

---

[17]  Again, the Ad Hoc Committee of Asbestos Personal Injury Claimants provides no relevant citation to support its objection.  Instead, the Ad Hoc Asbestos Objection's citation to ACC Bondholder Group v. Adelphia Comm. Corp. (In re Adelphia Comm. Corp.), 361 B.R. 337, 364 (S.D.N.Y. 2007), represents a flagrant misrepresentation of the facts of that case.  The Ad Hoc Asbestos Objection states that, in Adelphia, the District Court for the Southern District of New York found that "claimants had demonstrated a substantial possibility of success on their claim that the plan unfairly discriminates in violation of Section 1123(a)(4) of the Bankruptcy Code *by providing a distribution of certain benefits to some claimants but not others within the same class.*"  Ad Hoc Asbestos Objection, at ¶ 41 (emphasis added).  The Adelphia court did no such thing; indeed, the question of "certain vs. uncertain" benefits never arises in Adelphia's discussion of section 1123(a)(4) of the Bankruptcy Code.  Rather, in Adelphia, the court found that a claim that a plan that granted releases only to those members of a voting class that accepted the plan, while denying such releases to creditors that rejected the plan, violated section 1123(a)(4) of the Bankruptcy Code had a substantial possibility of success.  Adelphia, 361 B.R. at 364.  The citation thus fails to support the Ad Hoc Asbestos Objection in the slightest regard.

agreements only demonstrate this point. Moreover, upon the liquidation of any other Asbestos Personal Injury Claim, it will be similarly paid in full.

This similar treatment — i.e., a commitment to payment in full of all valid and liquidated Asbestos Personal Injury Claims — demonstrates the propriety of the Debtors' proposed classification. It simply is not true that Asbestos Personal Injury Claimants will receive unequal treatment under the Plan, which could not be more explicit in Reinstating Asbestos Personal Injury Claims whatever their present rights against the Debtors might be. Section II.B.6 of the Plan clearly provides that Asbestos Personal Injury Claims will be Reinstated under section 1124 of the Bankruptcy Code such that the legal, equitable and contractual rights of such claimants will be unaltered. Plan §§ I.A.164, II.B.6. The inconvenient (and, for the purposes of this objection, dispositive) fact that the Ad Hoc Asbestos Objection wishes to elude is that within such claimant rights is the right to settle their claims — either now or after Confirmation — for whatever consideration they are willing to accept.

Indeed, the ability of debtors to settle classified claims without thereby violating section 1123(a)(4) of the Bankruptcy Code is manifest in the statute itself. Section 1123(a)(4) of the Bankruptcy Code requires a plan to "provide the same treatment for each claim or interest of a particular class, unless the holder of a particular claim or interest agrees to a less favorable treatment of such particular claim or interest." 11 U.S.C. § 1123(a)(4). The Ad Hoc Asbestos Objection labors to characterize the settling Asbestos Personal Injury Claimants as the recipients of "favored" and "preferential" treatment (see Ad Hoc Asbestos Objection, at ¶¶ 38-39), thereby turning the notion of "settlement" completely on its head. This faulty premise should be summarily rejected. As the Quigley court observed, "[a]greeing to settle, instead of litigating a claim, would permit a claimant to be treated differently, such as giving up more valuable

consideration, in exchange for the settlement offer. *This treatment is allowed under § 1123(a)(4)*." Quigley, 2007 WL 3077310, at *6 (citing In re Dow Corning Corp., 255 B.R. 445, 497 (E.D. Mich. 2000), aff'd in relevant part and remanded in part, 280 F.3d 648 (6th Cir. 2002)) (emphasis added).  By forgoing the right to litigate their Asbestos Personal Injury Claims against the Debtors (which identical right remains with the unliquidated Asbestos Personal Injury Claims), the settling Asbestos Personal Injury Claimants have agreed to *less* favorable treatment under the Plan, not more, which treatment is expressly contemplated by section 1123(a)(4) of the Bankruptcy Code.  Accordingly, this aspect of the Ad Hoc Asbestos Objection is without foundation and should be overruled.

