JONES DAY
222 East 41st Street
New York, New York 10017
Telephone: (212) 326-3939
Facsimile: (212) 755-7306
Corinne Ball (CB 8203)
Richard H. Engman (RE 7861)

JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio 44114
Telephone: (216) 586-3939
Facsimile: (216) 579-0212
Heather Lennox (HL 3046)
Carl E. Black (CB 4803)
Ryan T. Routh (RR 1994)

Attorneys for Debtors
and Debtors in Possession

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

```
------------------------------------------------------------x
                                    :
In re                               :   Chapter 11
                                    :
Dana Corporation, et al.,           :   Case No. 06-10354 (BRL)
                                    :
                   Debtors.         :   (Jointly Administered)
                                    :
------------------------------------------------------------x
```

## DECLARATION OF WILLIAM R. HANLON

William R. Hanlon declares and states:

1.      I am over eighteen years of age and competent to testify on the matters set forth in this declaration.  I have personal knowledge of the facts set forth in this declaration.

2.      I have been practicing law since 1980.  I am licensed to practice law in the District of Columbia.  I am a partner at the law firm of Goodwin Procter LLP, and from 1987 to 2004 was a partner with Shea & Gardner, which combined with Goodwin Procter in 2004.  A

substantial portion of my practice focuses on issues arising from the defense of toxic tort and product liability litigation.

3.      I have been involved in asbestos-related personal injury litigation since 1980.

4.      Since 1988, I have represented the Center For Claims Resolution, Inc. ("CCR") in connection with Shea & Gardner's role as Special Counsel to the CCR. The CCR was a corporation that served as exclusive agent for defending, settling, and insurance-billing for approximately 20 producers or distributors of asbestos-containing products. Dana was a CCR member since the CCR's inception in 1988. My work for the CCR has made me very familiar with the nature and extent of asbestos-related claims against Dana and the CCR's other members, as well as other companies outside the CCR, with the course of and changes to asbestos litigation across the country over the past 20 years, and with data issues involving asbestos-related lawsuits and other claims.

5.      In addition, starting in 2002, I have represented Dana Corporation ("Dana") as a member of its national defense team.

6.      On March 3, 2006, Dana filed voluntary petitions under Chapter 11 of the Bankruptcy Code. An immediate effect of the filing of the Chapter 11 Cases was the imposition of the automatic stay under section 362 of the Bankruptcy Code, which, among other things, effectively stayed all of Dana's asbestos personal injury litigation. On October 23, 2007, the Bankruptcy Court approved Dana's Disclosure Statement, which explains that under Dana's proposed Plan all of the asbestos personal injury claims pending against Dana will be reinstated and passed through the Chapter 11 Cases unimpaired.

GOODWIN | PROCTER

7.     In anticipation of the proposed pass through of Dana's asbestos personal injury claims, I was asked to work with Navigant Consulting, Inc. (which provides data services to Dana) and Dana's network of defense counsel to update Dana's asbestos claim database to take into account events in the tort system during the period since Dana's chapter 11 filing on March 3, 2006 – events that had not been reflected in the database due to the cessation of litigation effected by the automatic stay.

8.     Attached is a copy of my November 20, 2007 memorandum summarizing my work to update Dana's asbestos claim database in order to reflect accurately the current status of Dana's asbestos claims.  The contents of my memorandum are true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on December 5, 2007

William R. Hanlon

GOODWIN | PROCTER

William R. Hanlon
202.346.4239
whanlon@goodwinprocter.com

Goodwin Procter LLP
Counselors at Law
901 New York Avenue NW
Washington, DC 20001
T: 202.346.4000
F: 202.346.4444

# MEMORANDUM

**To**  Dana Corporation File

**From**  William R. Hanlon

**Re**  Status Report:  Database Updates

**Date**  November 20, 2007

On March 3, 2006, Dana Corporation filed voluntary petitions under Chapter 11 of the Bankruptcy Code.  An immediate effect of the filing of the Chapter 11 Cases was the imposition of the automatic stay under section 362 of the Bankruptcy Code, which, among other things, effectively stayed all of Dana's asbestos personal injury litigation.  On October 23, 2007, the Bankruptcy Court approved Dana's Disclosure Statement, which explains that under Dana's proposed Plan all of the asbestos personal injury claims pending against Dana will be reinstated and passed through the Chapter 11 Cases unimpaired.

