JONES DAY
222 East 41st Street
New York, New York 10017
Telephone: (212) 326-3939
Facsimile: (212) 755-7306
Corinne Ball (CB 8203)
Richard H. Engman (RE 7861)

JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio 44114
Telephone: (216) 586-3939
Facsimile: (216) 579-0212
Heather Lennox (HL 3046)
Carl E. Black (CB 4803)
Ryan T. Routh (RR 1994)

JONES DAY
1420 Peachtree Street, N.E.
Suite 800
Atlanta, Georgia 30309-3053
Telephone: (404) 521-3939
Facsimile: (404) 581-8330
Jeffrey B. Ellman (JE 5638)

Attorneys for Debtors
and Debtors in Possession

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

```
------------------------------------------------------------x
                                    :
In re                               :   Chapter 11
                                    :
Dana Corporation, et al.,           :   Case No. 06-10354 (BRL)
                                    :
                 Debtors.           :   (Jointly Administered)
                                    :
------------------------------------------------------------x
```

## NOTICE OF FILING OF CERTAIN AMENDED
## EXHIBITS TO THE THIRD AMENDED JOINT PLAN OF
## REORGANIZATION OF DEBTORS AND DEBTORS IN POSSESSION

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

1.   On October 23, 2007, the above-captioned debtors and debtors in possession (collectively, the "Debtors") filed the Third Amended Joint Plan of Reorganization of Debtors and Debtors in Possession (Docket No. 6671) (as it may be amended or modified, the "Plan").

2.   In connection with the Plan, on December 5, 2007, the Debtors filed the Notice of Filing of Certain Exhibits to Third Amended Joint Plan of Reorganization (Docket No. 7362) (the "December 5th Notice of Filing"), which included, among other things: (a) Exhibit V.C.1.a to the Plan (Certificate of Incorporation (or Comparable Constituent Documents) of New Dana Holdco, including New Dana Holdco's Certificate of Designations and Form Certificates of Incorporation (or Comparable Constituent Documents) for the Other Reorganized Debtors) (the "Certificates of Incorporation Exhibit"); and (b) Exhibit V.C.1.b to the Plan: (Bylaws (or Comparable Constituent Documents) of New Dana Holdco and Form Bylaws (or Comparable Constituent Documents) for the Other Reorganized Debtors) (the "Bylaws Exhibit").  Attached at "Tab 1" to the Certificates of Incorporation Exhibit was the Certificate of Incorporation for Dana Holding Corporation.  Attached at "Tab 1" to the Bylaws Exhibit were the Bylaws of Dana Holding Corporation.

4.   Attached hereto Exhibit A is the amended Restated Certificate of Incorporation of Dana Holding Corporation (the "Certificate of Incorporation").  Attached hereto as Exhibit B is the amended Bylaws of Dana Holding Corporation (the "Amended Bylaws").

5.   Attached hereto collectively as Exhibit C are blacklined versions of the Certificate of Incorporation and the Bylaws showing the changes made to the prior versions of

each document attached to Certificates of Incorporation Exhibit and the Bylaws Exhibit,

respectively, since the filing of the December 5th Notice of Filing.

      6.     Copies of the document referenced herein may be obtained from the

Court's website http://www.ecf.nysb.uscourts.gov or, without charge, at the website of the

Debtors' claims and noticing agent at http://www.dana.bmcgroup.com

Dated: December 7, 2007
     New York, New York

Respectfully submitted,

s/ Corinne Ball
Corinne Ball (CB 8203)
Richard H. Engman (RE 7861)
JONES DAY
222 East 41st Street
New York, New York  10017
Telephone:  (212) 326-3939
Facsimile:  (212) 755-7306

Heather Lennox (HL 3046)
Carl E. Black (CB 4803)
Ryan T. Routh (RR 1994)
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio  44114
Telephone:  (216) 586-3939
Facsimile:  (216) 579-0212

Jeffrey B. Ellman (JE 5638)
JONES DAY
1420 Peachtree Street, N.E.
Suite 800
Atlanta, Georgia  30309-3053
Telephone:  (404) 521-3939
Facsimile:  (404) 581-8330

ATTORNEYS FOR DEBTORS AND
DEBTORS IN POSSESSION

**EXHIBIT A**

# RESTATED CERTIFICATE OF INCORPORATION

## OF

## DANA HOLDING CORPORATION

### ARTICLE I

The name of the corporation is Dana Holding Corporation (the "***Company***").

### ARTICLE II

The address of the Company's registered office in the State of Delaware is Corporation Trust Center, 1209 Orange Street, City of Wilmington, County of New Castle, Delaware 19801. The name of the Company's registered agent at such address is The Corporation Trust Company.

### ARTICLE III

The purpose of the Company is to engage in any lawful act or activity for which corporations may be organized under the General Corporation Law of the State of Delaware, as amended (the "***DGCL***").

### ARTICLE IV

Section 1. <u>Authorized Capital Stock</u>. The total number of shares of capital stock that the Company is authorized to issue is 500,000,000 shares, consisting of 450,000,000 shares of Common Stock, par value $0.01 per share ("***Common Stock***"), and 50,000,000 shares of Preferred Stock, par value $0.01 per share ("***Preferred Stock***"). Subject to the rights of the holders of any series of Preferred Stock, the number of authorized shares of the Common Stock or Preferred Stock may be increased or decreased (but not below the number of shares thereof then outstanding) by the affirmative vote of the holders of a majority of the voting power of outstanding Voting Stock entitled to vote thereon, irrespective of the provisions of Section 242(b)(2) of the DGCL (or any successor provision thereto), and no vote of the holders of the Common Stock or Preferred Stock voting separately as a class shall be required therefor.

Section 2. <u>Preferred Stock</u>. The Preferred Stock may be issued in one or more series. The Board of Directors of the Company (the "***Board***") is hereby authorized, by resolution or resolutions thereof, to issue the shares of Preferred Stock in such series and to fix from time to time before issuance the number of shares to be included in any such series and the designation, powers, preferences, and relative, participating, optional or other rights, if any, and the qualifications, limitations or restrictions thereof, of such series. The authority of the Board with respect to each such series will include, without limiting the generality of the foregoing, the determination of any or all of the following:

(a)     the number of shares of any series and the designation to distinguish the shares of such series from the shares of all other series;

(b)     the voting powers, if any, and whether such voting powers are full or limited in such series;

(c)     the redemption provisions, if any, applicable to such series, including the redemption price or prices to be paid;

(d)     whether dividends, if any, will be cumulative or noncumulative, the dividend rate of such series, and the dates, conditions and preferences of dividends on such series;

(e)     the rights of such series upon the voluntary or involuntary dissolution of, or upon any distribution of the assets of, the Company;

(f)     the provisions, if any, pursuant to which the shares of such series are convertible into, or exchangeable for, shares of any other class or classes or any other series of the same or any other class or classes of stock of the Company, at such price or prices or at such rate or rates of exchange and with such adjustments applicable thereto;

(g)     the right, if any, to subscribe for or to purchase any securities of the Company;

(h)     the provisions, if any, of a sinking fund applicable to such series; and

(i)     any other designations, powers, preferences and relative, participating, optional or other special rights, and qualifications, limitations or restrictions thereof;

all as may be determined from time to time by the Board and stated or expressed in the resolution or resolutions providing for the issuance of such Preferred Stock (collectively, a "*Preferred Stock Designation*").  Notwithstanding the foregoing, the Company shall be prohibited from issuing non-voting equity securities to the extent, and only to the extent, required by Section 1123(a)(6) of the United States Bankruptcy Reform Act of 1978, as codified in Title 11 of the United States Code, 11 U.S.C. Sections 101-1330, as in effect on the date hereof.

Section 3. <u>Common Stock</u>.  Subject to the rights, if any, of the holders of any series of Preferred Stock to vote as a class without any other vote, the holders of Common Stock will be entitled to one vote on each matter submitted to a vote at a meeting of stockholders for each share of Common Stock held of record by such holder as of the record date for such meeting. Except as may be provided in a Preferred Stock Designation, to the fullest extent permitted by law, holders of Common Stock, as such, shall have no voting power with respect to, and shall not be entitled to vote on, any amendment to this Certificate of Incorporation (including any Preferred Stock Designation) that relates solely to the terms of one or more outstanding series of Preferred Stock if the holders of such affected series are entitled, either separately or together with the holders of one or more other such series, to vote thereon pursuant to this Certificate of Incorporation (including any Preferred Stock Designation) or pursuant to the DGCL.

<u>ARTICLE V</u>

The name and mailing address of the sole incorporator of the Company is:

_____.

## ARTICLE VI

The Board may make, adopt, amend, and repeal the Bylaws of the Company (the "***Bylaws***").  Notwithstanding anything contained in this Certificate of Incorporation or the Bylaws to the contrary, Bylaws 3, 6, 8, 12, 13, 14, 15, 18, 19 and 37 may not be amended or repealed by the stockholders, and no provision inconsistent therewith may be adopted by the stockholders, without the affirmative vote of the holders of at least 66 2/3% of the voting power of the outstanding Voting Stock (as defined below), voting together as a single class.  For the purposes of this Certificate of Incorporation, "***Voting Stock***" means capital stock of the Company of any class or series entitled to vote generally in the election of directors of the Company (each, a "***Director***").  Notwithstanding anything contained in this Certificate of Incorporation to the contrary, the affirmative vote of the holders of at least 66 2/3% of the Voting Stock, voting together as a single class, is required to amend or repeal, or to adopt any provision inconsistent with, this Article VI.

## ARTICLE VII

Section 1.  <u>Stockholder Action by Written Consent</u>.  Any action required or permitted to be taken by the stockholders of the Company must be effected at a duly called annual or special meeting of stockholders of the Company and may not be effected by any consent in writing of such stockholders; <u>provided</u>, <u>however</u>, that any action required or permitted to be taken, to the extent expressly permitted by any Preferred Stock Designation, by the holders of such series of Preferred Stock, voting separately as a series or separately as a class with one or more other such series, may be taken without a meeting, without prior notice and without a vote, if a consent or consents in writing, setting forth the action so taken, shall be signed by the holders of outstanding shares of the relevant class or series having not less than the minimum number of votes that would be necessary to authorize or take such action at a meeting at which all shares of Preferred Stock entitled to vote thereon were present and voted and shall be delivered to the Company by delivery to its registered office in the State of Delaware, its principal place of business, or an officer or agent of the corporation having custody of the book in which minutes of proceedings of stockholders are recorded.  Delivery made to the Company's registered office shall be by hand or by certified or registered mail, return receipt requested.  Prompt notice of the taking of the corporate action without a meeting by less than unanimous written consent shall, to the extent required by law, be given to those stockholders who have not consented in writing and who, if the action had been taken at a meeting, would have been entitled to notice of the meeting if the record date for such meeting had been the date that written consents signed by a sufficient number of holders to take the action were delivered to the Company.

Section 2.  <u>Business to be Conducted at Stockholder Meetings</u>.  At any annual meeting or special meeting of stockholders of the Company, only such business will be conducted or considered as has been brought before such meeting in the manner provided in the Bylaws.

Section 3.  <u>Centerbridge Shareholders Agreement</u>.  (a)  For so long as the Shareholders Agreement (the "Shareholders Agreement"), dated as of [Insert Effective Date], by and among

the Company, Centerbridge Capital Partners, L.P. ("Centerbridge"), a Delaware limited partnership, Centerbridge Capital Partners Strategic, L.P., a Delaware limited partnership ("Strategic"), and Centerbridge Capital Partners SBS, L.P. a Delaware limited partnership ("SBS" and together with Centerbridge and Strategic, "Purchaser") (as it may be amended from time to time as permitted hereunder, the "Shareholders Agreement"), is in effect, the affirmative vote of the holders of not less than a majority of the votes cast at a meeting of stockholders of the Company held for the purpose of voting thereon where a quorum is present but excluding for this purpose Voting Securities (as defined in the Shareholders Agreement) that are held by a Purchaser or any of their respective Affiliates (as defined in the Shareholders Agreement) will be required to amend or repeal, or to add any provision to the Shareholders Agreement that is inconsistent with, (i) Section 4.2 or the proviso to Section 4.1, of the Shareholders Agreement or (ii) this Section 3(a) or Section 3(d) of this <u>Article VII</u>.

(b)  For so long as the Shareholders Agreement is in effect, the affirmative vote of the holders of not less than a majority of the votes cast at a meeting of holders of Series B Preferred Stock held for the purpose of voting thereon where a quorum is present will be required to amend or repeal, or to add any provision to the Shareholders Agreement that is inconsistent with, (i) Article VI of the Shareholders Agreement (Preemptive Rights), unless such amendment, repeal or addition would affect only the rights of Series A Preferred under such Article VI, in which case no vote pursuant to this clause (b) will be required, or (ii) this Section 3(b) of this <u>Article VII</u>.

(c)  For so long as the Shareholders Agreement is in effect, the affirmative vote of the holders of not less than a majority of the votes cast at a meeting of holders of Series A Preferred Stock held for the purpose of voting thereon where a quorum is present will be required to amend or repeal, or to add any provision to the Shareholders Agreement that is inconsistent with, (i) Article VI of the Shareholders Agreement (Preemptive Rights), unless such amendment, repeal or addition would affect only the rights of Series B Preferred under such Article VI, in which case no vote pursuant to this clause (c) will be required, or (ii) this Section 3(c) of this <u>Article VII</u>.

(d) For so long as the Shareholders Agreement is in effect, the Shareholders Agreement may not be amended in any manner that is adverse to holders of Voting Stock other than the Purchaser and their Affiliates without the prior approval of a majority of the Directors who are not (i) Purchaser Designees (as defined in the Shareholders Agreement) or (ii) an employee of the Company, at a meeting of the Directors duly called and held for such purpose.

Section 4.  <u>Certain Amendments</u>.  Notwithstanding anything contained in this Certificate of Incorporation to the contrary, the affirmative vote of the holders of at least 66 2/3% of the voting power of the outstanding Voting Stock, voting together as a single class, will be required to amend or repeal, or adopt any provision inconsistent with, Section 1, 2 or 4 of this <u>Article VII</u>.

