**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X

In re:                                                          Chapter 11

DANA CORPORATION, INC., *et al.,*                               Case No. 06-10354 (BRL)

                                                                (Jointly Administered)

                            Debtors.
-------------------------------------------------------------X

APPEARANCES:

GREENBERG TRAURIG, LLP
MetLife Building
200 Park Avenue
New York, New York 10166
Telephone:    (212) 801-9200
Facsimile:    (212) 801-6400
<u>By</u>:    Allen G. Kadish

      - and -

WARNER NORCROSS & JUDD LLP
900 Fifth Third Center
111 Lyon Street NW
Grand Rapids, Michigan 49503
Telephone:    (616) 752-2000
Facsimile:    (616) 222-2158
<u>By</u>:    Stephen B. Grow
       William R. Jansen
       Molly E. McManus
       Dean F. Pacific

*Attorneys for MAHLE Engine Components USA, Inc.*

COHEN, WEISS AND SIMON LLP
330 West 42nd Street
New York, New York 10036-6976
Telephone:    (212) 563-4100
Facsimile:    (212) 695-5436
<u>By</u>:    Babette A. Ceccotti

*Attorneys for International Union, UAW*

Before: Hon. Burton R. Lifland
          United States Bankruptcy Judge

**BENCH MEMORANDUM DECISION AND ORDER PERMISSIVELY ABSTAINING FROM ADJUDICATING THE MOTION OF MAHLE ENGINE COMPONENTS USA, INC. TO ENFORCE THE SALE ORDER**

Before the Court is the motion (the "**Motion**") of MAHLE Engine Components USA, Inc. ("**MAHLE**") pursuant to the Asset Purchase Agreement[1] seeking an order enforcing this Court's Sale Order[2] by finding that MAHLE did not assume liability for early retirement benefits, prohibiting parties from asserting certain claims against MAHLE, and granting other related relief.[3]

The current dispute (i) is between two nondebtors in a bankruptcy case that was confirmed in 2007, (ii) arises out of MAHLE's—not the debtors'—post-sale administration of pension benefits, and (iii) raises issues that, at most, are tangentially related to the estate. Moreover, determining which pension documents are relevant for resolution of this Motion would require the Court to review several documents that were not before it at the time of the Sale Order and analyze them under federal labor and pension law, a task more fitting for the United States District Court for the Western District of Michigan (the "**Michigan District Court**") where a proceeding is currently pending addressing the underlying issues raised in MAHLE's Motion. Accordingly, although the Court finds that it has subject matter jurisdiction to adjudicate the Motion, permissive abstention is appropriate under these circumstances.

---

[1] The Stock and Asset Purchase Agreement by and between MAHLE and Dana Corporation, dated as of December 1, 2006 [hereinafter the "**Asset Purchase Agreement**"] (Dkt. No. 8573), Ex. B.

[2] Order Signed on 2/23/2007 (A) Authorizing the Sale of Assets and Stock Relating to the Debtors' Engine Products Group Free and Clear of All Liens, Claims, Interests and Encumbrances, (B) Authorizing the Assumption and Assignment of Certain Executory Contracts and Leases in Connection Therewith, and (C) Granting Related Relief [hereinafter the "**Sale Order**"] (Dkt. No. 4813).

[3] In a phone call to chambers, MAHLE and the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (the "**UAW**") agreed that the issues before the Court are limited to subject matter jurisdiction and permissive abstention.

2

**BACKGROUND**

On March 3, 2006, Dana Corporation ("**Dana**") and several of its affiliates (collectively, the "**Debtors**") filed voluntary petitions. The Debtors' chapter 11 plan was confirmed on October 23, 2007. *See* Order Confirming Third Amended Joint Plan of Reorganization of Debtors and Debtors in Possession (Dkt. No. 7509). A final decree closing the chapter 11 cases of all 40 Debtors (other than Dana) was issued on December 22, 2010. *See* Order of Final Decree Closing Chapter 11 Cases of Debtors Other Than Dana Corporation (Dkt. No. 8535).

In December 2006, Dana sold its Engine Products Group, including a manufacturing plant in Muskegon, Michigan (the "**Muskegon Plant**") to MAHLE for $97.7 million. Employees at the Muskegon Plant represented by the UAW were hired by MAHLE, and MAHLE assumed the collective bargaining agreement between Dana Corporation and the UAW covering those employees (the "**2004 Collective Bargaining Agreement**").