      **D.**      **The Debtors are Not Obliged to Comply With the Requirements of Section 524(g) of the Bankruptcy Code**

      Each of the Asbestos Objections alleges that "the Plan should not be confirmed because it attempts to treat present and future asbestos claims and demands without following the procedures of 11 U.S.C. § 524(g), thereby violating the mandate of 11 U.S.C. [§] 1129(a)(1) that the Plan comply with the applicable provisions of the Bankruptcy Code."  Ad Hoc Asbestos Objection, at ¶ 43; see also Valdez Objection, at p.4.  This objection is wholly without foundation.  It is well established that "simply because asbestos is involved . . . does not mean that a plan proponent's only recourse is to § 524(g)."  In re Congoleum Corp., 362 B.R. 198, 202 (Bankr. D.N.J. 2007) (citing In re G-I Holdings, Inc., 323 B.R. 583 (Bankr. D.N.J. 2005) (refusing to mandate the imposition of a § 524(g) trust when debtor believed it could reorganize without it)).  Accordingly, the Asbestos Objections' allegations that the Debtors are obliged to comply with the requirements of section 524(g) of the Bankruptcy Code where the Plan does not seek the protection of the injunction provided under that section should be overruled.

E.     **The Remainder of the Asbestos Objections Should**
       **Be Overruled for the Reasons Already Set Forth Above**

The Asbestos Objections further allege that (1) the Plan has not been proposed in good faith within the meaning of section 1129(a)(3) of the Bankruptcy Code, (2) the Plan does not satisfy the "best interests of creditors" test set forth at section 1129(a)(7) of the Bankruptcy Code, (3) the Plan does not satisfy section 1129(a)(8) of the Bankruptcy Code because Class 3 is allegedly an impaired, non-accepting Class, (4) the Plan is not feasible within the meaning of section 1129(a)(11) of the Bankruptcy Code because of the Debtors' asbestos liabilities and (5) the Plan cannot satisfy section 1129(b)(2)(B) of the Bankruptcy Code with respect to Class 3. See Ad Hoc Asbestos Objection, at ¶¶ 45-50; Valdez Objection, at pp. 7-10.

The reasons why the Debtors satisfy each of these confirmation standards (with the exception of section 1129(a)(8) of the Bankruptcy Code) are set forth in detail in the Confirmation Memorandum, and the various objections set forth above should be denied on the bases set forth therein.  Moreover, the objections summarized at clauses (2), (3) and (5) of the foregoing paragraph depend entirely upon the fatally flawed assumption that the Asbestos Personal Injury Claims are impaired.  As demonstrated at length at paragraphs 49, 59-63 of the Consolidated Reply, because the only alteration wrought by the Plan with respect to Asbestos Personal Injury Claims is an improvement in the fiscal health of the allegedly liable entities, Asbestos Personal Injury Claims are unimpaired by the Plan.  Therefore, these ancillary objections must necessarily fail.  The objection summarized at clause (1) of the preceding paragraph (i.e., that the Plan is not proposed in good faith) depends entirely on the proposition that the Debtors' settlement of certain Asbestos Personal Injury Claims constitutes "preferential treatment" of those settled claims.  For the reasons set forth in Section I.C above, this proposition is demonstrably false (i.e., the settling Asbestos Personal Injury Claims are *compromised*, not

enhanced).  Accordingly, this objection should be overruled.  Finally, the objection summarized at clause (4) in the foregoing paragraph (i.e., that the plan is infeasible because the Reorganized Debtors will not be able to satisfy their Reinstated Asbestos Personal Injury Claims) simply restates the objection addressed at section I.A above and fails for the reasons stated therein (and as will be further demonstrated at the Confirmation Hearing).[18]

Accordingly, for the reasons set forth above, the Asbestos Objections should be overruled in their entirety.

---

[18]    Moreover, the Valdez Objection ignores the fact that, as far as Asbestos Personal Injury Claimants are concerned, the Debtors' post-Effective Date structure would be irrelevant to the issue of feasibility because the present value of their asbestos liabilities will be precisely the same regardless of whether those liabilities are obligations of Old Dana Holdco, LLC or New Dana Holdco and will have to be included in the feasibility calculations regardless of where the liabilities lie.

## <u>CONCLUSION</u>

For all of the foregoing reasons, the Debtors submit that the Asbestos Objections to Confirmation should be overruled, and the Plan should be approved and confirmed by the Court.

Dated: December 6, 2007

Respectfully submitted,

  s/Corinne Ball
Corinne Ball (CB 8203)
Richard H. Engman (RE 7861)
JONES DAY
222 East 41st Street
New York, New York  10017
Telephone:  (212) 326-3939
Facsimile:  (212) 755-7306

Heather Lennox (HL 3046)
Carl E. Black (CB 4803)
Ryan T. Routh (RR 1994)
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio  44114
Telephone:  (216) 586-3939
Facsimile:  (216) 579-0212

Jeffrey B. Ellman (JE 5638)
JONES DAY
1420 Peachtree Street, N.E.
Suite 800
Atlanta, Georgia  30309-3053
Telephone:  (404) 521-3939
Facsimile:  (404) 581-8330

ATTORNEYS FOR DEBTORS
AND DEBTORS IN POSSESSION