In anticipation of the proposed pass through of the asbestos personal injury claims, we have commenced working with PACE and Dana's network of defense counsel to update Dana's asbestos claim database, to reflect accurately the current status of Dana's asbestos claims. Initially, we have focused our efforts on those states that have been the subject of significant activity since Dana's bankruptcy petition, including those jurisdictions that have adopted legislative or judicially-imposed limits on the pursuit of claims by unimpaired claimants, or the more aggressive enforcement of *forum non conveniens* and joinder rules and other limits on the ability of asbestos-plaintiffs to pursue such claims.  To date, these efforts have resulted in

GOODWIN | PROCTER

numerous updates, most notably the update of some 17,655 claim dismissals in Mississippi.

Moreover, in addition to confirming the previously determined inactive status of approximately

16,000 claims on New York City's Deferred Docket, these efforts have determined that some

additional 80,000 claims pending in Florida, Georgia, Illinois, Maryland, Ohio, Texas,

Washington, and the Federal MDL-875 should likewise be reclassified as inactive claims. As a

result of these updates, Dana's current claims database indicates that Dana has 132,060 pending

claims, and that of these 96,813 are inactive claims, leaving 35,247 active, potentially

compensable claims. To date, we have made the following determinations in the following

states:

Florida: Florida passed the Asbestos & Silica Compensation Fairness Act on July 1,

2005. That Act requires asbestos plaintiffs to make a prima facie showing of asbestos-related

impairment in all cases except those involving (a) mesothelioma or (b) nonsmokers suffering

from lung, larynx, pharynx, or esophageal cancer. For cases filed prior to July 1, 2005, this

requirement must be met thirty days before the court sets the case for trial. For cases filed on or

after July 1, 2005, this requirement must be met at the time of filing.

According to Dana's Florida counsel, as a result of the Act, virtually all of 2,845 of the

non-malignant and unknown disease claims (as well as some undetermined number of the

malignant disease claims) pending against Dana in various Florida courts, will be dismissed or

effectively assigned to an inactive docket. Based on this advice of counsel, Dana has determined

to categorize these 2,845 pending non-malignant and unknown disease claims as "inactive,"

pending notification that any such claims have made the required evidentiary showing necessary to obtain a trial date.

Georgia: Effective April 12, 2005, Georgia enacted the Georgia Asbestos & Silica Tort Reform Statute, O.C.G.A. § 51-41-1 et seq. (the "Act"). Essentially, that Act requires a plaintiff to produce prima facie evidence of physical impairment, and the failure to produce such evidence will result in the dismissal of plaintiff's claim, without prejudice, upon a motion filed by any party to the action.

On November 20, 2006, the Georgia Supreme Court issued a ruling on the Act's constitutionality, and held that the "substantial contributing factor" evidentiary requirement imposed by the Act marked a substantive change in Georgia law that cannot be applied retroactively. According to Dana's Georgia counsel, the Court's ruling should only affect cases pending on April 12, 2005, which now can be set on a trial calendar without submission of any proof of impairment. Cases filed after that date, however, should remain subject to the Act's evidentiary requirements, and will be subject to pending and future motions to dismiss for failure to comply with the Act's requirements. PACE reports a total of only 79 non-malignant and unknown claims filed against Dana in Georgia state courts since April 12, 2005. Based on this advice of counsel and subject to final disposition of any pending and future motions to dismiss, Dana has determined to categorize such claims as "inactive," pending notification that any such claim has in fact complied with the Act's evidentiary requirements.