ARTICLE VIII

Section 1.  <u>Number, Election and Terms of Directors</u>.  Subject to the rights, if any, of the holders of any series of Preferred Stock to elect additional Directors under circumstances specified in a Preferred Stock Designation, including without limitation Section 6(c) of the

Certificate of Designations for the Series A Preferred Stock and the Series B Preferred Stock, the number of Directors comprising the Board will not be less than three nor more than 15 and will be fixed from time to time in the manner provided in the Bylaws. Directors will be elected at each annual meeting of stockholders, and each Director will hold office until the next annual meeting of stockholders and until such Director's successor has been duly elected and qualified or until such Director's earlier resignation, disqualification, removal or death. Election of Directors need not be by written ballot unless requested by the Chairman of the Board or by the holders of a majority of the Voting Stock present in person or represented by proxy at a meeting of the stockholders at which Directors are to be elected, or as otherwise provided in the Bylaws. If authorized by the Board, such requirement of written ballot shall be satisfied by a ballot submitted by electronic transmission, provided that any such electronic transmission must either set forth or be submitted with information from which it can be determined that the electronic transmission was authorized by the stockholder or proxy holder.

Section 2. <u>Nomination of Director Candidates</u>. Advance notice of stockholder nominations for the election of Directors must be given in the manner provided in the Bylaws.

Section 3. <u>Newly Created Directorships and Vacancies</u>. Subject to the rights, if any, of the holders of any series of Preferred Stock to elect additional Directors under circumstances specified in a Preferred Stock Designation, newly created directorships resulting from any increase in the authorized number of Directors and any vacancies on the Board resulting from resignation, disqualification, removal, death or other cause will be filled solely by the affirmative vote of a majority of the remaining Directors then in office, even though less than a quorum of the Board, or by a sole remaining Director. Any Director elected in accordance with the preceding sentence will hold office until such Director's successor has been duly elected and qualified, or until such Director's earlier resignation, disqualification, removal or death. No decrease in the number of Directors constituting the Board may shorten the term of any Director.

Section 4. <u>Removal</u>. Subject to the rights, if any, of the holders of any series of Preferred Stock to elect additional Directors under circumstances specified in a Preferred Stock Designation, any Director may be removed from office by the stockholders with or without cause and only in the manner provided in this <u>Article VIII</u>, <u>Section 4</u>. At any annual meeting or special meeting of the stockholders, the notice of which states that the removal of a Director or Directors is among the purposes of the meeting, the affirmative vote of the holders of at least 66 2/3% of the voting power of the outstanding Voting Stock, voting together as a single class, may remove such Director or Directors.

Section 5. <u>Amendment, Repeal, Etc</u>. Notwithstanding anything contained in this Certificate of Incorporation to the contrary, the affirmative vote of the holders of at least 66 2/3% of the voting power of the outstanding Voting Stock, voting together as a single class, is required to amend or repeal, or adopt any provision inconsistent with, this <u>Article VIII</u>.

ARTICLE IX

No Director will be personally liable to the Company or its stockholders for monetary damages for a breach of fiduciary duty as a Director, except to the extent such exemption from liability or limitation thereof is not permitted under the DGCL as the same exists or may

hereafter be amended. Any repeal or modification of this <u>Article IX</u> will not adversely affect any right or protection of a Director existing prior to such repeal or modification.

ARTICLE X

Section 1. <u>Right to Indemnification</u>. Each person who was or is a party or is threatened to be made a party to or is otherwise involved in any threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative or investigative (a "***Proceeding***") by reason of the fact that the person is or was a Director or an officer of the Company, or such person, whether or not a Director or officer of the Company, is or was serving at the request of the Company as a director or officer of any other corporation, partnership, joint venture, trust or other enterprise, including, without limitation, any subsidiary or affiliate of the Company (an "***Indemnitee***"), whether the basis of such Proceeding is alleged action in an official capacity as a director or officer or in any other capacity while serving as a director or officer, shall be indemnified and held harmless by the Company to the fullest extent permitted or required by the DGCL, as the same exists or may hereafter be amended, against all expenses (including attorneys' fees), judgments, fines, ERISA excise taxes or penalties and amounts paid in settlement actually and reasonably incurred by such Indemnitee in connection therewith; <u>provided</u>, <u>however</u>, that, except as provided in <u>Section 3</u> of this <u>Article X</u> with respect to Proceedings to enforce rights to indemnification, the Company shall indemnify any such Indemnitee in connection with a Proceeding (or part thereof) initiated by such Indemnitee only if such Proceeding (or part thereof) was authorized by the Board.

Section 2. <u>Right to Advancement of Expenses</u>. The right to indemnification conferred in <u>Section 1</u> of this <u>Article X</u> shall include the right to be paid by the Company the expenses (including, without limitation, attorneys' fees and expenses) incurred in defending any such Proceeding in advance of its final disposition (an "***Advancement of Expenses***"); <u>provided</u>, <u>however</u>, that, if the DGCL so requires, an Advancement of Expenses shall be made only upon delivery to the Company of an undertaking (an "***Undertaking***"), by or on behalf of such Indemnitee, to repay all amounts so advanced if it shall ultimately be determined by final judicial decision from which there is no further right to appeal (a "***Final Adjudication***") that such Indemnitee is not entitled to be indemnified for such expenses under this <u>Section 2</u> or otherwise. The rights to indemnification and to the Advancement of Expenses conferred in <u>Sections 1</u> and <u>2</u> of this <u>Article X</u> shall be contract rights and such rights shall continue as to an Indemnitee who has ceased to be a director or officer and shall inure to the benefit of the Indemnitee's heirs, executors and administrators.

Section 3. <u>Right of Indemnitee to Bring Suit</u>. If a claim under <u>Section 1</u> or <u>2</u> of this <u>Article X</u> is not paid in full by the Company within 60 calendar days after a written claim has been received by the Company, except in the case of a claim for an Advancement of Expenses, in which case the applicable period shall be 20 calendar days, the Indemnitee may at any time thereafter bring suit against the Company to recover the unpaid amount of the claim. If successful in whole or in part in any such suit, or in a suit brought by the Company to recover an Advancement of Expenses pursuant to the terms of an Undertaking, the Indemnitee shall be entitled to be paid also the expense of prosecuting or defending such suit to the fullest extent permitted by law. In (i) any suit brought by the Indemnitee to enforce a right to indemnification hereunder (but not in a suit brought by the Indemnitee to enforce a right to an Advancement of

Expenses) it shall be a defense that, and (ii) any suit brought by the Company to recover an Advancement of Expenses pursuant to the terms of an Undertaking, the Company shall be entitled to recover such expenses upon a Final Adjudication that, the Indemnitee has not met any applicable standard for indemnification set forth in the DGCL. Neither the failure of the Company (including the Board, a Board committee, independent legal counsel or stockholders) to have made a determination prior to the commencement of such suit that indemnification of the Indemnitee is proper in the circumstances because the Indemnitee has met the applicable standard of conduct set forth in the DGCL, nor an actual determination by the Company (including the Board, a Board committee, independent legal counsel or stockholders) that the Indemnitee has not met such applicable standard of conduct, shall create a presumption that the Indemnitee has not met the applicable standard of conduct or, in the case of such a suit brought by the Indemnitee, be a defense to such suit. In any suit brought by the Indemnitee to enforce a right to indemnification or to an Advancement of Expenses hereunder, or brought by the Company to recover an Advancement of Expenses pursuant to the terms of an Undertaking, the burden of proving that the Indemnitee is not entitled to be indemnified, or to such Advancement of Expenses, under this Article X or otherwise shall be on the Company.

Section 4. Non-Exclusivity of Rights. The rights to indemnification and to the Advancement of Expenses conferred in this Article X shall not be exclusive of any other right which any person may have or hereafter acquire under any statute, the Company's Certificate of Incorporation, Bylaws, any agreement, vote of stockholders or disinterested Directors or otherwise.

Section 5. Insurance. The Company may maintain insurance, at its expense, to protect itself and any person who is or was a Director, officer, employee or agent of the Company, or is or was serving at the request of the Company as a director, officer, employee or agent of another corporation, partnership, joint venture, trust or other enterprise against any liability asserted against such person and incurred by such person in any such capacity, or arising out of such person's status as such, whether or not the Company would have the power to indemnify such person against such liability under the DGCL.

Section 6. Indemnification of Employees and Agents of the Company. The Company may, to the extent authorized from time to time by the Board of Directors, grant rights to indemnification and to the Advancement of Expenses to any employee or agent of the Company to the fullest extent of the provisions of this Article X with respect to the indemnification and Advancement of Expenses of Directors and officers of the Company.

[Remainder of Page Intentionally Blank – Signature Page Follows]

IN WITNESS WHEREOF, the undersigned, being the sole incorporator of the Company named above, does hereby execute this Restated Certificate of Incorporation as of the ____ day of _____, 2007.

_____
[Name], Incorporator

**EXHIBIT B**

DANA HOLDING CORPORATION

BYLAWS

As Adopted and in
Effect on _____, 200_

# TABLE OF CONTENTS

Page

STOCKHOLDERS MEETINGS ............................................................................. 1

    1.    Time and Place of Meetings ............................................................ 1

    2.    Annual Meetings .............................................................................. 1

    3.    Special Meetings .............................................................................. 1

    4.    Notice of Meetings .......................................................................... 1

    5.    Inspectors ......................................................................................... 2

    6.    Quorum ............................................................................................. 2

    7.    Voting; Proxies ................................................................................ 2

    8.    Order of Business ............................................................................ 2

    9.    Record Dates .................................................................................... 4

    10.    List of Stockholders Entitled to Vote .......................................... 5

DIRECTORS ...................................................................................................... 6

    11.    Function ............................................................................................ 6

    12.    Number ............................................................................................. 6

    13.    Vacancies and Newly Created Directorships ............................ 6

    14.    Removal ............................................................................................ 6

    15.    Nominations of Directors; Election ............................................. 6

    16.    Resignation ...................................................................................... 8

    17.    Regular Meetings ............................................................................ 8

    18.    Special Meetings ............................................................................. 8

    19.    Quorum ............................................................................................. 8

    20.    Participation in Meetings by Remote Communications ........... 8

    21.    Board Action Without Meeting .................................................... 9

    22.    Lead Independent Director ........................................................... 9

    23.    Committees ...................................................................................... 9

    24.    Compensation ................................................................................. 9

    25.    Rules ................................................................................................. 9

NOTICES ........................................................................................................... 9

    26.    Generally ........................................................................................... 9

    27.    Waivers ............................................................................................ 10

OFFICERS ....................................................................................................... 10

# TABLE OF CONTENTS
## (continued)

Page

28.   Generally ................................................................................................ 10

29.   Compensation ........................................................................................ 10

30.   Succession ............................................................................................. 10

31.   Authority and Duties ............................................................................. 11

STOCK ...................................................................................................................... 11

32.   Certificates ............................................................................................ 11

33.   Classes of Stock .................................................................................... 11

34.   Lost, Stolen or Destroyed Certificates ................................................. 11

GENERAL ................................................................................................................. 11

35.   Fiscal Year ............................................................................................ 11

36.   Reliance Upon Books, Reports and Records ........................................ 11

37.   Amendments .......................................................................................... 12

38.   Certain Defined Terms .......................................................................... 12

## STOCKHOLDERS MEETINGS

1.     <u>Time and Place of Meetings</u>.  All meetings of stockholders will be held at such time and place, within or without the State of Delaware, as may be designated by the Board of Directors of the Company (the "***Board***") from time to time or, in the absence of a designation by the Board, the Chairman of the Board (the "***Chairman***"), the Chief Executive Officer, the President or the Secretary, and stated in the notice of the meeting.  Notwithstanding the foregoing, the Board may, in its sole discretion, determine that a meeting of stockholders will not be held at any place, but may instead be held by means of remote communications, subject to such guidelines and procedures as the Board may adopt from time to time.  The Board may postpone and reschedule any previously scheduled annual or special meeting of stockholders.

2.     <u>Annual Meetings</u>.  At each annual meeting of stockholders, the stockholders will elect directors of the Company ("***Directors***") by a plurality of the votes of the shares present in person or represented by proxy at such meeting and entitled to vote on the election of Directors and will transact such other business as may properly be brought before the meeting in accordance with <u>Bylaw 8</u>.

3.     <u>Special Meetings</u>.  A special meeting of stockholders may be called only by (i) the Chairman, (ii) the President, or (iii) the Secretary within ten calendar days after receipt by the Chairman and the Secretary of the written request of (A) a majority of the Directors then in office or (B) the holders of at least 20% of the voting power of the outstanding Voting Stock, voting together as a single class, in each case to transact only such business as is properly brought before the meeting in accordance with <u>Bylaw 8(d)</u> and specified in the notice of the meeting.  For the purposes of these Bylaws, "***Voting Stock***" means capital stock of the Company of any class or series entitled to vote generally in the election of Directors.  Special meetings of holders of the outstanding Preferred Stock, if any, may be called in the manner and for the purposes provided in the applicable Preferred Stock Designation.

4.     <u>Notice of Meetings</u>.  Notice of every meeting of stockholders, stating the place, if any, date and time thereof, the means of remote communications, if any, by which stockholders and proxy holders may be deemed to be present in person and vote at such meeting, and, in the case of a special meeting, the purpose or purposes for which the meeting is called, will be given, in a form permitted by <u>Bylaw 26</u> or by the General Corporation Law of the State of Delaware, as amended (the "***DGCL***"), not less than ten nor more than 60 calendar days before the date of the meeting to each stockholder of record entitled to vote at such meeting, except as otherwise provided by law.  When a meeting is adjourned to another place, date, or time, notice need not be given of the adjourned meeting if the place, if any, date and time thereof, and the means of remote communications, if any, by which stockholders and proxy holders may be deemed to be present in person and vote at such adjourned meeting are announced at the meeting at which the adjournment is taken; <u>provided</u>, <u>however</u>, that if the adjournment is for more than 30 calendar days, or if after the adjournment a new record date is fixed for the adjourned meeting, written notice of the place, if any, date and time thereof, and the means of remote communications, if any, by which stockholders and proxy holders may be deemed to be present in person and vote at such adjourned meeting must be given in conformity herewith.  At any adjourned meeting, any business may be transacted which properly could have been transacted at the original meeting.