On May 5, 2011, the UAW filed a complaint (the "**Complaint**") against MAHLE and Dana in the Michigan District Court (the "**Michigan Lawsuit**"), asserting that MAHLE is liable for certain early retirement benefits, totaling approximately $1.9 million, under collective bargaining agreements between the UAW and Dana (the "**Disputed Retiree Benefits**"). On August 1, 2011, the UAW filed an amended complaint (the "**Amended Complaint**"), removing Dana as a defendant and setting forth certain allegations, including breach of contract under section 301 of the Labor-Management Relations Act, 29 U.S.C. section 185; an action under the Employee Retirement Income Security Act ("**ERISA**"), as amended, to recover benefits due under the pension plans; and an assertion that the failure to pay the disputed benefits constitutes an impermissible reduction in an accrued early retirement benefit in violation of section 204(g) of ERISA, 29 U.S.C. section 1054(g).

The Motion requests that the Court prohibit further action by the UAW in the Michigan Lawsuit against MAHLE pursuant to Bankruptcy Code sections 105, 363 and 365. MAHLE contends that the lawsuit is barred since (i) the Disputed Retiree Benefits arise from a previous agreement between the UAW and Dana (the "**1996 Dana Assumption Agreement**") that MAHLE did not assume in the Sale Order or the Asset Purchase Agreement, and (ii) the Sale Order was free and clear of non-assumed liabilities and prohibits the commencement of any action inconsistent with it.

The UAW counters that the Michigan Lawsuit does not involve a claim barred by the Sale Order. In this vein, the UAW emphasizes that even if MAHLE did not specifically assume the 1996 Dana Assumption Agreement, determining whether MAHLE is liable for obligations contained therein requires a detailed review of documents other than the ones explicitly assumed according to the Sale Order. The UAW suggests that this Court lacks subject matter jurisdiction and urges that if this Court finds otherwise, it should abstain from adjudicating this matter.

## DISCUSSION

### I. THE COURT HAS SUBJECT MATTER JURISDICTION TO ADJUDICATE THE MOTION

This Court has subject matter jurisdiction to adjudicate MAHLE's Motion. It is well established that bankruptcy courts maintain jurisdiction to interpret and enforce their earlier orders. *Luan Inv. S.E. v. Franklin 145 Corp. (In re Petrie Retail, Inc.)*, 304 F.3d 223, 230 (2d Cir. 2002); *In re Johns–Manville Corp.*, 97 B.R. 174, 179–180 (Bankr. S.D.N.Y. 1989). In addition, section 363 sales and interpretation of sale orders are considered "core" under 28 U.S.C. section 157. *See, e.g., Travelers Indem. Co. v. Bailey*, 129 S.Ct. 2195, 2205 (2009); *Jamaica Shipping Co. Ltd. v. Orient Shipping Rotterdam, B.V. (In re Millenium Seacarriers, Inc.)*, 458 F.3d 92, 95 (2d Cir. 2006) (determining that a bankruptcy court's enforcement of its

4

sale order was core and specifying, "[w]e construe the concept of core proceedings broadly; the limits of the concept are interpreted to be "close to or congruent with constitutional limits"). Furthermore, such jurisdiction can extend to nondebtor parties even after confirmation. *Petrie Retail*, 304 F.3d at 230-31 (finding the court had jurisdiction after confirmation over a dispute between nondebtor parties regarding the effect of a sale order); *In re Portrait Corp. of Am., Inc.*, 406 B.R. 637, 641 (Bankr. S.D.N.Y. 2009) (finding core jurisdiction and emphasizing "[i]t does not matter that the dispute is now between two nondebtors . . . or that the Debtors' chapter 11 plan has been confirmed").

Here, the Court approved the sale pursuant to section 363 of the Bankruptcy Code by way of the Sale Order, which specifically reserved this Court's jurisdiction to:

> interpret, enforce and implement the terms and provisions of this Sale Order and the Agreement, all amendments thereto, any waivers and consents thereunder, and of each of the agreements executed in connection therewith in all respects, and to adjudicate disputes related to this Sale Order or the Agreement.

Sale Order, p. 21. Adjudication of the Motion would require this Court to "interpret, enforce and implement the terms and provisions of this Sale Order and the [Asset Purchase] Agreement."