Illinois: According to Dana's Illinois counsel, inactive dockets were established for non-malignant and unknown disease claims in Cook County in 2001, in Madison County in 2004,

3

GOODWIN | PROCTER

and in St. Clair County in 2005.  Under these inactive dockets, the non-malignant and unknown disease claims pending against Dana in each of these jurisdictions – Cook County (148 claims); Madison County (262 claims); and St. Clair (23 claims) – have been inactive since the date such dockets were established, or for claims filed after such dockets were established, since the date such claims were filed.

Based on the advice of counsel, Dana has determined to categorize these claims as "inactive," pending notification that any such claims have been removed from such inactive dockets.

<u>Maryland</u>:  Baltimore City has had an inactive docket since 1992.  The inactive docket order requires that all asbestos personal injury cases filed in Baltimore City be placed on an inactive docket.  To be removed from the inactive docket, a case must meet certain eligibility criteria.  According to Maryland counsel, since this inactive docket was established in 1992, only a minimal number of non-malignant and unknown disease claims have been removed from the inactive docket and scheduled for trial, and all 5,231 non-malignant and unknown disease claims presently pending on this inactive docket are expected to remain inactive for the foreseeable future, absent a change in law or the procedures affecting them.  Accordingly, Dana has determined to categorize such claims as inactive, pending notification that any such claims have been removed from this inactive docket.

<u>Massachusetts</u>:  In Massachusetts, the Middlesex County Court established a pleural registry and an inactive docket back in 1984.  According to Massachusetts counsel, all non-malignant and unknown disease claims filed in Middlesex County are placed on the pleural

4

LIBW/1662549.1

registry or the inactive docket, and will only be removed from that registry or docket and scheduled for trial if a claim in fact meets some minimum medical criteria for physical impairment. To date, only a minimal number of claims listed on the pleural registry or the inactive docket have in fact been removed and scheduled for trial. Based on the advice of counsel, Dana has determined to categorize all 757 non-malignant and unknown disease claims pending against Dana in the Middlesex County Court and listed on that Court's inactive docket as "inactive," pending notification that any such case has been ordered removed from that docket.

<u>Mississippi</u>: In Mississippi, the state Supreme Court began in 2004 to interpret joinder rules more strictly, requiring all plaintiffs to show that their claims belonged in the state, and the legislature enacted a tort reform act under which each plaintiff must independently satisfy the venue provisions, thus preventing thousands of out-of-state claimants from tagging onto a single in-state plaintiffs case. As a result of these changes, Mississippi judges since 2004 have severed and dismissed thousands of out-of-state asbestos claims.

According to Dana's local counsel for Mississippi, because of the mass volume of these dismissals and because the Mississippi state courts do not have electronic dockets, there have been and continue to be huge delays in the transmittal of these case dismissals from the various courts to Mississippi counsel. In fact, Mississippi counsel reported that they are still receiving orders and notices regarding cases dismissed as to all defendants back as early as 2005. As a result, the substantial majority of these case dismissals were not reported to or reflected in Dana's claim database at the time it filed its bankruptcy petition on March 3, 2006.

LIBW/1662549.1

At our request, Dana's Mississippi counsel recently provided to PACE updated dismissed and pending claims lists for Dana, and PACE has reconciled those updated lists to Dana's current claims database. Pursuant to that update and reconciliation, 17,655 claims previously listed as pending in Mississippi state courts have been reclassified as dismissed. In addition, another 1,463 claims previously listed as pending in Mississippi state courts have been reclassified as removed to federal court and transferred to MDL-875, the federal asbestos-litigation docket. As a result, Dana's active pending claims count in Mississippi has been reduced by a total of 19,118 claims.