5.     Inspectors.  If required by law, the Board will, in advance of any meeting of stockholders, appoint one or more inspectors to act at the meeting and make a written report thereof.  The Board may designate one or more persons as alternate inspectors to replace any inspector who fails to act.  If no inspector or alternate is able to act at a meeting of stockholders, the presiding officer of the meeting will appoint one or more inspectors to act at the meeting.  The inspector(s) shall have such powers and duties as provided in Section 231 of the DGCL, or any successor provision.

6.     Quorum.  Except as otherwise provided by law or in a Preferred Stock Designation, the holders of a majority of the voting power of the outstanding Voting Stock entitled to vote thereat, present in person or represented by proxy, will constitute a quorum at a meeting of stockholders for the transaction of business thereat.  If, however, such quorum is not present or represented at any meeting of stockholders, the stockholders entitled to vote thereat, present in person or represented by proxy, by the affirmative vote of the holders of a majority of the voting power thereof, will have the power to adjourn the meeting from time to time, without notice other than announcement at the meeting, until a quorum is present or represented.

7.     Voting; Proxies.  Except as otherwise provided by law, by the Company's Certificate of Incorporation (the "***Certificate of Incorporation***"), or in a Preferred Stock Designation, each stockholder will be entitled at every meeting of the stockholders to one vote for each share of stock having voting power standing in the name of such stockholder on the books of the Company on the record date for the meeting and such votes may be cast either in person or by proxy.  Every proxy must be authorized in a manner permitted by Section 212 of the DGCL, or any successor provision.  When a quorum is present at any meeting of stockholders, the affirmative vote of the holders of a majority of the voting power of the outstanding Voting Stock present in person or represented by proxy at the meeting and entitled to vote on the subject matter will be the act of the stockholders in all matters other than the election of Directors, or as otherwise provided in these Bylaws, the Certificate of Incorporation, a Preferred Stock Designation, the rules of any stock exchange or quotation system on which the Company's securities may be listed, quoted or traded, or by law or pursuant to any regulation applicable to the Company's securities.

8.     Order of Business.  (a) The Chairman, or such other officer of the Company designated from time to time by a majority of the total number of Directors that the Company would have if there were no vacancies on the Board (the "***Whole Board***"), will call meetings of stockholders to order and will act as presiding officer thereof and may adjourn any meeting of stockholders from time to time.  Unless otherwise determined by the Board prior to the meeting, the presiding officer of the meeting of stockholders will also determine the order of business and have the authority in his or her sole discretion to determine the rules of procedure and regulate the conduct of any such meeting, including, without limitation, by imposing restrictions on the persons (other than stockholders of the Company or their duly appointed proxy holders) that may attend any such stockholders' meeting, by ascertaining whether any stockholder or his or her proxy holder may be excluded from any meeting of stockholders based upon any determination by the presiding officer, in his or her sole discretion, that any such person has disrupted or is likely to disrupt the proceedings thereat, by determining the circumstances in which any person may make a statement or ask questions at any meeting of stockholders, by ruling on all procedural questions that may arise during or in connection with the meeting, by determining

whether any nomination or business proposed to be brought before the meeting has been properly brought before the meeting.

(b)     At an annual meeting of stockholders, only such business will be transacted or considered as is properly brought before the annual meeting.  To be properly brought before an annual meeting, business must be (i) specified in the notice of the meeting (or any supplement thereto) given in accordance with <u>Bylaw 4</u>, (ii) otherwise properly brought before the annual meeting by the presiding officer or by or at the direction of a majority of the Whole Board, or (iii) otherwise properly requested to be brought before the annual meeting by a stockholder of the Company in accordance with <u>Bylaw 8(c)</u>.

(c)     For business to be properly requested by a stockholder to be brought before an annual meeting, (i) the stockholder must be a stockholder of the Company of record at the time of the giving of the notice for such annual meeting provided for in these Bylaws, (ii) the stockholder must be entitled to vote at such meeting, (iii) the stockholder must have given timely notice of the proposed business in proper written form to the Secretary, (iv) if the stockholder, or the beneficial owner on whose behalf any business is brought before the meeting, has provided the Company with a Proposal Solicitation Notice, as that term is defined in this <u>Bylaw 8(c)</u>, such stockholder or beneficial owner must have delivered a proxy statement and form of proxy to the holders of at the least the percentage of shares of the Company entitled to vote required to approve such business that the stockholder proposes to bring before the annual meeting and included in such materials the Proposal Solicitation Notice, and (v) the proposed business must be a proper matter for stockholder action under the laws of the State of Delaware.  To be timely, a stockholder's notice must be delivered to or mailed and received at the principal executive offices of the Company not less than 90 nor more than 120 calendar days prior to the first anniversary of the date of the previous year's annual meeting of stockholders; <u>provided, however,</u> that if the date of the annual meeting is advanced more than 30 calendar days prior to or delayed by more than 30 calendar days after the anniversary of the preceding year's annual meeting, or if the annual meeting is the first annual meeting of the Company's stockholders, notice by the stockholder to be timely must be so delivered not later than the close of business on the later of the 90th calendar day prior to such annual meeting or the tenth calendar day following the day on which public disclosure of the date of such meeting is first made.  In no event will the public disclosure of an adjournment or postponement of an annual meeting commence a new time period for the giving of a stockholder's notice as described above.  To be in proper written form, a stockholder's notice to the Secretary must set forth as to each matter the stockholder proposes to bring before the annual meeting (A) a description in reasonable detail of the business desired to brought before the annual meeting, the text of the proposal or business (including the text of any resolutions proposed for consideration and in the event that such business includes a proposal to amend these Bylaws, the language of the proposed amendment), and the reasons for transacting such business at the annual meeting, (B) the name and address, as they appear on the Company's books, of the stockholder proposing such business and the beneficial owner(s), if any, on whose behalf the proposal is made, (C) the class and series and number of shares of capital stock of the Company that are owned beneficially and of record by the stockholder proposing such business and by the beneficial owner(s), if any, on whose behalf the proposal is made, (D) a description of all arrangements or understandings among such stockholder and any other person or persons (including their names) in connection with the proposal of such business by such stockholder and any material interest of such stockholder or

beneficial owner in such business, (E) whether either such stockholder or beneficial owner(s) intend to deliver a proxy statement and form of proxy to holders of at least the percentage of shares of the Company entitled to vote required to approve the proposal (an affirmative statement of such intent, a "***Proposal Solicitation Notice***"), and (F) a representation that such stockholder intends to appear in person or by proxy at the annual meeting to bring such business before the annual meeting. For purposes of this <u>Bylaw 8(c)</u> and <u>Bylaw 15,</u> "public disclosure" means disclosure in a press release reported by the Dow Jones News Service, Associated Press or other national news service or in a document filed by the Company with the Securities and Exchange Commission pursuant to the Exchange Act or furnished by the Company to stockholders. Notwithstanding the foregoing provisions of this <u>Bylaw 8(c)</u>, in order to include information with respect to a stockholder proposal in the Company's proxy statement and form of proxy for a meeting of stockholders, a stockholder must provide notice as required by, and otherwise comply with, all of the applicable requirements of the Securities Exchange Act of 1934 and the rules and regulations thereunder (the "***Exchange Act***"). Nothing in this <u>Bylaw 8(c)</u> will be deemed to affect any rights of stockholders to request inclusion of proposals in the Company's proxy statement pursuant to Rule 14a-8 under the Exchange Act. The foregoing notice requirements of this <u>Bylaw 8(c)</u> shall be deemed satisfied by a stockholder if the stockholder has notified the Company of his, her or its intention to present a proposal at an annual meeting in compliance with applicable rules and regulations promulgated under the Exchange Act and such stockholder's proposal has been included in the Company's proxy statement and form of proxy for such annual meeting.

(d)     At a special meeting of stockholders, only such business may be transacted or considered as is properly brought before the special meeting. To be properly brought before a special meeting, business must be (i) specified in the notice of the meeting (or any supplement thereto) given in accordance with <u>Bylaw 4</u> or (ii) otherwise properly brought before the meeting by the presiding officer or by or at the direction of a majority of the Whole Board.

(e)     The determination of whether any business sought to be brought before any annual or special meeting of the stockholders is properly brought before such meeting in accordance with this <u>Bylaw 8</u> will be made by the presiding officer of such meeting. If the presiding officer determines that any business is not properly brought before such meeting, he or she will so declare to the meeting and any such business will not be transacted or considered. Unless otherwise required by law, if the stockholder (or a qualified representative of the stockholder) does not appear at the annual or special meeting of stockholders of the Company to present the proposed business, such proposed business shall not be transacted, notwithstanding that proxies in respect of such vote may have been received by the Company. For purposes of this <u>Bylaw 8(e)</u>, to be considered a qualified representative of the stockholder, a person must be a duly authorized officer, manager or partner of such stockholder or must be authorized by a writing executed by such stockholder or an electronic transmission delivered by such stockholder to act for such stockholder as proxy at the meeting of stockholders and such person must produce such writing or electronic transmission, or a reliable reproduction of the writing or electronic transmission, at the meeting of stockholders.

9.     <u>Record Dates.</u> (a) In order that the Company may determine the stockholders entitled to notice of or to vote at any meeting of stockholders or any adjournment thereof, the Board may fix a record date, which record date shall not precede the date upon which the

resolution fixing the record date is adopted by the Board, and which record date shall not be more than 60 nor less than ten calendar days before the date of such meeting. If no record date is fixed by the Board, the record date for determining stockholders entitled to notice of or to vote at a meeting of stockholders will be at the close of business on the calendar day next preceding the day on which notice is given, or, if notice is waived, at the close of business on the calendar day next preceding the day on which the meeting is held. A determination of stockholders of record entitled to notice of or to vote at a meeting of the stockholders will apply to any adjournment of the meeting; provided, however, that the Board may fix a new record date for the adjourned meeting.

(b)     In order that the Company may determine the stockholders entitled to consent to corporate action in writing without a meeting as provided in the Certificate of Incorporation, the Board may fix a record date, which record date shall not precede the date upon which the resolution fixing the record date is adopted by the Board, and which record date shall not be more than ten days after the date upon which the resolution fixing the record date is adopted by the Board. If no record date has been fixed by the Board, the record date for determining stockholders entitled to consent to corporate action in writing without a meeting, when no prior action by the Board is required by the DGCL, shall be the first date on which a signed written consent setting forth the action taken or proposed to be taken is delivered to the Company by delivery to its registered office in the State of Delaware, its principal place of business or an officer or agent of the Company having custody of the book in which proceedings of meetings of stockholders are recorded. Delivery made to the Company's registered office shall be by hand or by certified or registered mail, return receipt requested. If no record date has been fixed by the Board and prior action by the Board is required by the DGCL, the record date for determining stockholders entitled to consent to corporate action in writing without a meeting shall be at the close of business on the day on which the Board adopts the resolution taking such prior action.

(c)     In order that the Company may determine the stockholders entitled to receive payment of any dividend or other distribution or allotment of any rights or the stockholders entitled to exercise any rights in respect of any change, conversion or exchange of stock, or for the purpose of any other lawful action, the Board may fix a record date, which record date shall not precede the date upon which the resolution fixing the record date is adopted by the Board, and which record date shall not be more than 60 calendar days prior to such action. If no record date is fixed, the record date for determining stockholders for any such purpose will be at the close of business on the calendar day on which the Board adopts the resolution relating thereto.

(d)     The Company will be entitled to treat the person in whose name any share of its stock is registered as the owner thereof for all purposes, and will not be bound to recognize any equitable or other claim to, or interest in, such share on the part of any other person, whether or not the Company has notice thereof, except as expressly provided by applicable law.

10.     <u>List of Stockholders Entitled to Vote</u>. The officer who has charge of the Company's stock ledger shall prepare and make, at least ten days before every meeting of stockholders, a complete list of the stockholders entitled to vote at the meeting, arranged in alphabetical order, and showing the address of each stockholder and the number of shares registered in the name of each stockholder. Such list shall be open to the examination of any stockholder, for any purpose germane to the meeting at least ten days prior to the meeting (i) on

a reasonably accessible electronic network, provided that the information required to gain access to such list is provided with the notice of meeting or (ii) during ordinary business hours at the principal place of business of the Company. The list of stockholders must also be open to examination at the meeting as required by applicable law.

DIRECTORS

11.     Function. The business and affairs of the Company will be managed under the direction of the Board.

12.     Number. Subject to (i) the rights, if any, of any series of Preferred Stock to elect additional Directors under circumstances specified in a Preferred Stock Designation, including without limitation Section 6(c) of the Certificate of Designations for the Series A Preferred Stock and the Series B Preferred Stock, and (ii) the minimum and maximum number of authorized Directors provided in the Certificate of Incorporation, the authorized number of Directors may be determined from time to time only by a vote of a majority of the Whole Board.

13.     Vacancies and Newly Created Directorships. Subject to the rights, if any, of the holders of any series of Preferred Stock to elect additional Directors under circumstances specified in a Preferred Stock Designation, newly created directorships resulting from any increase in the authorized number of Directors and any vacancies on the Board resulting from resignation, disqualification, removal, death or other cause may be filled only by the affirmative vote of a majority of the remaining Directors then in office, even though less than a quorum of the Board, or by a sole remaining Director. Any Director elected in accordance with the preceding sentence will hold office until the next annual meeting of stockholders and until such Director's successor is duly elected and qualified or until such Director's earlier resignation, disqualification, removal or death. No decrease in the authorized number of Directors will shorten the term of any Director.

14.     Removal. Subject to the rights, if any, of the holders of any series of Preferred Stock specified in a Preferred Stock Designation, any Director may be removed from office by the stockholders only in the manner provided in the Certificate of Incorporation.

15.     Nominations of Directors; Election. (a) Subject to the rights, if any, of the holders of any series of Preferred Stock to elect additional Directors under circumstances specified in a Preferred Stock Designation, only persons who are nominated in accordance with this Bylaw 15 will be eligible for election at a meeting of stockholders as Directors of the Company.