The UAW argues that the Court lacks subject matter jurisdiction because MAHLE's arguments are not colorable and jurisdiction cannot be founded on assertions lacking a colorable basis. *See Perpetual Sec. Inc. v. Tang*, 290 F.3d 132, 137 (2d Cir. 2002) ("Simply raising a federal issue in a complaint will not automatically confer federal question jurisdiction. Rather, we ask 'whether the cause of action alleged is so patently without merit as to justify . . . the court's dismissal for want of jurisdiction.'"); *In re Motors Liquidation Co.*, 457 B.R. 276, 287 (Bankr. S.D.N.Y. 2011) (specifying a finding of jurisdiction is subject to the "colorable invocation" exception). However, MAHLE's position is at least colorable: the Sale Order was free and clear and did not specifically enumerate the 1996 Dana Assumption Agreement or the

provision therein specifying there would not be a curtailment in the UAW's pension benefits. *See id.* (finding an argument to be colorable based on a relevant document's silence regarding the disputed issue "where each side can argue that its opponent could have provided for express language clarifying the issues in its favor").

In light of the above, it is clear that this Court has subject matter jurisdiction over MAHLE's Motion.

## II. PERMISSIVE ABSTENTION IS APPROPRIATE UNDER THESE CIRCUMSTANCES

This Court finds that permissively abstaining from adjudicating the Motion is appropriate. When determining whether to exercise permissive abstention, bankruptcy courts have considered the following factors:

> (1) The effect or lack thereof on the efficient administration of the estate if a Court recommends abstention, (2) the extent to which [non-bankruptcy] law issues predominate over bankruptcy issues, (3) the difficulty or unsettled nature of the applicable [non-bankruptcy] law, (4) the presence of a related proceeding commenced in state court or other non-bankruptcy court, (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334, (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case, (7) the substance rather than form of an asserted "core" proceeding, (8) the feasibility of severing [non-bankruptcy] law claims from core bankruptcy matters to allow judgments to be entered in [non-bankruptcy] court with enforcement left to the bankruptcy court, (9) the burden of [the bankruptcy court's] docket, (10) the likelihood that the commencement of the proceeding in a bankruptcy court involves forum shopping by one of the parties, (11) the existence of a right to a jury trial, and (12) the presence in the proceeding of nondebtor parties.

*Motors Liquidation*, 457 B.R. at 289 (citing *Portrait Corp.*, 406 B.R. at 641-642).[4] "Not all of these factors need be applied, however." *Portrait Group*, 406 B.R. at 642 (citing *Cody, Inc. v. County of Orange & Town of Woodbury (In re Cody, Inc.)*, 281 B.R. 182, 190 (S.D.N.Y. 2002)). In addition, the court should balance the factors "heavily . . . in favor of the exercise of

---

[4] While it is well established that permissively abstaining in favor of a state court is appropriate "in the interest of justice, or in the interest of comity with State courts or respect for State law," 28 U.S.C. § 1334 (c)(1), bankruptcy courts "can [also] abstain in favor of another federal court or tribunal." *Motors Liquidation*, 457 B.R. at 288; *Chamberlain Group, Inc. v. Lear Corp. (In re Lear Corp.)*, Adv. No. 09-01441, 2009 WL 3191369, at * 3 (Bankr. S.D.N.Y. Sept. 24, 2009).

jurisdiction." *Id.* (citing *Eastern Air Lines, Inc. v. Int'l Assoc. of Machinists & Aerospace Workers, AFL–CIO (In re Ionosphere Clubs, Inc.)*, 108 B.R. 951, 954 (Bankr. S.D.N.Y. 1989)).

In applying these factors, the Court finds that they weigh strongly in favor of permissive abstention, especially factors 1, 2 and 6.

**(1)** *The effect or lack thereof on the efficient administration of the estate if a court recommends abstention*

Permissive abstention on the part of this Court would not have any significant effect on the bankruptcy estate as: (i) Dana's plan of reorganization was confirmed in 2007;[5] (ii) a final decree closing the chapter 11 cases of all 40 Debtors (other than Dana) was issued on December 22, 2010; (iii) as of September 2011, all previously disputed and unliquidated claims have been settled and remaining shares have been distributed to general unsecured creditors;[6] (iv) Dana is not involved in either this proceeding, which is between two nondebtor parties, or the Michigan Lawsuit where it is not a named defendant; and (v) Dana "is poised to ask the Court for a final decree closing Dana's remaining chapter 11 case." *See* Claims Objection,[7] p. 6. Accordingly, this factor tilts decidedly in favor of abstention.