New York: On December 19, 2002, Judge Helen Freedman amended the case management procedures governing all asbestos-related personal injury actions pending in New York County, to establish a "Deferred Docket," for all actions brought by or on behalf of claimants who do not meet certain minimum criteria for activation. As of the date of that order, any case not then assigned to a trial group or cluster was "deemed to be on the Deferred Docket," unless by April 1, 2003, the parties stipulated the allegedly injured party met the "minimum criteria for activation," or by April 15, 2003, the plaintiffs moved for leave to amend the complaint to allege that specifically that the injured party satisfies the minimum criteria for activation and annexed the requisite documentation to the amended complaint, and the Court granted leave to amend the complaint. Any cases commenced after the date of that order not alleging and attaching the requisite documentation for activation also have been deemed to be on the Deferred Docket. To date, only a minimal number of the claims assigned to this Deferred Docket have been transferred to the Active Docket. Based on the advice of counsel, Dana has determined to categorize the 16,087 non-malignant and unknown disease class pending on this

6

Deferred Docket as inactive, pending notification that any such claims have been moved to the Active Docket or a change in the law or procedures governing such claims.

Ohio: Ohio passed tort reform legislation that became effective in 2004. According to Dana's Ohio counsel, that legislation has effectively required all pending and subsequently filed cases to meet established minimal medical criteria in order to obtain a trial date. To date, Dana has yet to receive notification that any of the 22,314 non-malignant and unknown disease claims pending against Dana in Ohio's state courts have met such criteria. Based on this advice, Dana has determined to categorize these 22,314 claims as "inactive," pending notification that any such claims do in fact meet the requisite criteria.

Texas: In 2005, the Texas legislature enacted legislation creating Civil Procedure and Remedies Code Chapter 90, which imposed additional requirements on cases filed after September 1, 2005, in order for them to proceed in the Texas court system. In addition, the new legislation permitted the transfer of cases to the Texas Multi-District Litigation court that were previously ineligible for transfer, if plaintiff's counsel was unable to provide a medical report complying with CPRC 90's requirements. According to Dana's Texas counsel, the impact of this tort reform has now become apparent, as the presiding judge for the MDL court has formalized an inactive docket in the MDL for cases not having medical reports complying with the requirements of CRPC 90. As a result, according to Texas counsel, all of the 25,738 non-malignant and unknown disease Texas state court claims pending against Dana have effectively been put in a "deep freeze," with only very limited activity permitted in the case until the requisite medical report is produced.

Based on this advice, Dana has determined to categorize such claims as "inactive," pending notification that any such claims are in fact removed from this inactive docket.

Washington:  In 2002, the King County Supreme Court established an inactive docket for all non-malignant and unknown disease claims.  Under the order governing that inactive docket, any such claims could be removed from the inactive docket and scheduled for trial only upon an evidentiary showing that the claim met certain minimum evidence of physical impairment. PACE's Washington database reports a total of 62 non-malignant and unknown disease claims as of Dana's petition date.  Based on Dana's discussions with Washington counsel, Dana has determined to categorize such claims as "inactive," pending notification that any such claims have been removed from the inactive docket and scheduled for trial.

Federal-MDL 875:  Since 1991, all asbestos personal injury claims filed in or removed from a state court to a federal court are subject to transfer by the federal multidistrict litigation panel to MDL-875 in the Eastern District of Pennsylvania.  Under long-established case management procedures in MDL-875, all pending non-malignant and unknown disease claims are effectively treated as inactive claims, pending some minimum showing of asbestos-related physical impairment.  To date, Dana has incurred no indemnity costs and virtually no defense costs for such claims once they have been transferred to MDL-875.

Based on this history, Dana has determined to categorize all non-malignant and unknown disease claims that have been filed in or removed to a federal court, and not the subject of a pending duplicate state court lawsuit, as "inactive," pending notification that any such claim has been transferred by the MDL Court back to the transferor district court for trial.

At present, Dana's data reports a total of 23,259 claims pending in MDL-875. Of these 23,259 total claims, some 6,658 initially were filed and removed from state courts in Ohio; some 520 were initially filed and removed to federal court in Texas, and some 3,240 initially were filed and removed from state courts in Mississippi.

W.R.H.