(b)     Nominations of persons for election as Directors of the Company may be made only at an annual meeting of stockholders (i) by or at the direction of the Board or a committee thereof or (ii) by any stockholder that is a stockholder of record at the time of giving of notice provided for in this Bylaw 15, who is entitled to vote for the election of Directors at such annual meeting, and who complies with the procedures set forth in this Bylaw 15. If a stockholder, or a beneficial owner(s) on whose behalf any such nomination is made, has provided the Company with a Nomination Solicitation Notice, as that term is defined below in this Bylaw 15, such stockholder or beneficial owner must have delivered a proxy statement and form of proxy to the

holders of at least the percentage of shares of the Company entitled to vote required to approve the nomination and included in such materials the Nomination Solicitation Notice. All nominations by stockholders must be made pursuant to timely notice in proper written form to the Secretary.

(c)     To be timely, a stockholder's notice must be delivered to or mailed and received at the principal executive offices of the Company not less than 90 nor more than 120 calendar days prior to the first anniversary of the date of the previous year's annual meeting of stockholders; provided, however, that if the date of the annual meeting is advanced more than 30 calendar days prior to or delayed by more than 30 calendar days after the anniversary of the preceding year's annual meeting, or if the annual meeting is the first annual meeting of the Company's stockholders, notice by the stockholder to be timely must be so delivered not later than the close of business on the later of the 90th calendar day prior to such annual meeting or the tenth calendar day following the day on which public disclosure of the date of such meeting is first made. In no event will the public disclosure of an adjournment or postponement of an annual meeting commence a new time period for the giving of a stockholder's notice as described above. To be in proper written form, such stockholder's notice must set forth or include (i) the name and address, as they appear on the Company's books, of the stockholder giving the notice and of the beneficial owner(s), if any, on whose behalf the nomination is made; (ii) a representation that the stockholder giving the notice is a holder of record of stock of the Company entitled to vote at such annual meeting and intends to appear in person or by proxy at the annual meeting to nominate the person or persons specified in the notice; (iii) the class and number of shares of stock of the Company owned beneficially and of record by the stockholder giving the notice and by the beneficial owner(s), if any, on whose behalf the nomination is made; (iv) a description of all arrangements or understandings between or among any of (A) the stockholder giving the notice, (B) the beneficial owner(s) on whose behalf the notice is given, (C) each nominee, and (D) any other person or persons (naming such person or persons) pursuant to which the nomination or nominations are to be made by the stockholder giving the notice; (v) such other information regarding each nominee proposed by the stockholder giving the notice as would be required to be included in a proxy statement filed pursuant to the proxy rules of the Securities and Exchange Commission had the nominee been nominated, or intended to be nominated, by the Board; (vi) the signed consent of each nominee to serve as a Director of the Company if so elected; and (vii) whether either such stockholder or beneficial owner(s) intend to deliver a proxy statement and form of proxy to holders of shares of the Company entitled to vote required to elect such nominee or nominees (an affirmative statement of such intent, a "*Nomination Solicitation Notice*"). At the request of the Board, any person nominated by the Board for election as a Director must furnish to the Secretary that information required to be set forth in a stockholder's notice of nomination that pertains to the nominee. The presiding officer of any annual meeting will, if the facts warrant, determine that a nomination was not made in accordance with the procedures prescribed by this Bylaw 15, and if he or she should so determine, he or she will so declare to the meeting and the defective nomination will be disregarded. Notwithstanding the foregoing provisions of this Bylaw 15, a stockholder must also provide notice as required by, and otherwise comply with, all of the applicable requirements of the Exchange Act with respect to the matters set forth in this Bylaw 15. Unless otherwise required by law, if the stockholder (or a qualified representative of the stockholder) does not appear at the annual or special meeting of stockholders of the Company to present a nomination, such nomination shall not be voted on, notwithstanding that proxies in respect of such vote may

have been received by the Company. For purposes of this Bylaw 15(c), to be considered a qualified representative of the stockholder, a person must be a duly authorized officer, manager or partner of such stockholder or must be authorized by a writing executed by such stockholder or an electronic transmission delivered by such stockholder to act for such stockholder as proxy at the meeting of stockholders and such person must produce such writing or electronic transmission, or a reliable reproduction of the writing or electronic transmission, at the meeting of stockholders. Nothing in this Bylaw 15 shall be deemed to affect any rights (a) of stockholders to request inclusion of nominations in the Company's proxy statement pursuant to applicable rules and regulations promulgated under the Exchange Act or (b) of the holders of any series of Preferred Stock to elect Directors pursuant to any applicable provisions of the Certificate of Incorporation or any Preferred Stock Designation.

16.    Resignation.  Any Director may resign at any time upon notice given in writing or by electronic transmission to the Chairman or the Secretary.  Any resignation is effective when the resignation is delivered to the Company unless the resignation specified a later effective date or an effective date determined upon the happening of an event or events.

17.    Regular Meetings.  Regular meetings of the Board may be held immediately after the annual meeting of the stockholders and at such other time and place either within or without the State of Delaware as may from time to time be determined by the Board.  Notice of regular meetings of the Board need not be given.

18.    Special Meetings.  Special meetings of the Board may be called by the Chairman or the President on one day's notice to each Director by whom such notice is not waived, given in a form permitted by Bylaw 26 or by the DGCL, and will be called by the Chairman or the President, in like manner and on like notice, on the written request of at least two (2) Directors. Special meetings of the Board may be held at such time and place either within or without the State of Delaware as is determined by the Board or specified in the notice of any such meeting.

19.    Quorum.  At all meetings of the Board, a majority of the Whole Board will constitute a quorum for the transaction of business.  Except for action to be taken by committees of the Board as provided in Bylaw 23, and except for actions required by these Bylaws or the Certificate of Incorporation to be taken by a majority of the Whole Board, the act of a majority of the Directors present at any meeting at which there is a quorum will be the act of the Board.  If a quorum is not present at any meeting of the Board, the Directors, by the vote of a majority of the Directors present at such meeting, may adjourn the meeting from time to time to another place, time, or date, without notice other than announcement at the meeting, until a quorum is present.

20.    Participation in Meetings by Remote Communications.  Members of the Board or any committee designated by the Board may participate in a meeting of the Board or any such committee, as the case may be, by means of conference telephone or other communications equipment by means of which all persons participating in the meeting can hear each other, and such participation in a meeting will constitute presence in person at the meeting.

21.    Board Action Without Meeting.  Any action required or permitted to be taken at any meeting of the Board or any committee designated by the Board may be taken without a

meeting if all members of the Board or committee, as the case may be, consent thereto in writing or by electronic transmission, and the writing or writings or electronic transmission or transmissions are filed with the minutes of proceedings of the Board or committee. Such filing shall be in paper form if the minutes are maintained in paper form and shall be in electronic form if the minutes are maintained in electronic form.

22.     Lead Independent Director. The Directors will elect from among the independent Directors a Lead Independent Director of the Company (the "***Lead Independent Director***") on an annual basis. The Lead Independent Director may call meetings of the independent Directors from time to time, and will have the following duties and responsibilities, in addition to those duties and responsibilities set forth in the Company's corporate governance guidelines:  (i) to preside at all meetings of the Board at which the Chairman is not present, including any executive sessions of the independent Directors and (ii) to serve as the liaison between the Chairman and the independent Directors.

23.     Committees. (a) The Board may designate one or more committees, each committee to consist of one or more of the Directors. The Board may designate one or more Directors as alternate members of any committee, who may replace any absent or disqualified member at any meeting of the committee. In the absence or disqualification of a member of a committee, the member or members present at any meeting and not disqualified from voting, whether or not such member or members constitute a quorum, may unanimously appoint another member of the Board to act at the meeting in the place of any such absent or disqualified member. Any such committee, to the extent provided in the resolution of the Board, or in these Bylaws, will have and may exercise all the powers and authority of the Board in the management of the business and affairs of the Company, and may authorize the seal of the Company to be affixed to all papers which may require it; but no such committee will have the power or authority in reference to the following matters:  (i) approving or adopting, or recommending to the stockholders, any action or matter (other than the election or removal of Directors) expressly required by the DGCL to be submitted to stockholders for approval or (ii) making, adopting, amending or repealing any provision of these Bylaws.

(b)  Beginning with the first meeting of stockholders to elect directors following the date these Bylaws are first adopted and for as long as Article III of the Shareholders Agreement (the "Shareholders Agreement"), dated as of _____, 200_, by and among the Company, Centerbridge Capital Partners, L.P., Centerbridge Capital Partners Strategic, L.P. and Centerbridge Captial Partners SBS is in effect, there will be a Series A Nominating Committee, which will be entitled to nominate one director for election by holders of Voting Stock pursuant to Section 6(b)(ii) of the Certificate (a "Series A Nominee"); provided, however, that, in order for such nomination to be effective, such nomination by the Series A Nominating Committee must be made unanimously. To the extent the members of the Series A Nominating Committee are unable to unanimously agree on the identity of a Series A Nominee on or before the latest time at which the Company can reasonably meet its obligations with respect to printing and mailing a proxy statement for an annual meeting of Company stockholders, the Board will designate a Committee of all of the Independent Directors, as defined in the Shareholders Agreement, to serve as the Series A Nominating Committee which Committee will, by a majority vote, select an individual to be nominated for such Board seat. Each Series A Nominee must, at all times during his or her service on the Board, be qualified to serve as a director of the

Company under any applicable law, rule or regulation imposing or creating standards or eligibility criteria for individuals serving as directors of organizations such as the Company. If at any time, an individual Series A Nominee is not so qualified, such Series A Nominee will be replaced pursuant to this Bylaw 23(b).

(c) Each duly elected Series A Nominee will serve until his successor is elected and qualified or until his earlier resignation, retirement, disqualification, removal from office or death. If any Series A Nominee ceases to be a director of the Company for any reason, the Company will promptly use its best efforts to cause a person designated by the Series A Nominating Committee to replace such director.

24. <u>Compensation</u>. The Board may establish the compensation of directors, including, without limitation, compensation for membership on the Board and on committees of the Board, attendance at meetings of the Board or committees of the Board, and for other services provided to the Company or at the request of the Board.

25. <u>Rules</u>. The Board may adopt rules and regulations for the conduct of meetings and the oversight of the management of the affairs of the Company.

<u>NOTICES</u>

26. <u>Generally</u>. (a) Except as otherwise provided by law, these Bylaws, or the Certificate of Incorporation, whenever by law or under the provisions of the Certificate of Incorporation or these Bylaws notice is required to be given to any Director or stockholder, it will not be construed to require personal notice, but such notice may be given in writing, by mail or courier service or, to the extent permitted by the DGCL, by electronic transmission, addressed to such Director or stockholder. Any notice sent to stockholders by mail or courier service shall be sent to the address of such stockholder as it appears on the records of the Company, with postage thereon prepaid, and such notice will be deemed to be given at the time when the same is deposited in the United States mail or with the courier service. Notices sent by electronic transmission shall be deemed effective as set forth in Section 222 of the DGCL. For purposes of this Bylaw 26, "*electronic transmission*" means any form of communication, not directly involving the physical transmission of paper, that creates a record that may be retained, retrieved and reviewed by a recipient thereof, and that may be directly reproduced in paper form by such a recipient through an automated process.

(b) Notices to Directors may be given by mail or courier service, telephone, electronic transmission or as otherwise may be permitted by these Bylaws.

27. <u>Waivers</u>. Whenever any notice is required to be given by law or under the provisions of the Certificate of Incorporation or these Bylaws, a waiver thereof in writing, signed by the person entitled to such notice, or a waiver by electronic transmission by the person entitled to such notice, whether before or after the time of the event for which notice is to be given, will be deemed equivalent to such notice. Attendance of a person at a meeting will constitute a waiver of notice of such meeting, except when the person attends a meeting for the express purpose of objecting at the beginning of the meeting, to the transaction of any business because the meeting is not lawfully called or convened.

## OFFICERS

28. <u>Generally</u>. The officers of the Company will be elected by the Board and will consist of a Chairman, a Chief Executive Officer, a President (which offices of Chairman, Chief Executive Officer and/or President may be held by the same person if the Board so specifies), a Secretary and a Treasurer. The Board may also choose any or all of the following: one or more Vice Chairmen, one or more Assistants to the Chairman, one or more Vice Presidents (who may be given particular designations with respect to authority, function, or seniority), one or more Assistant Secretaries, one or more Assistant Treasurers and such other officers as the Board may from time to time determine. Notwithstanding the foregoing, the Board may authorize the Chairman to appoint any person to any office other than Chairman, Chief Executive Officer, President, Secretary or Treasurer. Any number of offices may be held by the same person. Any of the offices may be left vacant from time to time as the Board may determine. In the case of the absence or disability of any officer of the Company or for any other reason deemed sufficient by a majority of the Board, the Board may delegate the absent or disabled officer's powers or duties to any other officer or to any Director.

29. <u>Compensation</u>. The compensation of all officers and agents of the Company who are also Directors of the Company will be fixed by the Board or by a committee of the Board. The Board may fix, or delegate the power to fix, the compensation of other officers and agents of the Company to an officer of the Company.

30. <u>Succession</u>. The officers of the Company will hold office until their successors are duly elected and qualified or until such officer's earlier resignation, disqualification, removal or death. Any officer may be removed at any time by the affirmative vote of a majority of the Whole Board. Any vacancy occurring in any office of the Company may be filled by the Board or by the Chairman as provided in <u>Bylaw 28</u>.

31. <u>Authority and Duties</u>. Each of the officers of the Company will have such authority and will perform such duties as are customarily incident to their respective offices or as may be specified from time to time by the Board.

## STOCK

32. <u>Certificates</u>. The shares of capital stock of the Company will be represented by certificates unless the Board provides by resolution or resolutions that some or all of any or all classes or series of stock will be uncertificated shares. Any such resolution will not apply to shares represented by a certificate until such certificate is surrendered to the Company.

33. <u>Classes of Stock</u>. The powers, designations, preferences and relative, participating, optional, or other special rights of each class or series of stock represented by certificates, if any, and the qualifications, limitations or restrictions of such preferences and/or rights will be set forth in full or summarized on the face or back of the certificates representing such class or series of stock or, in lieu thereof, on the face or back of such certificates will be a statement that the Company will furnish without charge to each stockholder who so requests the powers, designations, preferences and relative, participating, optional, or other special rights of each class of stock or series thereof and the qualifications, limitations or restrictions of such

preferences and/or rights. Except as otherwise expressly provided by law, the rights and obligations of the holders of uncertificated stock and the rights and obligations of the holders of certificates representing stock of the same class and series shall be identical.