**(2)** *The extent to which non-bankruptcy law issues predominate over bankruptcy issues*

Non-bankruptcy law issues clearly predominate over bankruptcy issues at this juncture. Bankruptcy courts have refrained from adjudicating matters where interpretation of their orders was not "the essence of the controversy" or the "real issue." *See Longacre Master Fund, Ltd. v. Telecheck Servs., Inc., (In re Casual Male Corp.)*, 317 B.R. 472, 479 (Bankr. S.D.N.Y. 2004)

---

[5] *See Penthouse Media Group v. Guccione (In re Gen. Media, Inc.)*, 335 B.R. 66, 74 (Bankr. S.D.N.Y. 2005) (indicating the estate "ceases to exist" once "confirmation vests property of the estate in the reorganized debtor" and accordingly finding that postconfirmation litigation had no effect on the estate).

[6] Reorganized Debtors' Quarterly Post-Confirmation Report and Disbursement Schedule for the Quarter Ended September 30, 2011 (Dkt. No. 8575).

[7] Objection of Reorganized Debtors Seeking to Disallow Late-Filed Claims of Minnesota Department of Revenue [hereinafter the "**Claims Objection**"] (Dkt. No. 8583).

7

(remanding where the case "would require interpretation" of a bankruptcy court order, but where "the essence of the controversy" was nevertheless an issue of state law); *In re NTL, Inc.*, 295 B.R. 706, 717 (Bankr. S.D.N.Y. 2003) ("[T]he real issues today do not involve the interpretation of the order, but rather its effect on the rights of parties to private contracts."); *see also In re Am. Equities Group, Inc.*, Adv. No. 11–02489 (BRL), 2011 WL 5966285 (Bankr. S.D.N.Y. Nov. 29, 2011) (remanding even though "resolution of this [bankruptcy] case may require interpretation of the [Court's] Lift Stay Order").

MAHLE and the UAW dispute whether interpretation of this Court's Sale Order is currently the "essence of the controversy." MAHLE submits it is, emphasizing that there are bankruptcy related issues remaining such as determining which liabilities are subject to the free and clear provisions of the Sale Order. Therefore, MAHLE asserts that resolution of its dispute with the UAW "hinges directly on an interpretation of the Assumed Liabilities and Excluded Retiree Liabilities set forth in the Asset Purchase Agreement." Motion, ¶¶ 65, 10. The UAW counters that the pension benefits at issue cannot be interpreted solely within the four corners of any single document since they are the product of multiple overlapping documents. Accordingly, resolution of the issues would require the Court to examine all documents relevant to UAW's pension benefits, including documents that were not previously before the Court and dating back as far as 1993.

The Court agrees with the UAW. Determining whether examining those additional documents is necessary would require actually examining them — how could the Court declare the 2004 Collective Bargaining Agreement did not incorporate obligations arising from the 1996

8

Dana Assumption Agreement without reviewing the latter?[8]  Furthermore, determining the degree of overlap between the 2004 Collective Bargaining Agreement and the 1996 Dana Assumption Agreement would not require any bankruptcy-related exegesis; it would entail routine contractual interpretation, as well as familiarity with federal labor and pension law. Accordingly, as the "essence of the controversy" at this point in time is certainly not rooted in bankruptcy law, this factor likewise weighs in favor of abstention.

**(6)**     ***The degree of relatedness or remoteness of the proceeding to the main bankruptcy case***

This Motion arises out of a dispute quite remote from the main bankruptcy case. MAHLE attempts to demonstrate relatedness to the main bankruptcy case by stressing that the UAW originally sued Dana in its Complaint before removing it from the Amended Complaint and might at some point in the future choose to refile its claims against Dana. MAHLE's argument, however, is nothing more than mere speculation. In reality, the Michigan Lawsuit involves a claim by the UAW against MAHLE that arose with regard to the Disputed Retiree Benefits while MAHLE — not Dana — owned the plant and while MAHLE was responsible for administering the Pension Plan: it did not involve Dana at all.

For the foregoing reasons, the Court finds that the relevant factors weigh heavily in favor of this Court exercising its discretion to permissively abstain from adjudicating MAHLE's Motion.

---

[8] The Court does not determine that analyzing a collective bargaining agreement *requires* looking beyond the four corners of that document; the Court only finds that determining the applicability of the obligations arising from the 1996 Dana Assumption Agreement *could* go beyond interpreting the Sale Order.

## **CONCLUSION**

In accordance with the foregoing, the Court will permissively abstain from deciding the matter. The parties are free to proceed with the Michigan Lawsuit.

**IT IS SO ORDERED.**

Dated: New York, New York
December 15, 2011

/s/ Burton R. Lifland
United States Bankruptcy Judge