34.     Lost, Stolen or Destroyed Certificates.  The Secretary may direct a new certificate or certificates or uncertificated shares to be issued in place of any certificate or certificates theretofore issued by the Company alleged to have been lost, stolen or destroyed, upon the making of an affidavit of that fact, satisfactory to the Secretary, by the person claiming the certificate of stock to be lost, stolen or destroyed.  As a condition precedent to the issuance of a new certificate or certificates, the Secretary may require the owners of such lost, stolen or destroyed certificate or certificates to give the Company a bond in such sum and with such surety or sureties as the Secretary may direct as indemnity against any claims that may be made against the Company with respect to the certificate alleged to have been lost, stolen or destroyed or the issuance of the new certificate or uncertificated shares.

GENERAL

35.     Fiscal Year.  The fiscal year of the Company will end on December 31st of each year or such other date as may be fixed from time to time by the Board.

36.     Reliance Upon Books, Reports and Records.  Each Director, each member of a committee designated by the Board, and each officer of the Company will, in the performance of his or her duties, be fully protected in relying in good faith upon the records of the Company and upon such information, opinions, reports, or statements presented to the Company by any of the Company's officers or employees, or committees of the Board, or by any other person or entity as to matters the Director, committee member, or officer believes are within such other person's professional or expert competence and who has been selected with reasonable care by or on behalf of the Company.

37.     Amendments.  Except as otherwise provided by law or by the Certificate of Incorporation or these Bylaws, these Bylaws or any of them may be amended in any respect or repealed at any time, either (i) at any meeting of stockholders, provided that any amendment or supplement proposed to be acted upon at any such meeting has been described or referred to in the notice of such meeting, or (ii) by the Board.  Notwithstanding the foregoing and anything contained in these Bylaws to the contrary, Bylaws 3, 6, 8, 12, 13, 14, 15, 18, 19 and 37 may not be amended or repealed by the stockholders, and no provision inconsistent therewith may be adopted by the stockholders, without the affirmative vote of the holders of at least 66 2/3% of the Voting Stock, voting together as a single class.

38.     Certain Defined Terms.  Capitalized terms used herein and not otherwise defined have the meanings given to them in the Certificate of Incorporation.

**EXHIBIT C**

# RESTATED CERTIFICATE OF INCORPORATION

## OF

## DANA HOLDING CORPORATION

### ARTICLE I

The name of the corporation is Dana Holding Corporation (the "***Company***").

### ARTICLE II

The address of the Company's registered office in the State of Delaware is Corporation Trust Center, 1209 Orange Street, City of Wilmington, County of New Castle, Delaware 19801. The name of the Company's registered agent at such address is The Corporation Trust Company.

### ARTICLE III

The purpose of the Company is to engage in any lawful act or activity for which corporations may be organized under the General Corporation Law of the State of Delaware, as amended (the "***DGCL***").

### ARTICLE IV

Section 1. <u>Authorized Capital Stock</u>. The total number of shares of capital stock that the Company is authorized to issue is 500,000,000 shares, consisting of 450,000,000 shares of Common Stock, par value $0.01 per share ("***Common Stock***"), and 50,000,000 shares of Preferred Stock, par value $0.01 per share ("***Preferred Stock***"). Subject to the rights of the holders of any series of Preferred Stock, the number of authorized shares of the Common Stock or Preferred Stock may be increased or decreased (but not below the number of shares thereof then outstanding) by the affirmative vote of the holders of a majority of the voting power of outstanding Voting Stock entitled to vote thereon, irrespective of the provisions of Section 242(b)(2) of the DGCL (or any successor provision thereto), and no vote of the holders of the Common Stock or Preferred Stock voting separately as a class shall be required therefor.

Section 2. <u>Preferred Stock</u>. The Preferred Stock may be issued in one or more series. The Board of Directors of the Company (the "***Board***") is hereby authorized, by resolution or resolutions thereof, to issue the shares of Preferred Stock in such series and to fix from time to time before issuance the number of shares to be included in any such series and the designation, powers, preferences, and relative, participating, optional or other rights, if any, and the qualifications, limitations or restrictions thereof, of such series. The authority of the Board with respect to each such series will include, without limiting the generality of the foregoing, the determination of any or all of the following:

(a) the number of shares of any series and the designation to distinguish the shares of such series from the shares of all other series;

(b)     the voting powers, if any, and whether such voting powers are full or limited in such series;

(c)     the redemption provisions, if any, applicable to such series, including the redemption price or prices to be paid;

(d)     whether dividends, if any, will be cumulative or noncumulative, the dividend rate of such series, and the dates, conditions and preferences of dividends on such series;

(e)     the rights of such series upon the voluntary or involuntary dissolution of, or upon any distribution of the assets of, the Company;

(f)     the provisions, if any, pursuant to which the shares of such series are convertible into, or exchangeable for, shares of any other class or classes or any other series of the same or any other class or classes of stock of the Company, at such price or prices or at such rate or rates of exchange and with such adjustments applicable thereto;

(g)     the right, if any, to subscribe for or to purchase any securities of the Company;

(h)     the provisions, if any, of a sinking fund applicable to such series; and

(i)     any other designations, powers, preferences and relative, participating, optional or other special rights, and qualifications, limitations or restrictions thereof;

all as may be determined from time to time by the Board and stated or expressed in the resolution or resolutions providing for the issuance of such Preferred Stock (collectively, a "***Preferred Stock Designation***").  Notwithstanding the foregoing, the Company shall be prohibited from issuing non-voting equity securities to the extent, and only to the extent, required by Section 1123(a)(6) of the United States Bankruptcy Reform Act of 1978, as codified in Title 11 of the United States Code, 11 U.S.C. Sections 101-1330, as in effect on the date hereof.

Section 3.  Common Stock.  Subject to the rights, if any, of the holders of any series of Preferred Stock to vote as a class without any other vote, the holders of Common Stock will be entitled to one vote on each matter submitted to a vote at a meeting of stockholders for each share of Common Stock held of record by such holder as of the record date for such meeting.  Except as may be provided in a Preferred Stock Designation, to the fullest extent permitted by law, holders of Common Stock, as such, shall have no voting power with respect to, and shall not be entitled to vote on, any amendment to this Certificate of Incorporation (including any Preferred Stock Designation) that relates solely to the terms of one or more outstanding series of Preferred Stock if the holders of such affected series are entitled, either separately or together with the holders of one or more other such series, to vote thereon pursuant to this Certificate of Incorporation (including any Preferred Stock Designation) or pursuant to the DGCL.

ARTICLE V

The name and mailing address of the sole incorporator of the Company is:

_____.

ARTICLE VI

The Board may make, adopt, amend, and repeal the Bylaws of the Company (the "***Bylaws***").  Notwithstanding anything contained in this Certificate of Incorporation or the Bylaws to the contrary, Bylaws 3, 6, 8, 12, 13, 14, 15, 18, 19 and 37 may not be amended or repealed by the stockholders, and no provision inconsistent therewith may be adopted by the stockholders, without the affirmative vote of the holders of at least 75**66 2/3**% of the voting power of the outstanding Voting Stock (as defined below), voting together as a single class.  For the purposes of this Certificate of Incorporation, "***Voting Stock***" means capital stock of the Company of any class or series entitled to vote generally in the election of directors of the Company (each, a "***Director***").  Notwithstanding anything contained in this Certificate of Incorporation to the contrary, the affirmative vote of the holders of at least 75**66 2/3**% of the Voting Stock, voting together as a single class, is required to amend or repeal, or to adopt any provision inconsistent with, this Article VI.

ARTICLE VII

Section 1.  Stockholder Action by Written Consent.  Any action required or permitted to be taken by the stockholders of the Company must be effected at a duly called annual or special meeting of stockholders of the Company and may not be effected by any consent in writing of such stockholders; provided, however, that any action required or permitted to be taken, to the extent expressly permitted by any Preferred Stock Designation, by the holders of such series of Preferred Stock, voting separately as a series or separately as a class with one or more other such series, may be taken without a meeting, without prior notice and without a vote, if a consent or consents in writing, setting forth the action so taken, shall be signed by the holders of outstanding shares of the relevant class or series having not less than the minimum number of votes that would be necessary to authorize or take such action at a meeting at which all shares of Preferred Stock entitled to vote thereon were present and voted and shall be delivered to the Company by delivery to its registered office in the State of Delaware, its principal place of business, or an officer or agent of the corporation having custody of the book in which minutes of proceedings of stockholders are recorded.  Delivery made to the Company's registered office shall be by hand or by certified or registered mail, return receipt requested.  Prompt notice of the taking of the corporate action without a meeting by less than unanimous written consent shall, to the extent required by law, be given to those stockholders who have not consented in writing and who, if the action had been taken at a meeting, would have been entitled to notice of the meeting if the record date for such meeting had been the date that written consents signed by a sufficient number of holders to take the action were delivered to the Company.

Section 2.  Business to be Conducted at Stockholder Meetings.  At any annual meeting or special meeting of stockholders of the Company, only such business will be conducted or considered as has been brought before such meeting in the manner provided in the Bylaws.

Section 3.  Centerbridge Shareholders Agreement.  **(a)**  For so long as the Shareholders Agreement (the "Shareholders Agreement"), dated as of [Insert Effective Date], by and among the

Company, Centerbridge Capital Partners, L.P. ("Centerbridge"), a Delaware limited partnership, Centerbridge Capital Partners Strategic, L.P., a Delaware limited partnership ("Strategic"), and Centerbridge Capital Partners SBS, L.P. a Delaware limited partnership ("SBS" and together with Centerbridge and Strategic, "Purchaser") (as it may be amended from time to time as permitted hereunder, the "Shareholders Agreement"), is in effect, **the affirmative vote of the holders of not less than a majority of the votes cast at a meeting of stockholders of the Company held for the purpose of voting thereon where a quorum is present but excluding for this purpose Voting Securities (as defined in the Shareholders Agreement) that are held by a Purchaser or any of their respective Affiliates (as defined in the Shareholders Agreement) will be required to amend or repeal, or to add any provision to the Shareholders Agreement that is inconsistent with, (i) Section 4.2 or the proviso to Section 4.1, of the Shareholders Agreement or (ii) this Section 3(a) or Section 3(d) of this Article VII.**

**(b) For so long as the Shareholders Agreement is in effect, the affirmative vote of the holders of not less than a majority of the votes cast at a meeting of holders of Series B Preferred Stock held for the purpose of voting thereon where a quorum is present will be required to amend or repeal, or to add any provision to the Shareholders Agreement that is inconsistent with, (i) Article VI of the Shareholders Agreement (Preemptive Rights), unless such amendment, repeal or addition would affect only the rights of Series A Preferred under such Article VI, in which case no vote pursuant to this clause (b) will be required, or (ii) this Section 3(b) of this Article VII.**

**(c) For so long as the Shareholders Agreement is in effect, the affirmative vote of the holders of not less than a majority of the votes cast at a meeting of holders of Series A Preferred Stock held for the purpose of voting thereon where a quorum is present will be required to amend or repeal, or to add any provision to the Shareholders Agreement that is inconsistent with, (i) Article VI of the Shareholders Agreement (Preemptive Rights), unless such amendment, repeal or addition would affect only the rights of Series B Preferred under such Article VI, in which case no vote pursuant to this clause (c) will be required, or (ii) this Section 3(c) of this Article VII.**

**(d) For so long as the Shareholders Agreement is in effect,** the Shareholders Agreement may not be amended in any manner that is adverse to holders of Voting Stock other than the Purchaser and their Affiliates without the prior approval of a majority of the Directors who are not (i) Purchaser Designees (as defined in the Shareholders Agreement) or (ii) an employee of the Company, at a meeting of the Directors duly called and held for such purpose.

Section 4. <u>Certain Amendments</u>. Notwithstanding anything contained in this Certificate of Incorporation to the contrary, the affirmative vote of the holders of at least ~~75~~**66 2/3**% of the voting power of the outstanding Voting Stock, voting together as a single class, will be required to amend or repeal, or adopt any provision inconsistent with, Section 1, 2 or 4 of this <u>Article VII</u>.

ARTICLE VIII

Section 1. <u>Number, Election and Terms of Directors</u>. Subject to the rights, if any, of the holders of any series of Preferred Stock to elect additional Directors under circumstances specified in a Preferred Stock Designation, including without limitation Section 6(c) of the Certificate of

Designations for the Series A Preferred Stock and the Series B Preferred Stock, the number of Directors comprising the Board will not be less than three nor more than 15 and will be fixed from time to time in the manner provided in the Bylaws. Directors will be elected at each annual meeting of stockholders, and each Director will hold office until the next annual meeting of stockholders and until such Director's successor has been duly elected and qualified or until such Director's earlier resignation, disqualification, removal or death. Election of Directors need not be by written ballot unless requested by the Chairman of the Board or by the holders of a majority of the Voting Stock present in person or represented by proxy at a meeting of the stockholders at which Directors are to be elected, or as otherwise provided in the Bylaws. If authorized by the Board, such requirement of written ballot shall be satisfied by a ballot submitted by electronic transmission, provided that any such electronic transmission must either set forth or be submitted with information from which it can be determined that the electronic transmission was authorized by the stockholder or proxy holder.

Section 2. <u>Nomination of Director Candidates</u>. Advance notice of stockholder nominations for the election of Directors must be given in the manner provided in the Bylaws.

Section 3. <u>Newly Created Directorships and Vacancies</u>. Subject to the rights, if any, of the holders of any series of Preferred Stock to elect additional Directors under circumstances specified in a Preferred Stock Designation, newly created directorships resulting from any increase in the authorized number of Directors and any vacancies on the Board resulting from resignation, disqualification, removal, death or other cause will be filled solely by the affirmative vote of a majority of the remaining Directors then in office, even though less than a quorum of the Board, or by a sole remaining Director. Any Director elected in accordance with the preceding sentence will hold office until such Director's successor has been duly elected and qualified, or until such Director's earlier resignation, disqualification, removal or death. No decrease in the number of Directors constituting the Board may shorten the term of any Director.

Section 4. <u>Removal</u>. Subject to the rights, if any, of the holders of any series of Preferred Stock to elect additional Directors under circumstances specified in a Preferred Stock Designation, any Director may be removed from office by the stockholders with or without cause and only in the manner provided in this <u>Article VIII</u>, <u>Section 4</u>. At any annual meeting or special meeting of the stockholders, the notice of which states that the removal of a Director or Directors is among the purposes of the meeting, the affirmative vote of the holders of at least ~~75~~**66 2/3**% of the voting power of the outstanding Voting Stock, voting together as a single class, may remove such Director or Directors.

Section 5. <u>Amendment, Repeal, Etc</u>. Notwithstanding anything contained in this Certificate of Incorporation to the contrary, the affirmative vote of the holders of at least ~~75~~**66 2/3**% of the voting power of the outstanding Voting Stock, voting together as a single class, is required to amend or repeal, or adopt any provision inconsistent with, this <u>Article VIII</u>.

ARTICLE IX

No Director will be personally liable to the Company or its stockholders for monetary damages for a breach of fiduciary duty as a Director, except to the extent such exemption from liability or limitation thereof is not permitted under the DGCL as the same exists or may hereafter

be amended. Any repeal or modification of this Article IX will not adversely affect any right or protection of a Director existing prior to such repeal or modification.

## ARTICLE X

Section 1. <u>Right to Indemnification</u>. Each person who was or is a party or is threatened to be made a party to or is otherwise involved in any threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative or investigative (a "***Proceeding***") by reason of the fact that the person is or was a Director or an officer of the Company, or such person, whether or not a Director or officer of the Company, is or was serving at the request of the Company as a director or officer of any other corporation, partnership, joint venture, trust or other enterprise, including, without limitation, any subsidiary or affiliate of the Company (an "***Indemnitee***"), whether the basis of such Proceeding is alleged action in an official capacity as a director or officer or in any other capacity while serving as a director or officer, shall be indemnified and held harmless by the Company to the fullest extent permitted or required by the DGCL, as the same exists or may hereafter be amended, against all expenses (including attorneys' fees), judgments, fines, ERISA excise taxes or penalties and amounts paid in settlement actually and reasonably incurred by such Indemnitee in connection therewith; <u>provided</u>, <u>however</u>, that, except as provided in <u>Section 3</u> of this <u>Article X</u> with respect to Proceedings to enforce rights to indemnification, the Company shall indemnify any such Indemnitee in connection with a Proceeding (or part thereof) initiated by such Indemnitee only if such Proceeding (or part thereof) was authorized by the Board.

Section 2. <u>Right to Advancement of Expenses</u>. The right to indemnification conferred in <u>Section 1</u> of this <u>Article X</u> shall include the right to be paid by the Company the expenses (including, without limitation, attorneys' fees and expenses) incurred in defending any such Proceeding in advance of its final disposition (an "***Advancement of Expenses***"); <u>provided</u>, <u>however</u>, that, if the DGCL so requires, an Advancement of Expenses shall be made only upon delivery to the Company of an undertaking (an "***Undertaking***"), by or on behalf of such Indemnitee, to repay all amounts so advanced if it shall ultimately be determined by final judicial decision from which there is no further right to appeal (a "***Final Adjudication***") that such Indemnitee is not entitled to be indemnified for such expenses under this <u>Section 2</u> or otherwise. The rights to indemnification and to the Advancement of Expenses conferred in <u>Sections 1</u> and <u>2</u> of this <u>Article X</u> shall be contract rights and such rights shall continue as to an Indemnitee who has ceased to be a director or officer and shall inure to the benefit of the Indemnitee's heirs, executors and administrators.

Section 3. <u>Right of Indemnitee to Bring Suit</u>. If a claim under <u>Section 1</u> or <u>2</u> of this <u>Article X</u> is not paid in full by the Company within 60 calendar days after a written claim has been received by the Company, except in the case of a claim for an Advancement of Expenses, in which case the applicable period shall be 20 calendar days, the Indemnitee may at any time thereafter bring suit against the Company to recover the unpaid amount of the claim. If successful in whole or in part in any such suit, or in a suit brought by the Company to recover an Advancement of Expenses pursuant to the terms of an Undertaking, the Indemnitee shall be entitled to be paid also the expense of prosecuting or defending such suit to the fullest extent permitted by law. In (i) any suit brought by the Indemnitee to enforce a right to indemnification hereunder (but not in a suit brought by the Indemnitee to enforce a right to an Advancement of Expenses) it shall be a defense that, and (ii) any suit brought by the Company to recover an Advancement of Expenses pursuant to

the terms of an Undertaking, the Company shall be entitled to recover such expenses upon a Final Adjudication that, the Indemnitee has not met any applicable standard for indemnification set forth in the DGCL. Neither the failure of the Company (including the Board, a Board committee, independent legal counsel or stockholders) to have made a determination prior to the commencement of such suit that indemnification of the Indemnitee is proper in the circumstances because the Indemnitee has met the applicable standard of conduct set forth in the DGCL, nor an actual determination by the Company (including the Board, a Board committee, independent legal counsel or stockholders) that the Indemnitee has not met such applicable standard of conduct, shall create a presumption that the Indemnitee has not met the applicable standard of conduct or, in the case of such a suit brought by the Indemnitee, be a defense to such suit. In any suit brought by the Indemnitee to enforce a right to indemnification or to an Advancement of Expenses hereunder, or brought by the Company to recover an Advancement of Expenses pursuant to the terms of an Undertaking, the burden of proving that the Indemnitee is not entitled to be indemnified, or to such Advancement of Expenses, under this Article X or otherwise shall be on the Company.

Section 4. <u>Non-Exclusivity of Rights</u>. The rights to indemnification and to the Advancement of Expenses conferred in this Article X shall not be exclusive of any other right which any person may have or hereafter acquire under any statute, the Company's Certificate of Incorporation, Bylaws, any agreement, vote of stockholders or disinterested Directors or otherwise.

Section 5. <u>Insurance</u>. The Company may maintain insurance, at its expense, to protect itself and any person who is or was a Director, officer, employee or agent of the Company, or is or was serving at the request of the Company as a director, officer, employee or agent of another corporation, partnership, joint venture, trust or other enterprise against any liability asserted against such person and incurred by such person in any such capacity, or arising out of such person's status as such, whether or not the Company would have the power to indemnify such person against such liability under the DGCL.

Section 6. <u>Indemnification of Employees and Agents of the Company</u>. The Company may, to the extent authorized from time to time by the Board of Directors, grant rights to indemnification and to the Advancement of Expenses to any employee or agent of the Company to the fullest extent of the provisions of this Article X with respect to the indemnification and Advancement of Expenses of Directors and officers of the Company.

[Remainder of Page Intentionally Blank – Signature Page Follows]

IN WITNESS WHEREOF, the undersigned, being the sole incorporator of the Company named above, does hereby execute this Restated Certificate of Incorporation as of the ____ day of _____, 2007.

_____
[Name], Incorporator

DANA HOLDING CORPORATION

BYLAWS

As Adopted and in
Effect on _____, 200_

# TABLE OF CONTENTS

Page

STOCKHOLDERS MEETINGS ................................................................................ 1

1.   Time and Place of Meetings ........................................................ 1

2.   Annual Meetings .......................................................................... 1

3.   Special Meetings .......................................................................... 1

4.   Notice of Meetings ...................................................................... 1

5.   Inspectors .................................................................................... 2

6.   Quorum ........................................................................................ 2

7.   Voting; Proxies ............................................................................ 2

8.   Order of Business ........................................................................ 2

9.   Record Dates ............................................................................... 4

10.  List of Stockholders Entitled to Vote ........................................ 5

DIRECTORS ............................................................................................................ 6

11.  Function ....................................................................................... 6

12.  Number ........................................................................................ 6

13.  Vacancies and Newly Created Directorships ............................ 6

14.  Removal ....................................................................................... 6

15.  Nominations of Directors; Election ........................................... 6

16.  Resignation ................................................................................. 8

17.  Regular Meetings ........................................................................ 8

18.  Special Meetings ......................................................................... 8

19.  Quorum ........................................................................................ 8

20.  Participation in Meetings by Remote Communications ............ 8

21.  Board Action Without Meeting .................................................. 9

22.  Lead Independent Director ......................................................... 9

23.  Committees .................................................................................. 9

24.  Compensation .............................................................................. 9

25.  Rules ............................................................................................ 9

NOTICES ................................................................................................................. 9

26.  Generally ..................................................................................... 9

27.  Waivers ........................................................................................ 10

OFFICERS ............................................................................................................... 10

28. Generally .................................................................................. 10

29. Compensation ............................................................................ 10

30. Succession ................................................................................. 10

31. Authority and Duties ................................................................. 11

STOCK ............................................................................................... 11

32. Certificates ................................................................................ 11

33. Classes of Stock ........................................................................ 11

34. Lost, Stolen or Destroyed Certificates .................................... 11

GENERAL .......................................................................................... 11

35. Fiscal Year ................................................................................ 11

36. Reliance Upon Books, Reports and Records ........................... 11

37. Amendments .............................................................................. 12

38. Certain Defined Terms .............................................................. 12

# STOCKHOLDERS MEETINGS

1.     <u>Time and Place of Meetings</u>. All meetings of stockholders will be held at such time and place, within or without the State of Delaware, as may be designated by the Board of Directors of the Company (the "***Board***") from time to time or, in the absence of a designation by the Board, the Chairman of the Board (the "***Chairman***"), the Chief Executive Officer, the President or the Secretary, and stated in the notice of the meeting. Notwithstanding the foregoing, the Board may, in its sole discretion, determine that a meeting of stockholders will not be held at any place, but may instead be held by means of remote communications, subject to such guidelines and procedures as the Board may adopt from time to time. The Board may postpone and reschedule any previously scheduled annual or special meeting of stockholders.

2.     <u>Annual Meetings</u>. At each annual meeting of stockholders, the stockholders will elect directors of the Company ("***Directors***") by a plurality of the votes of the shares present in person or represented by proxy at such meeting and entitled to vote on the election of Directors and will transact such other business as may properly be brought before the meeting in accordance with <u>Bylaw 8</u>.

3.     <u>Special Meetings</u>. A special meeting of stockholders may be called only by (i) the Chairman, (ii) the President, or (iii) the Secretary within ten calendar days after receipt by the Chairman and the Secretary of the written request of (A) a majority of the Directors then in office or (B) the holders of at least 20% of the voting power of the outstanding Voting Stock, voting together as a single class, in each case to transact only such business as is properly brought before the meeting in accordance with <u>Bylaw 8(d)</u> and specified in the notice of the meeting. For the purposes of these Bylaws, "***Voting Stock***" means capital stock of the Company of any class or series entitled to vote generally in the election of Directors. Special meetings of holders of the outstanding Preferred Stock, if any, may be called in the manner and for the purposes provided in the applicable Preferred Stock Designation.

4.     <u>Notice of Meetings</u>. Notice of every meeting of stockholders, stating the place, if any, date and time thereof, the means of remote communications, if any, by which stockholders and proxy holders may be deemed to be present in person and vote at such meeting, and, in the case of a special meeting, the purpose or purposes for which the meeting is called, will be given, in a form permitted by <u>Bylaw 26</u> or by the General Corporation Law of the State of Delaware, as amended (the "***DGCL***"), not less than ten nor more than 60 calendar days before the date of the meeting to each stockholder of record entitled to vote at such meeting, except as otherwise provided by law. When a meeting is adjourned to another place, date, or time, notice need not be given of the adjourned meeting if the place, if any, date and time thereof, and the means of remote communications, if any, by which stockholders and proxy holders may be deemed to be present in person and vote at such adjourned meeting are announced at the meeting at which the adjournment is taken; <u>provided</u>, <u>however</u>, that if the adjournment is for more than 30 calendar days, or if after the adjournment a new record date is fixed for the adjourned meeting, written notice of the place, if any, date and time thereof, and the means of remote communications, if any, by which stockholders and proxy holders may be deemed to be present in person and vote at such adjourned meeting must be given in conformity herewith. At any adjourned meeting, any business may be transacted which properly could have been transacted at the original meeting.

5. <u>Inspectors</u>. If required by law, the Board will, in advance of any meeting of stockholders, appoint one or more inspectors to act at the meeting and make a written report thereof. The Board may designate one or more persons as alternate inspectors to replace any inspector who fails to act. If no inspector or alternate is able to act at a meeting of stockholders, the presiding officer of the meeting will appoint one or more inspectors to act at the meeting. The inspector(s) shall have such powers and duties as provided in Section 231 of the DGCL, or any successor provision.

6. <u>Quorum</u>. Except as otherwise provided by law or in a Preferred Stock Designation, the holders of a majority of the voting power of the outstanding Voting Stock entitled to vote thereat, present in person or represented by proxy, will constitute a quorum at a meeting of stockholders for the transaction of business thereat. If, however, such quorum is not present or represented at any meeting of stockholders, the stockholders entitled to vote thereat, present in person or represented by proxy, by the affirmative vote of the holders of a majority of the voting power thereof, will have the power to adjourn the meeting from time to time, without notice other than announcement at the meeting, until a quorum is present or represented.

7. <u>Voting; Proxies</u>. Except as otherwise provided by law, by the Company's Certificate of Incorporation (the "***Certificate of Incorporation***"), or in a Preferred Stock Designation, each stockholder will be entitled at every meeting of the stockholders to one vote for each share of stock having voting power standing in the name of such stockholder on the books of the Company on the record date for the meeting and such votes may be cast either in person or by proxy. Every proxy must be authorized in a manner permitted by Section 212 of the DGCL, or any successor provision. When a quorum is present at any meeting of stockholders, the affirmative vote of the holders of a majority of the voting power of the outstanding Voting Stock present in person or represented by proxy at the meeting and entitled to vote on the subject matter will be the act of the stockholders in all matters other than the election of Directors, or as otherwise provided in these Bylaws, the Certificate of Incorporation, a Preferred Stock Designation, the rules of any stock exchange or quotation system on which the Company's securities may be listed, quoted or traded, or by law or pursuant to any regulation applicable to the Company's securities.

8. <u>Order of Business</u>. (a) The Chairman, or such other officer of the Company designated from time to time by a majority of the total number of Directors that the Company would have if there were no vacancies on the Board (the "***Whole Board***"), will call meetings of stockholders to order and will act as presiding officer thereof and may adjourn any meeting of stockholders from time to time. Unless otherwise determined by the Board prior to the meeting, the presiding officer of the meeting of stockholders will also determine the order of business and have the authority in his or her sole discretion to determine the rules of procedure and regulate the conduct of any such meeting, including, without limitation, by imposing restrictions on the persons (other than stockholders of the Company or their duly appointed proxy holders) that may attend any such stockholders' meeting, by ascertaining whether any stockholder or his or her proxy holder may be excluded from any meeting of stockholders based upon any determination by the presiding officer, in his or her sole discretion, that any such person has disrupted or is likely to disrupt the proceedings thereat, by determining the circumstances in which any person may make a statement or ask questions at any meeting of stockholders, by ruling on all procedural questions that may arise during or in connection with the meeting, by determining whether any nomination

or business proposed to be brought before the meeting has been properly brought before the meeting.

(b)    At an annual meeting of stockholders, only such business will be transacted or considered as is properly brought before the annual meeting. To be properly brought before an annual meeting, business must be (i) specified in the notice of the meeting (or any supplement thereto) given in accordance with Bylaw 4, (ii) otherwise properly brought before the annual meeting by the presiding officer or by or at the direction of a majority of the Whole Board, or (iii) otherwise properly requested to be brought before the annual meeting by a stockholder of the Company in accordance with Bylaw 8(c).

(c)    For business to be properly requested by a stockholder to be brought before an annual meeting, (i) the stockholder must be a stockholder of the Company of record at the time of the giving of the notice for such annual meeting provided for in these Bylaws, (ii) the stockholder must be entitled to vote at such meeting, (iii) the stockholder must have given timely notice of the proposed business in proper written form to the Secretary, (iv) if the stockholder, or the beneficial owner on whose behalf any business is brought before the meeting, has provided the Company with a Proposal Solicitation Notice, as that term is defined in this Bylaw 8(c), such stockholder or beneficial owner must have delivered a proxy statement and form of proxy to the holders of at the least the percentage of shares of the Company entitled to vote required to approve such business that the stockholder proposes to bring before the annual meeting and included in such materials the Proposal Solicitation Notice, and (v) the proposed business must be a proper matter for stockholder action under the laws of the State of Delaware. To be timely, a stockholder's notice must be delivered to or mailed and received at the principal executive offices of the Company not less than 90 nor more than 120 calendar days prior to the first anniversary of the date of the previous year's annual meeting of stockholders; provided, however, that if the date of the annual meeting is advanced more than 30 calendar days prior to or delayed by more than 30 calendar days after the anniversary of the preceding year's annual meeting, or if the annual meeting is the first annual meeting of the Company's stockholders, notice by the stockholder to be timely must be so delivered not later than the close of business on the later of the 90th calendar day prior to such annual meeting or the tenth calendar day following the day on which public disclosure of the date of such meeting is first made. In no event will the public disclosure of an adjournment or postponement of an annual meeting commence a new time period for the giving of a stockholder's notice as described above. To be in proper written form, a stockholder's notice to the Secretary must set forth as to each matter the stockholder proposes to bring before the annual meeting (A) a description in reasonable detail of the business desired to brought before the annual meeting, the text of the proposal or business (including the text of any resolutions proposed for consideration and in the event that such business includes a proposal to amend these Bylaws, the language of the proposed amendment), and the reasons for transacting such business at the annual meeting, (B) the name and address, as they appear on the Company's books, of the stockholder proposing such business and the beneficial owner(s), if any, on whose behalf the proposal is made, (C) the class and series and number of shares of capital stock of the Company that are owned beneficially and of record by the stockholder proposing such business and by the beneficial owner(s), if any, on whose behalf the proposal is made, (D) a description of all arrangements or understandings among such stockholder and any other person or persons (including their names) in connection with the proposal of such business by such stockholder and any material interest of such stockholder or beneficial owner in such business, (E) whether either such stockholder or beneficial owner(s)

intend to deliver a proxy statement and form of proxy to holders of at least the percentage of shares of the Company entitled to vote required to approve the proposal (an affirmative statement of such intent, a "***Proposal Solicitation Notice***"), and (F) a representation that such stockholder intends to appear in person or by proxy at the annual meeting to bring such business before the annual meeting. For purposes of this Bylaw 8(c) and Bylaw 15, "public disclosure" means disclosure in a press release reported by the Dow Jones News Service, Associated Press or other national news service or in a document filed by the Company with the Securities and Exchange Commission pursuant to the Exchange Act or furnished by the Company to stockholders. Notwithstanding the foregoing provisions of this Bylaw 8(c), in order to include information with respect to a stockholder proposal in the Company's proxy statement and form of proxy for a meeting of stockholders, a stockholder must provide notice as required by, and otherwise comply with, all of the applicable requirements of the Securities Exchange Act of 1934 and the rules and regulations thereunder (the "***Exchange Act***"). Nothing in this Bylaw 8(c) will be deemed to affect any rights of stockholders to request inclusion of proposals in the Company's proxy statement pursuant to Rule 14a-8 under the Exchange Act. The foregoing notice requirements of this Bylaw 8(c) shall be deemed satisfied by a stockholder if the stockholder has notified the Company of his, her or its intention to present a proposal at an annual meeting in compliance with applicable rules and regulations promulgated under the Exchange Act and such stockholder's proposal has been included in the Company's proxy statement and form of proxy for such annual meeting.

(d)     At a special meeting of stockholders, only such business may be transacted or considered as is properly brought before the special meeting. To be properly brought before a special meeting, business must be (i) specified in the notice of the meeting (or any supplement thereto) given in accordance with Bylaw 4 or (ii) otherwise properly brought before the meeting by the presiding officer or by or at the direction of a majority of the Whole Board.

(e)     The determination of whether any business sought to be brought before any annual or special meeting of the stockholders is properly brought before such meeting in accordance with this Bylaw 8 will be made by the presiding officer of such meeting. If the presiding officer determines that any business is not properly brought before such meeting, he or she will so declare to the meeting and any such business will not be transacted or considered. Unless otherwise required by law, if the stockholder (or a qualified representative of the stockholder) does not appear at the annual or special meeting of stockholders of the Company to present the proposed business, such proposed business shall not be transacted, notwithstanding that proxies in respect of such vote may have been received by the Company. For purposes of this Bylaw 8(e), to be considered a qualified representative of the stockholder, a person must be a duly authorized officer, manager or partner of such stockholder or must be authorized by a writing executed by such stockholder or an electronic transmission delivered by such stockholder to act for such stockholder as proxy at the meeting of stockholders and such person must produce such writing or electronic transmission, or a reliable reproduction of the writing or electronic transmission, at the meeting of stockholders.

9.     Record Dates. (a) In order that the Company may determine the stockholders entitled to notice of or to vote at any meeting of stockholders or any adjournment thereof, the Board may fix a record date, which record date shall not precede the date upon which the resolution fixing the record date is adopted by the Board, and which record date shall not be more than 60 nor less than ten calendar days before the date of such meeting. If no record date is fixed

by the Board, the record date for determining stockholders entitled to notice of or to vote at a meeting of stockholders will be at the close of business on the calendar day next preceding the day on which notice is given, or, if notice is waived, at the close of business on the calendar day next preceding the day on which the meeting is held. A determination of stockholders of record entitled to notice of or to vote at a meeting of the stockholders will apply to any adjournment of the meeting; provided, however, that the Board may fix a new record date for the adjourned meeting.

(b)     In order that the Company may determine the stockholders entitled to consent to corporate action in writing without a meeting as provided in the Certificate of Incorporation, the Board may fix a record date, which record date shall not precede the date upon which the resolution fixing the record date is adopted by the Board, and which record date shall not be more than ten days after the date upon which the resolution fixing the record date is adopted by the Board. If no record date has been fixed by the Board, the record date for determining stockholders entitled to consent to corporate action in writing without a meeting, when no prior action by the Board is required by the DGCL, shall be the first date on which a signed written consent setting forth the action taken or proposed to be taken is delivered to the Company by delivery to its registered office in the State of Delaware, its principal place of business or an officer or agent of the Company having custody of the book in which proceedings of meetings of stockholders are recorded. Delivery made to the Company's registered office shall be by hand or by certified or registered mail, return receipt requested. If no record date has been fixed by the Board and prior action by the Board is required by the DGCL, the record date for determining stockholders entitled to consent to corporate action in writing without a meeting shall be at the close of business on the day on which the Board adopts the resolution taking such prior action.

(c)     In order that the Company may determine the stockholders entitled to receive payment of any dividend or other distribution or allotment of any rights or the stockholders entitled to exercise any rights in respect of any change, conversion or exchange of stock, or for the purpose of any other lawful action, the Board may fix a record date, which record date shall not precede the date upon which the resolution fixing the record date is adopted by the Board, and which record date shall not be more than 60 calendar days prior to such action. If no record date is fixed, the record date for determining stockholders for any such purpose will be at the close of business on the calendar day on which the Board adopts the resolution relating thereto.

(d)     The Company will be entitled to treat the person in whose name any share of its stock is registered as the owner thereof for all purposes, and will not be bound to recognize any equitable or other claim to, or interest in, such share on the part of any other person, whether or not the Company has notice thereof, except as expressly provided by applicable law.

10.     List of Stockholders Entitled to Vote. The officer who has charge of the Company's stock ledger shall prepare and make, at least ten days before every meeting of stockholders, a complete list of the stockholders entitled to vote at the meeting, arranged in alphabetical order, and showing the address of each stockholder and the number of shares registered in the name of each stockholder. Such list shall be open to the examination of any stockholder, for any purpose germane to the meeting at least ten days prior to the meeting (i) on a reasonably accessible electronic network, provided that the information required to gain access to such list is provided with the notice of meeting or (ii) during ordinary business hours at the

principal place of business of the Company. The list of stockholders must also be open to examination at the meeting as required by applicable law.

DIRECTORS

11.  Function. The business and affairs of the Company will be managed under the direction of the Board.

12.  Number. Subject to (i) the rights, if any, of any series of Preferred Stock to elect additional Directors under circumstances specified in a Preferred Stock Designation, including without limitation Section 6(c) of the Certificate of Designations for the Series A Preferred Stock and the Series B Preferred Stock, and (ii) the minimum and maximum number of authorized Directors provided in the Certificate of Incorporation, the authorized number of Directors may be determined from time to time only by a vote of a majority of the Whole Board.

13.  Vacancies and Newly Created Directorships. Subject to the rights, if any, of the holders of any series of Preferred Stock to elect additional Directors under circumstances specified in a Preferred Stock Designation, newly created directorships resulting from any increase in the authorized number of Directors and any vacancies on the Board resulting from resignation, disqualification, removal, death or other cause may be filled only by the affirmative vote of a majority of the remaining Directors then in office, even though less than a quorum of the Board, or by a sole remaining Director. Any Director elected in accordance with the preceding sentence will hold office until the next annual meeting of stockholders and until such Director's successor is duly elected and qualified or until such Director's earlier resignation, disqualification, removal or death. No decrease in the authorized number of Directors will shorten the term of any Director.

14.  Removal. Subject to the rights, if any, of the holders of any series of Preferred Stock specified in a Preferred Stock Designation, any Director may be removed from office by the stockholders only in the manner provided in the Certificate of Incorporation.

15.  Nominations of Directors; Election. (a) Subject to the rights, if any, of the holders of any series of Preferred Stock to elect additional Directors under circumstances specified in a Preferred Stock Designation, only persons who are nominated in accordance with this Bylaw 15 will be eligible for election at a meeting of stockholders as Directors of the Company.

(b)  Nominations of persons for election as Directors of the Company may be made only at an annual meeting of stockholders (i) by or at the direction of the Board or a committee thereof or (ii) by any stockholder that is a stockholder of record at the time of giving of notice provided for in this Bylaw 15, who is entitled to vote for the election of Directors at such annual meeting, and who complies with the procedures set forth in this Bylaw 15. If a stockholder, or a beneficial owner(s) on whose behalf any such nomination is made, has provided the Company with a Nomination Solicitation Notice, as that term is defined below in this Bylaw 15, such stockholder or beneficial owner must have delivered a proxy statement and form of proxy to the holders of at least the percentage of shares of the Company entitled to vote required to approve the nomination and included in such materials the Nomination Solicitation Notice. All nominations by stockholders must be made pursuant to timely notice in proper written form to the Secretary.

(c)     To be timely, a stockholder's notice must be delivered to or mailed and received at the principal executive offices of the Company not less than 90 nor more than 120 calendar days prior to the first anniversary of the date of the previous year's annual meeting of stockholders; provided, however, that if the date of the annual meeting is advanced more than 30 calendar days prior to or delayed by more than 30 calendar days after the anniversary of the preceding year's annual meeting, or if the annual meeting is the first annual meeting of the Company's stockholders, notice by the stockholder to be timely must be so delivered not later than the close of business on the later of the 90th calendar day prior to such annual meeting or the tenth calendar day following the day on which public disclosure of the date of such meeting is first made. In no event will the public disclosure of an adjournment or postponement of an annual meeting commence a new time period for the giving of a stockholder's notice as described above. To be in proper written form, such stockholder's notice must set forth or include (i) the name and address, as they appear on the Company's books, of the stockholder giving the notice and of the beneficial owner(s), if any, on whose behalf the nomination is made; (ii) a representation that the stockholder giving the notice is a holder of record of stock of the Company entitled to vote at such annual meeting and intends to appear in person or by proxy at the annual meeting to nominate the person or persons specified in the notice; (iii) the class and number of shares of stock of the Company owned beneficially and of record by the stockholder giving the notice and by the beneficial owner(s), if any, on whose behalf the nomination is made; (iv) a description of all arrangements or understandings between or among any of (A) the stockholder giving the notice, (B) the beneficial owner(s) on whose behalf the notice is given, (C) each nominee, and (D) any other person or persons (naming such person or persons) pursuant to which the nomination or nominations are to be made by the stockholder giving the notice; (v) such other information regarding each nominee proposed by the stockholder giving the notice as would be required to be included in a proxy statement filed pursuant to the proxy rules of the Securities and Exchange Commission had the nominee been nominated, or intended to be nominated, by the Board; (vi) the signed consent of each nominee to serve as a Director of the Company if so elected; and (vii) whether either such stockholder or beneficial owner(s) intend to deliver a proxy statement and form of proxy to holders of shares of the Company entitled to vote required to elect such nominee or nominees (an affirmative statement of such intent, a "*Nomination Solicitation Notice*"). At the request of the Board, any person nominated by the Board for election as a Director must furnish to the Secretary that information required to be set forth in a stockholder's notice of nomination that pertains to the nominee. The presiding officer of any annual meeting will, if the facts warrant, determine that a nomination was not made in accordance with the procedures prescribed by this Bylaw 15, and if he or she should so determine, he or she will so declare to the meeting and the defective nomination will be disregarded. Notwithstanding the foregoing provisions of this Bylaw 15, a stockholder must also provide notice as required by, and otherwise comply with, all of the applicable requirements of the Exchange Act with respect to the matters set forth in this Bylaw 15. Unless otherwise required by law, if the stockholder (or a qualified representative of the stockholder) does not appear at the annual or special meeting of stockholders of the Company to present a nomination, such nomination shall not be voted on, notwithstanding that proxies in respect of such vote may have been received by the Company. For purposes of this Bylaw 15(c), to be considered a qualified representative of the stockholder, a person must be a duly authorized officer, manager or partner of such stockholder or must be authorized by a writing executed by such stockholder or an electronic transmission delivered by such stockholder to act for such stockholder as proxy at the meeting of stockholders and such person must produce such writing or electronic transmission, or a reliable

reproduction of the writing or electronic transmission, at the meeting of stockholders. Nothing in this Bylaw 15 shall be deemed to affect any rights (a) of stockholders to request inclusion of nominations in the Company's proxy statement pursuant to applicable rules and regulations promulgated under the Exchange Act or (b) of the holders of any series of Preferred Stock to elect Directors pursuant to any applicable provisions of the Certificate of Incorporation or any Preferred Stock Designation.

16.     Resignation.  Any Director may resign at any time upon notice given in writing or by electronic transmission to the Chairman or the Secretary.  Any resignation is effective when the resignation is delivered to the Company unless the resignation specified a later effective date or an effective date determined upon the happening of an event or events.

17.     Regular Meetings.  Regular meetings of the Board may be held immediately after the annual meeting of the stockholders and at such other time and place either within or without the State of Delaware as may from time to time be determined by the Board.  Notice of regular meetings of the Board need not be given.

18.     Special Meetings.  Special meetings of the Board may be called by the Chairman or the President on one day's notice to each Director by whom such notice is not waived, given in a form permitted by Bylaw 26 or by the DGCL, and will be called by the Chairman or the President, in like manner and on like notice, on the written request of at least two (2) Directors.  Special meetings of the Board may be held at such time and place either within or without the State of Delaware as is determined by the Board or specified in the notice of any such meeting.

19.     Quorum.  At all meetings of the Board, a majority of the Whole Board will constitute a quorum for the transaction of business.  Except for action to be taken by committees of the Board as provided in Bylaw 23, and except for actions required by these Bylaws or the Certificate of Incorporation to be taken by a majority of the Whole Board, the act of a majority of the Directors present at any meeting at which there is a quorum will be the act of the Board.  If a quorum is not present at any meeting of the Board, the Directors, by the vote of a majority of the Directors present at such meeting, may adjourn the meeting from time to time to another place, time, or date, without notice other than announcement at the meeting, until a quorum is present.

20.     Participation in Meetings by Remote Communications.  Members of the Board or any committee designated by the Board may participate in a meeting of the Board or any such committee, as the case may be, by means of conference telephone or other communications equipment by means of which all persons participating in the meeting can hear each other, and such participation in a meeting will constitute presence in person at the meeting.

21.     Board Action Without Meeting.  Any action required or permitted to be taken at any meeting of the Board or any committee designated by the Board may be taken without a meeting if all members of the Board or committee, as the case may be, consent thereto in writing or by electronic transmission, and the writing or writings or electronic transmission or transmissions are filed with the minutes of proceedings of the Board or committee.  Such filing shall be in paper form if the minutes are maintained in paper form and shall be in electronic form if the minutes are maintained in electronic form.

22.     <u>Lead Independent Director</u>. The Directors will elect from among the independent Directors a Lead Independent Director of the Company (the "***Lead Independent Director***") on an annual basis. The Lead Independent Director may call meetings of the independent Directors from time to time, and will have the following duties and responsibilities, in addition to those duties and responsibilities set forth in the Company's corporate governance guidelines:  (i) to preside at all meetings of the Board at which the Chairman is not present, including any executive sessions of the independent Directors and (ii) to serve as the liaison between the Chairman and the independent Directors.

23.     <u>Committees</u>. (a) The Board may designate one or more committees, each committee to consist of one or more of the Directors.  The Board may designate one or more Directors as alternate members of any committee, who may replace any absent or disqualified member at any meeting of the committee.  In the absence or disqualification of a member of a committee, the member or members present at any meeting and not disqualified from voting, whether or not such member or members constitute a quorum, may unanimously appoint another member of the Board to act at the meeting in the place of any such absent or disqualified member. Any such committee, to the extent provided in the resolution of the Board, or in these Bylaws, will have and may exercise all the powers and authority of the Board in the management of the business and affairs of the Company, and may authorize the seal of the Company to be affixed to all papers which may require it; but no such committee will have the power or authority in reference to the following matters:  (i) approving or adopting, or recommending to the stockholders, any action or matter (other than the election or removal of Directors) expressly required by the DGCL to be submitted to stockholders for approval or (ii) making, adopting, amending or repealing any provision of these Bylaws.

(b)  Beginning with the first meeting of stockholders to elect directors following the date these Bylaws are first adopted and for as long as Article III of the Shareholders Agreement (the "Shareholders Agreement"), dated as of _____, 200_, by and among the Company, Centerbridge Capital Partners, L.P., Centerbridge Capital Partners Strategic, L.P. and Centerbridge Captial Partners SBS is in effect, there will be a Series A Nominating Committee, which will be entitled to nominate one director for election by holders of Voting Stock pursuant to Section 6(b)(ii) of the Certificate (a "Series A Nominee"); <u>provided</u>, <u>however</u>, that, in order for such nomination to be effective, such nomination by the Series A Nominating Committee must be made unanimously.  To the extent the members of the Series A Nominating Committee are unable to unanimously agree on the identity of a Series A Nominee on or before the latest time at which the Company can reasonably meet its obligations with respect to printing and mailing a proxy statement for an annual meeting of Company stockholders, the Board will designate a Committee of all of the Independent Directors, as defined in the Shareholders Agreement, to serve as the Series A Nominating Committee which Committee will, by a majority vote, select an individual to be nominated for such Board seat.  Each Series A Nominee must, at all times during his or her service on the Board, be qualified to serve as a director of the Company under any applicable law, rule or regulation imposing or creating standards or eligibility criteria for individuals serving as directors of organizations such as the Company.  If at any time, an individual Series A Nominee is not so qualified, such Series A Nominee will be replaced pursuant to this <u>Bylaw 23(b)</u>.

(c)  Each duly elected Series A Nominee will serve until his successor is elected and qualified or until his earlier resignation, retirement, disqualification, removal from office or death.

If any Series A Nominee ceases to be a director of the Company for any reason, the Company will promptly use its best efforts to cause a person designated by the Series A Nominating Committee to replace such director.

24.    Compensation.  The Board may establish the compensation of directors, including, without limitation, compensation for membership on the Board and on committees of the Board, attendance at meetings of the Board or committees of the Board, and for other services provided to the Company or at the request of the Board.

25.    Rules.  The Board may adopt rules and regulations for the conduct of meetings and the oversight of the management of the affairs of the Company.

## NOTICES

26.    Generally.  (a)  Except as otherwise provided by law, these Bylaws, or the Certificate of Incorporation, whenever by law or under the provisions of the Certificate of Incorporation or these Bylaws notice is required to be given to any Director or stockholder, it will not be construed to require personal notice, but such notice may be given in writing, by mail or courier service or, to the extent permitted by the DGCL, by electronic transmission, addressed to such Director or stockholder.  Any notice sent to stockholders by mail or courier service shall be sent to the address of such stockholder as it appears on the records of the Company, with postage thereon prepaid, and such notice will be deemed to be given at the time when the same is deposited in the United States mail or with the courier service.  Notices sent by electronic transmission shall be deemed effective as set forth in Section 222 of the DGCL.  For purposes of this Bylaw 26, "*electronic transmission*" means any form of communication, not directly involving the physical transmission of paper, that creates a record that may be retained, retrieved and reviewed by a recipient thereof, and that may be directly reproduced in paper form by such a recipient through an automated process.

(b)    Notices to Directors may be given by mail or courier service, telephone, electronic transmission or as otherwise may be permitted by these Bylaws.

27.    Waivers.  Whenever any notice is required to be given by law or under the provisions of the Certificate of Incorporation or these Bylaws, a waiver thereof in writing, signed by the person entitled to such notice, or a waiver by electronic transmission by the person entitled to such notice, whether before or after the time of the event for which notice is to be given, will be deemed equivalent to such notice.  Attendance of a person at a meeting will constitute a waiver of notice of such meeting, except when the person attends a meeting for the express purpose of objecting at the beginning of the meeting, to the transaction of any business because the meeting is not lawfully called or convened.

## OFFICERS

28.    Generally.  The officers of the Company will be elected by the Board and will consist of a Chairman, a Chief Executive Officer, a President (which offices of Chairman, Chief Executive Officer and/or President may be held by the same person if the Board so specifies), a Secretary and a Treasurer.  The Board may also choose any or all of the following:  one or more Vice Chairmen, one or more Assistants to the Chairman, one or more Vice Presidents (who may be

given particular designations with respect to authority, function, or seniority), one or more Assistant Secretaries, one or more Assistant Treasurers and such other officers as the Board may from time to time determine. Notwithstanding the foregoing, the Board may authorize the Chairman to appoint any person to any office other than Chairman, Chief Executive Officer, President, Secretary or Treasurer. Any number of offices may be held by the same person. Any of the offices may be left vacant from time to time as the Board may determine. In the case of the absence or disability of any officer of the Company or for any other reason deemed sufficient by a majority of the Board, the Board may delegate the absent or disabled officer's powers or duties to any other officer or to any Director.

29.    <u>Compensation</u>. The compensation of all officers and agents of the Company who are also Directors of the Company will be fixed by the Board or by a committee of the Board. The Board may fix, or delegate the power to fix, the compensation of other officers and agents of the Company to an officer of the Company.

30.    <u>Succession</u>. The officers of the Company will hold office until their successors are duly elected and qualified or until such officer's earlier resignation, disqualification, removal or death. Any officer may be removed at any time by the affirmative vote of a majority of the Whole Board. Any vacancy occurring in any office of the Company may be filled by the Board or by the Chairman as provided in <u>Bylaw 28</u>.

31.    <u>Authority and Duties</u>. Each of the officers of the Company will have such authority and will perform such duties as are customarily incident to their respective offices or as may be specified from time to time by the Board.

STOCK

32.    <u>Certificates</u>. The shares of capital stock of the Company will be represented by certificates unless the Board provides by resolution or resolutions that some or all of any or all classes or series of stock will be uncertificated shares. Any such resolution will not apply to shares represented by a certificate until such certificate is surrendered to the Company.

33.    <u>Classes of Stock</u>. The powers, designations, preferences and relative, participating, optional, or other special rights of each class or series of stock represented by certificates, if any, and the qualifications, limitations or restrictions of such preferences and/or rights will be set forth in full or summarized on the face or back of the certificates representing such class or series of stock or, in lieu thereof, on the face or back of such certificates will be a statement that the Company will furnish without charge to each stockholder who so requests the powers, designations, preferences and relative, participating, optional, or other special rights of each class of stock or series thereof and the qualifications, limitations or restrictions of such preferences and/or rights. Except as otherwise expressly provided by law, the rights and obligations of the holders of uncertificated stock and the rights and obligations of the holders of certificates representing stock of the same class and series shall be identical.

34.    <u>Lost, Stolen or Destroyed Certificates</u>. The Secretary may direct a new certificate or certificates or uncertificated shares to be issued in place of any certificate or certificates theretofore issued by the Company alleged to have been lost, stolen or destroyed, upon the making

of an affidavit of that fact, satisfactory to the Secretary, by the person claiming the certificate of stock to be lost, stolen or destroyed. As a condition precedent to the issuance of a new certificate or certificates, the Secretary may require the owners of such lost, stolen or destroyed certificate or certificates to give the Company a bond in such sum and with such surety or sureties as the Secretary may direct as indemnity against any claims that may be made against the Company with respect to the certificate alleged to have been lost, stolen or destroyed or the issuance of the new certificate or uncertificated shares.

## GENERAL

35. <u>Fiscal Year</u>. The fiscal year of the Company will end on December 31st of each year or such other date as may be fixed from time to time by the Board.

36. <u>Reliance Upon Books, Reports and Records</u>. Each Director, each member of a committee designated by the Board, and each officer of the Company will, in the performance of his or her duties, be fully protected in relying in good faith upon the records of the Company and upon such information, opinions, reports, or statements presented to the Company by any of the Company's officers or employees, or committees of the Board, or by any other person or entity as to matters the Director, committee member, or officer believes are within such other person's professional or expert competence and who has been selected with reasonable care by or on behalf of the Company.

37. <u>Amendments</u>. Except as otherwise provided by law or by the Certificate of Incorporation or these Bylaws, these Bylaws or any of them may be amended in any respect or repealed at any time, either (i) at any meeting of stockholders, provided that any amendment or supplement proposed to be acted upon at any such meeting has been described or referred to in the notice of such meeting, or (ii) by the Board. Notwithstanding the foregoing and anything contained in these Bylaws to the contrary, <u>Bylaws</u> <u>3</u>, <u>6</u>, <u>8</u>, <u>12</u>, <u>13</u>, <u>14</u>, <u>15</u>, <u>18</u>, <u>19</u> and <u>37</u> may not be amended or repealed by the stockholders, and no provision inconsistent therewith may be adopted by the stockholders, without the affirmative vote of the holders of at least ~~75~~**66 2/3**% of the Voting Stock, voting together as a single class.

38. <u>Certain Defined Terms</u>. Capitalized terms used herein and not otherwise defined have the meanings given to them in the Certificate of Incorporation.